1  Andrew P. Holland/Bar No. 224737
   aholland@thoits.com
2  Nathaniel H. Lipanovich/Bar No. 292283
   nlipanovich@thoits.com
3  THOITS LAW
   A Professional Corporation
4  400 Main Street, Suite 250
   Los Altos, California 94022
5  Telephone:  (650) 327-4200
   Facsimile:  (650) 325-5572
6
   **Attorneys for Defendant**
7  **DSS Technology Management, Inc.**

8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11

12  INTEL CORPORATION and APPLE          Case No.:  3:19-cv-07651-EMC
    INC.,
13                                        DEFENDANT DSS TECHNOLOGY
            Plaintiffs,                   MANAGEMENT, INC.'S REQUEST
14                                        FOR JUDICIAL NOTICE IN
    v.                                    SUPPORT OF SUPPLEMENTAL
15                                        BRIEF IN SUPPORT OF
    FORTRESS INVESTMENT GROUP LLC,        DEFENDANTS' JOINT MOTION TO
16  FORTRESS CREDIT CO. LLC, UNILOC       DISMISS AND TO STRIKE
    2017 LLC, UNILOC USA, INC., UNILOC    PLAINTIFFS' COMPLAINT
17  LUXEMBOURG S.A.R.L., VLSI
    TECHNOLOGY LLC, INVT SPE LLC,         Date: April 23, 2020
18  INVENTERGY GLOBAL, INC., DSS          Time: 1:30 p.m.
    TECHNOLOGY MANAGEMENT, INC.,          Judge: Edward M. Chen
19  IXI IP, LLC, AND SEVEN NETWORKS,      Courtroom: 5
    LLC,
20
            Defendants.
21

22

23

24

25

26

27

28

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

40041.001/

DSS REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF SUPPLEMENTAL BRIEF IN
SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS AND TO STRIKE

1
2
3
4
5
6

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

Defendant DSS Technology Management, Inc. ("DSS") has submitted a Supplemental Brief In Support Of Defendants' Joint Motion To Dismiss And To Strike Plaintiffs' Complaint ("DSS Brief"). In support of the DSS Brief, DSS requests that this Court consider documents cited in the Complaint that form the basis for Plaintiffs' claims. These documents are attached as Exhibits A-C to this Request For Judicial Notice ("Request") and they are also addressed in the Declaration of Nathaniel Lipanovich ("Lipanovich Decl.") filed concurrently with this Request.

7

## ARGUMENT

8
9
10
11
12
13
14
15
16
17

When ruling on a motion to dismiss, "courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Documents relied on by a complaint can be incorporated by reference even when the complaint "does not attach the document itself." *TSI USA LLC v. Uber Techs., Inc.*, No. 17-CV-03536-HSG, 2018 WL 4638726, at *2 n.3 (N.D. Cal. Sept. 25, 2018) (incorporating by reference document not attached to complaint); *see also Tellabs*, 551 U.S. at 322 (holding that courts must consider documents incorporated into the complaint by reference).

18
19
20
21
22
23

"The [incorporation-by-reference] doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002. Where a document is incorporated by reference into a complaint, the court may treat such a document as part of the complaint, and "'may assume [its] contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id*. at 1003 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)) (alteration in original).

24
25
26
27
28

A court must also consider matters that are subject to judicial notice. *Tellabs*, 551 U.S. at 322. Judicial notice permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." *Khoja*, 899 F.3d at 999; *see also* Fed. R. Evid. 201(b).  This includes documents filed in other federal court litigations.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 743, 746 n.6 (9th Cir. 2006) (courts may properly take judicial notice of federal court dockets and

DSS REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS AND TO STRIKE

1   documents).

2       Here, the Complaint is based on allegations concerning underlying patent infringement

3   lawsuits filed by Defendants.  This includes allegations regarding "supracompetitive" licensing

4   rates and litigation costs.  Compl. ¶ 176.  With respect to DSS, the Complaint is based on a single

5   patent infringement suit filed by DSS against Intel on February 16, 2015.  Compl. ¶ 110.  The

6   Complaint alleges that this lawsuit was resolved by a settlement between Intel and DSS in January

7   2019. *Id.* ¶ 113.

8       Exhibits A-C attached to this Request and discussed below meet one or more of the

9   foregoing standards.  Accordingly, this Court should consider these documents when ruling on the

10   arguments presented in the DSS Brief. *Tellabs*, 551 U.S. at 322.

11      RJN Exhibit A is the settlement between DSS and Intel referenced in paragraph 113 of the

12   Complaint that resolved the only litigation involving DSS mentioned in the Complaint

13   ("Settlement").  *See* Compl. ¶¶ 110-13. It thus forms the basis for Plaintiffs' claim and should be

14   considered by this Court. *See Khoja*, 899 F.3d at 1004 (affirming incorporation by reference of

15   document that was alleged to have "formed the basis of the scheme" at issue in complaint); *see*

16   *also* Lipanovich Decl. ¶ 2 (discussing the settlement).  The Settlement was signed by Wilmer

17   Hale, Plaintiffs' counsel in the current litigation, and thus Plaintiffs cannot dispute its authenticity.

18   In these circumstances, courts have considered settlements and the releases contained within them

19   at the motion to dismiss stage. *See, e.g., Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005,

20   1008, 1006 & n.9 (9th Cir. 2012) (affirming consideration of release from prior suit that barred

21   claims and affirming 12(b)(6) dismissal based on that release); *Robinson v. Wells Fargo Home*

22   *Mortg.*, No. 16-CV-01619-YGR, 2017 WL 1354784, at *4 (N.D. Cal. Apr. 13, 2017)

23   (considering release from prior case and granting motion to dismiss claims barred by that release).

24      RJN Exhibit B is Intel's Original Answer to Amended Complaint ("Answer") in the

25   underlying patent infringement litigation between DSS and Intel that is referenced in the Complaint

26   and Exhibit C is the Final Judgment dismissing that litigation.  Lipanovich Decl. ¶¶ 3-4.  Intel's

27   Answer was signed by Wilmer Hale, Plaintiffs' counsel in the current litigation, and thus once

28   again Plaintiffs cannot dispute its authenticity.  The Final Judgment was entered by Judge Robert

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

DSS REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF SUPPLEMENTAL BRIEF IN
SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS AND TO STRIKE

1   W. Schroeder III in the Eastern District of Texas, and its authenticity is also not subject to dispute.

2   In addition to the reasons set forth above, these documents are also the proper subject of judicial

3   notice because they are publicly filed court documents from another federal court litigation.

4   *Reyn's Pasta Bella*, 442 F.3d at 743, 746 n.6 (affirming dismissal of antitrust claims based on

5   prior release and noting that courts may properly take judicial notice of federal court dockets and

6   documents).

7       In conclusion, Exhibits A-C should be considered by the Court.

8

9   Dated:  February 4, 2020

10                                  **THOITS LAW**
                                  **Attorneys for Defendant**
                                  **DSS Technology Management, Inc.**

11

12                      By:

13                                  */s/ Nathaniel Lipanovich*
                                  **Andrew P. Holland/Bar No. 224737**
                                  **Nathaniel H. Lipanovich/Bar No. 292283**
14                                  A Professional Corporation
                                  400 Main Street, Suite 250
15                                  Los Altos, California 94022
                                  Telephone:  (650) 327-4200
16                                  Facsimile:  (650) 325-5572
                                  Email:      aholland@thoits.com
17                                              nlipanovich@thoits.com

18

19

20

21

22

23

24

25

26

27

28

DSS REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF SUPPLEMENTAL BRIEF IN
SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS AND TO STRIKE

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

# EXHIBIT A

# SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT ("Agreement"), effective as of the 8th day of January, 2019 ("Effective Date"), is entered into by and between DSS Technology Management Inc. ("DSS"), and Intel Corporation ("Intel"), Dell Inc. ("Dell"), GameStop Corp. ("GameStop"), Conn's, Inc. ("Conn's"), Conn Appliances, Inc. ("Conn Appliances"), Wal-Mart Stores, Inc. ("Wal-Mart"), Wal-Mart Stores Texas, LLC ("Wal-Mart Texas"), and AT&T Mobility LLC ("AT&T", together with Intel, Dell, GameStop, Conn's, Conn Appliances, Wal-Mart, and Wal-Mart Texas, each a "Defendant" and collectively the "Defendants").

# RECITALS

A.     DSS is the sole and exclusive owner of U.S. Patent No. 6,784,552 (the "'552 Patent") and U.S. Patent No. 5,965,924 (the "'924 Patent") and all rights to enforce such Patents;

B.     DSS filed suit against the Defendants in the United States District Court for the Eastern District of Texas, Tyler Division, for alleged infringement of the '552 Patent and the '924 Patent in Civil Action No. 6:15-cv-130-RWS (the "Intel Litigation");

C.     DSS's suit against AT&T, Dell, Conn's, Conn Appliances, Wal-Mart, and Wal-Mart Texas was severed from the Intel Litigation into Civil Action No. 6:16-cv-197-RWS (the "Customer Litigation," and together with the Intel Litigation collectively the "Litigation").

D.     Intel filed Petitions for Inter Partes Review of the '552 Patent in Case IPR2016-00287 and Case IPR2016-00288 and the '924 Patent in Case IPR2016-00289 and Case IPR2016290.  The Patent Trial and Appeal Board issued final written decisions invalidating all claims of the '552 Patent in Case IPR2016-00287 and Case IPR2016-00288 and all claims of the '924 Patent in Case IPR2016-00289 and Case IPR2016290. DSS filed an appeal with the Federal Circuit appealing the Patent Trial and Appeal Board decisions in Case IPR2016-00287 and Case IPR2016-00288.  DSS did not file an appeal to the Federal Circuit of the Patent Trial and Appeal Board decisions in Case IPR2016-00289 and Case IPR2016290.

E.     DSS and Intel (among other parties) are parties to DSS Technology Management Inc. v. Intel Corporation, Qualcomm Incorporated, GLOBALFOUNDRIES Inc., GLOBALFOUNDRIES U.S., Inc., GLOBALFOUNDRIES Dresden Module One LLC & Co. KG, GLOBALFOUNDRIES Dresden Module Two LLC & Co. KG, Nos. 2017-2366 -2367, on appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2016-00287, IPR2016-00288, IPR2016-01311, and IPR2016-01314 ("IPR Appeal");

F.     Each Defendant denies that it has ever infringed the Patents asserted against it in the Litigation, contests the validity and enforceability of the such Patents, and has filed counterclaims against DSS alleging noninfringement, invalidity and unenforceability;

G.     To avoid the time and expense of the Litigation and IPR Appeal, and without any admission of liability or fault, the applicable Parties desire to enter into a full, final, complete and global settlement of the Litigation and IPR Appeal on the terms and conditions set forth herein.

NOW THEREFORE, in consideration of the foregoing and mutual covenants in this Agreement and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## 1.0   DEFINITIONS

1.1     "Affiliate" means, with respect to a Person, any Person that, now or hereafter, is directly or indirectly controlled by, under common control with or that controls such Person. For purposes of this definition, "control" means (i) with respect to an individual, a contractual or other legal right to direct the relevant actions of the individual, or (ii) with respect to a corporation or other entity, (a) the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a corporation or other entity whether through the ownership of voting securities, or by contract or otherwise, (b) direct or indirect ownership of or the right to exercise at least fifty percent (50%) of the outstanding shares or securities entitled to vote for the election of directors or similar managing authority of the subject corporation or entity, or (c) direct or indirect ownership of or the right to exercise at least fifty percent (50%) of the ownership interest representing the right to make the decisions for the subject corporation or entity.  For the sake of clarity, "Affiliate" includes any indirect or direct parent company of any Defendant.

1.2     "Claims" means claims, counterclaims, answers, cross-claims and any judicial, administrative or other proceeding of any kind in any jurisdiction, as well as any and all actions, causes of action, costs, damages, debts, demands, expenses, liabilities, losses, obligations, proceedings, and suits of every kind and nature, liquidated or unliquidated, fixed or contingent, in law, equity, or otherwise, whether asserted or unasserted, whether presently known or unknown, whether anticipated or unanticipated, and whether direct or derivative.

1.3     "Covered Patents" means all Patents asserted by DSS or its Affiliates in the Litigation, including the '552 Patent and '924 Patent, any Patent that claims priority directly or indirectly from, or from which priority is directly or indirectly claimed by, or that has common priority with, any of the foregoing Patents, whether or not pending,

issued, expired, abandoned or closed, and all continuations, divisionals, continuations-in-part, foreign counterparts, reexaminations, reissues, substitutes, extensions and renewals of any of the foregoing.

1.4     "Covered Product" means (i) any Defendant Product, and (ii) any combination of a Defendant Product with any other product, service, material or technology where such Defendant Product allegedly provides or satisfies, in whole or in part, an element or step of any claim of a Covered Patent.

1.5     "Defendant Customers" means each Defendant's and its Affiliates' present, former or future direct and indirect customers, retailers, wholesalers, distributors, importers, exporters, dealers, resellers, licensees, users, original equipment manufacturers (OEMs), original design manufacturers (ODMs) and other similar Third Parties, as well as the respective Affiliates, predecessors, successors and assigns of each of the aforementioned Persons.

1.6     "Defendant Products" means: (i) any products (including without limitation integrated circuits, components, systems, devices, software, firmware, IP blocks, cores, cells or macros) or services that are manufactured or provided by or on behalf of a Defendant or its Affiliates, or used, sold, offered for sale, distributed, imported, exported or otherwise transferred or disposed of by a Defendant or its Affiliates, and any subsystems, portions, materials or components thereof, and any designs, methods or processes for the manufacture or operation thereof; and (ii) any combination of any item described above in the subsection (i) with any other products or services in which (a) the item described above in subsection (i) allegedly constitutes, satisfies or performs, in whole or in part, any element or step of a claim of a Covered Patent, or (b) a Defendant's or its Affiliate's furnishing of the item described above in subsection (i) would, in the absence of this Agreement, constitute direct or indirect infringement.

1.7     "Defendant Suppliers" means each Defendant's and its Affiliates' present, former or future direct and indirect providers of equipment, materials, processes or services for the fabrication of semiconductor products, as well as the respective Affiliates, predecessors, successors and assigns of each of the aforementioned Persons, in each case, solely with respect to their activities in connection with Defendant Products, including equipment, materials, processes or services for the fabrication of Defendant Products.

1.8     "Party" means DSS or any of the Defendants, individually.

1.9     "Parties" means DSS and the Defendants, collectively.

1.10    "Patents" means (i) all classes or types of domestic or foreign patents, including utility patents, utility models, design patents, invention certificates,

reexaminations, reissues, extensions, and renewals; and (ii) all applications (including provisional and nonprovisional applications), originals, continuations, divisionals, continuations-in-part, and rights to inventions for which applications may be filed in the United States or any other country or jurisdiction.

      1.11   "Person" means an individual, trust, corporation, partnership, joint venture, limited liability company, association, unincorporated organization or other legal or governmental entity.

      1.12   "Third Party" means a Person other than a Party or an Affiliate of a Party.

## 2.0   RELEASES AND DISMISSALS

      2.1   Releases.

          (i)   Release of Defendants. DSS, on behalf of itself and its Affiliates, fully and forever irrevocably and unconditionally releases, acquits and discharges each Defendant, and its Affiliates, predecessors, successors, assigns, directors, employees, and officers, from all past, present and future Claims, arising out of or in any way related to, in any manner or degree, the Covered Patents, the Litigation or the IPR Appeal or the facts raised in the Litigation or the IPR Appeal.

          (ii)   Release of Defendant Customers. DSS, on behalf of itself and its Affiliates, fully and forever irrevocably and unconditionally releases, acquits and discharges any and all Defendant Customers from all past, present and future Claims related to the Covered Patents (including without limitation those arising out of or in any way related to, in any manner or degree, the Litigation or IPR Appeal or the facts raised in the Litigation or the IPR Appeal) that are based in whole or in part on the use, purchase, sale, offer for sale, import, export, distribution or other disposal of Covered Products or the practice of any method or process in connection therewith, or the making of combinations of any item described in clause (i) of the definition of Defendant Products with any other products or services in which the item described in such clause (i) is asserted to constitute, satisfy or perform, in whole or in part, any element or step of a claim of a Covered Patent.

          (iii)   Release of Defendant Suppliers. DSS, on behalf of itself and its Affiliates, fully and forever irrevocably and unconditionally releases, acquits and discharges any and all Defendant Suppliers from all past, present and future Claims related to the Covered Patents (including without limitation those arising out of or in any way related to, in any manner or degree, the Litigation or IPR Appeal or the facts raised in the Litigation or the IPR Appeal) that are based in whole or in part on the manufacture, having manufactured, use, purchase, sale, offer for sale, distribution, import, export or other disposal of Covered Products to or by any Defendant or any of its Affiliates or the

practice of, or enablement or assistance of any Defendant or any of its Affiliates or Defendant Customers or Defendant Suppliers in practicing, any method or process in connection therewith.

(iv)    Release of DSS. Except with respect to the obligations created by or arising out of this Agreement, each Defendant, on behalf of itself and its Affiliates, hereby fully and forever irrevocably and unconditionally releases, acquits and discharges DSS and its Affiliates and its and their respective officers, directors, employees, agents, successors, assigns, representatives, and attorneys from any and all Claims asserted by such Defendant or its Affiliates in the Litigation.

2.2    Statutory Acknowledgement. The releases set forth in Section 2.1 are full and final releases by which the releasing Party, on behalf of itself and its Affiliates, waives all rights and benefits they may have had against the released Parties in the past, now have or in the future may have in connection with the Claims released in Section 2.1 under the terms of any statute or provision of law that provides that a general release does not extend to Claims which the releasing Party and its Affiliates do not know or suspect to exist in their favor at the time of executing this release by the Parties. The releasing Party and its Affiliates understand and accept the risk that they may have substantial Claims that are presently unknown, and they nevertheless release all such Claims within the scope of the foregoing releases. Specifically, in connection with the Claims released in Section 2.1, the releasing Party, on behalf of itself and its Affiliates, hereby expressly waives any rights they may have under California Civil Code Section 1542 (and any other law of similar effect in any jurisdiction), which provides that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Each Party and its Affiliates acknowledge that they have received independent legal advice from their attorneys with respect to waiving the provisions of California Civil Code § 1542 and acknowledge that this waiver is a material inducement to and consideration for the other Parties' execution of the Agreement.

2.3    Dismissal of Litigation.  Within five (5) business days after the Effective Date, DSS and each applicable Defendant shall cause their respective counsel to execute and file stipulations and orders in the forms set forth in Schedule A-1, Schedule A-2, Schedule A-3, and Schedule A-4, dismissing with prejudice all claims, affirmative defenses and counterclaims between the such Parties and their Affiliates in the Litigation.

The Parties shall proceed with any and all additional procedures needed to dismiss with prejudice all claims, affirmative defenses and counterclaims between such Parties and their Affiliates in the Litigation.

2.4     Dismissal of Appeal.   Within five (5) business days after the Effective Date, DSS and Intel shall cause their respective counsel to execute and file stipulations and orders in the forms set forth in Schedule B dismissing with prejudice all claims between such Parties and their Affiliates in the IPR Appeal. The Parties shall proceed with any and all additional procedures needed to dismiss with prejudice all claims between such Parties and their Affiliates in the IPR Appeal.   DSS shall be responsible for procuring similar dismissals from the other parties to such IPR Appeal on the same schedule.

2.5     Specific Performance.   The Parties acknowledge and agree that this Agreement is enforceable according to its terms with respect to final dismissal with prejudice of all claims between the respective Parties and their Affiliates in the Litigation and the IPR Appeal.

2.6     Protective Orders.  The Parties shall continue to comply with any protective order previously entered by the U.S. District Court for the Eastern District of Texas in the Litigation.

2.7     Costs and Attorneys' Fees. DSS and each Defendant agrees that, as between them, each shall bear its own costs and attorneys' fees relating to the Litigation, the IPR Appeal and/or the negotiation of this Agreement.  For the sake of clarity, this provision does not, in any way, affect defense or indemnity claims amongst the Defendants or any of their direct or indirect suppliers.

## 3.0     COVENANT NOT TO SUE; OTHER COVENANTS

3.1     Covenant to Defendants. DSS, on behalf of itself and its Affiliates, covenants and agrees that it and each of its Affiliates will not assert any Claim against any Defendant or its Affiliates for direct or indirect (including induced or contributory) infringement at any time, under any Covered Patent, regardless of whether such Claim arose before or after the Effective Date.

3.2     Covenant to Customers and Suppliers. DSS, on behalf of itself and its Affiliates, covenants and agrees that it and each of its Affiliates will not assert any Claim for direct or indirect (including induced or contributory) infringement against any Defendant Customer or Defendant Supplier (all of whom the Parties agree to be intended third-party beneficiaries of this Agreement) at any time, under any Covered Patent based on its use, sell, offer to sell, distribute, import, export and otherwise transfer or dispose of Defendant Products, or its practice of any process or method of operation for any

Defendant Products, regardless of whether such Claim arose before or after the Effective Date.

      3.3    <u>Software</u>. The Parties understand and acknowledge that Covered Products may consist of software, and that software is often distributed to end users by providing a single master copy of such software to a distributor or other agent and authorizing such agent to reproduce such software in substantially identical form and distribute it as a product of any Defendant or its Affiliates. Accordingly, the Parties agree that the covenants, releases and other benefits granted in this Agreement are intended to apply to the reproduction and subsequent distribution, as a product of each Defendant or its Affiliates, of such software in a substantially identical form by any such authorized agent.

      3.4    <u>Savings Clause</u>. In the event that DSS does not have the right to grant a covenant or release under any particular Covered Patent of the scope of the covenants, and releases set forth in this Agreement, then the covenant or release granted herein under such Patent shall be of the broadest scope within the scope of the rights set forth herein that DSS or any of its Affiliates has the right to grant. If DSS or any of its Affiliates has the right to enforce, or can directly or indirectly control or cause the enforcement of any Patent that would qualify as a Covered Patent if owned by DSS or any of its Affiliates, then DSS and its Affiliates shall not take any action to enforce or cause the enforcement of, and shall use best efforts to prevent the enforcement of, such Covered Patent against any Defendant or any of its Affiliates, or Defendant Customers or Defendant Suppliers within the scope of the releases and covenants set forth in this Agreement. If DSS or any of its Affiliates is entitled, pursuant to a contract to which DSS or any of its Affiliates is a party that expressly addresses the sharing of money damages or royalties from enforcement or licensing of Patents, to receive any share of money damages and/or royalties for any Patent owned by a Third Party that would qualify as a Covered Patent if owned by DSS or any of its Affiliates, then DSS shall reimburse the applicable Defendant for any such amounts which it receives if such Patent is enforced against such Defendant or its Affiliates, or its Defendant Customers or Defendant Suppliers within the scope of the releases and covenants set forth in this Agreement. Neither DSS nor any of its Affiliates shall in any event assist or encourage any Third Party to enforce any Patent against a Defendant or any of its Affiliates or Defendant Customers or Defendant Suppliers within the scope of the releases and covenants set forth in this Agreement. None of the foregoing in this Section 3.4 shall limit or qualify DSS's representations and warranties set forth in Section 4.0 or any of any Defendant's remedies for breach thereof including, without limitation, the indemnities set forth in Section 4.0. DSS shall defend, indemnify and hold harmless each Defendant and its Affiliates, and Defendant Customers and Defendant Suppliers for any and all costs and expenses (including reasonable fees of attorneys and other professionals), liabilities, damages and losses arising out of or resulting from DSS's breach of this Section 3.4, including from any actual or threatened assertion of any Patent that would have been

prevented by the Defendants having the full and effective benefit of the releases set forth in Section 2.0 and compliance with this Section 3.4.

      3.5    <u>Scope of Rights</u>. DSS expressly recognizes that the releases and covenants granted by this Agreement shall fully exhaust all rights under, and provide complete immunity from infringement with respect to, each Covered Patent, not only as to each Defendant and its Affiliates, but as to all their Defendant Customers and Defendant Suppliers and any other Persons who make, acquire or use Covered Products, whether alone or in combination or aggregation with other products, with respect to all claims under each Covered Patent relating to Covered Products or combinations or aggregations of Covered Products with other products. Such exhaustion shall apply regardless of where the Covered Product is made, used, or first sold (e.g., regardless of whether first sold in the United States or in a foreign country). This Agreement in no way limits or restricts the customers or other entities to which a Defendant is entitled to sell, offer to sell, distribute, purchase or otherwise transfer Covered Products. In no event may DSS or its Affiliates require a Defendant or its Affiliates or any of their Defenant Customers and/or Defendant Suppliers to pay any fees or other compensation with respect to the infringement or practice of the Covered Patents to the extent arising out of such entity making, selling, offering for Sale, using, exporting or importing Covered Products.

      3.6    <u>No Other Rights</u>.  No releases, rights or licenses are granted under any patents or other intellectual property rights, except as expressly provided herein, whether by implication, estoppel or otherwise.

      3.7    <u>Further Assurances</u>.  DSS and its Affiliates hereby agree to execute any further documents, including any declaration, oath, affidavit, assignment, confirmation or other instrument, or take any other reasonable action, necessary or appropriate to complete, effectuate or give full effect to the rights and covenants not to sue granted herein.

## 4.0    REPRESENTATIONS AND WARRANTIES

      4.1    <u>Representations and Warranties by Parties</u>. Each Party represents and warrants that it has the corporate power and authority to enter into this Agreement and to carry out the terms and obligations set forth in this Agreement, and that the person executing this Agreement on its behalf has the authority to act for and bind such Party.

      4.2    <u>Representations and Warranties by DSS</u>. DSS represents and warrants that: (i) it is the sole and exclusive owner of all right, title, and interest in and to the Covered Patents, including all rights to claim and recover for alleged infringement thereof, and has all legal rights necessary to grant the covenants, and releases provided for in this Agreement; (ii) it has the full right and authority to enter into this Agreement on behalf of and bind all of its Affiliates, and shall cause all such Affiliates to comply with and grant

- 8 -

all necessary rights, covenants and releases to effect this Agreement, and all other terms and conditions of this Agreement, and shall be directly liable to the Defendants and their Affiliates for any breach of this Agreement by any of DSS's Affiliates, including any failure by any Affiliate to grant any such right, covenant or release; (iii) neither it nor any of its Affiliates has transferred or assigned or purported to transfer or assign to any Person any Claims purported to be herein released; (iv) neither it nor any of its Affiliates has instituted any lawsuit or other proceeding against the Defendants or any of its Affiliates other than the Litigation and (v) neither it nor any of its Affiliates have participated in any way (directly or indirectly) in any transaction the purpose or effect of which is to avoid or prevent extending to Defendants and their Affiliates, and Defendant Customers or Defendant Suppliers any part of the benefit of any of the rights, licenses, covenants or releases hereunder.

4.3     DSS Indemnity. DSS shall defend, indemnify and hold harmless each Defendant and its Affiliates, and all Defendant Customers and Defendant Suppliers for any and all costs and expenses (including reasonable fees of attorneys and other professionals), liabilities, damages and losses arising out of or resulting from any breach of its obligations under this Agreement, including its representations, warranties or covenants set forth in this Section 4.0.

**5.0     TERM**

5.1     Term. The term of this Agreement shall commence upon the Effective Date and shall continue in perpetuity.

5.2     No Termination; Remedies for Breach.  The Parties expressly agree that nothing in this Agreement shall be deemed to limit either Party's remedies for breach of this Agreement, provided that no Party shall have the right to seek rescission of this Agreement or any other remedy that seeks to invalidate, terminate, void, or undo this Agreement, and this Agreement shall not be terminable under any circumstance.  If any Party fails to take the actions required of it to complete the litigation dismissals and otherwise fully comply with Section 2.0 above, and such Party does not cure such failure within thirty (30) business days after written notice from any other Party, then any other affected Party shall be entitled to obtain (and the breaching Party hereby waives any right to object to) specific performance of the breaching Party's obligations under Section 2.0 hereof.  In addition, in the event of any proceeding to enforce the provisions of this Agreement, the prevailing party (as determined by the court) shall be entitled to reasonable attorneys' fees as determined by the court.

**6.0     ASSIGNMENT AND TRANSFER**

6.1     Assignment of Covered Patents by DSS or an Affiliate. DSS agrees, on behalf of itself and each of its Affiliates, that all of the covenants, releases and other

rights granted by them and all their obligations set forth in this Agreement (the "Patent Obligations") shall run with the Covered Patents, and that DSS shall ensure that any assignee, transferee or successor to any of the Covered Patents (including the acquiring or surviving entity in connection with any acquisition or other change of control of DSS), or any other Person (such as an exclusive licensee) that obtains any enforcement rights with respect to any of the Covered Patents agrees in writing, prior to such assignment, transfer or grant, to be bound by the relevant Patent Obligations (including the obligation to obtain such written agreement from any subsequent assignee, transferee, successor or grantee). Breach by DSS or any assignee, transferee or successor of the obligations set forth in this Section 6.1 shall be regarded as a material breach of this Agreement by DSS, and DSS shall indemnify and hold harmless each Defendant and its Affiliates, and Defendant Customers and Defendant Suppliers for any costs and expenses (including reasonable fees of attorneys and other professionals), liabilities, damages and losses arising out of or resulting from any such breach, including from any assertion of any Covered Patent that would have been prevented by compliance with this Section 6.1.

6.2    Limitation on Assignments. Except as expressly set forth in this Section 6.0, neither Party may assign this Agreement or its rights or obligations hereunder without the other Party's prior written consent. Subject to the foregoing, this Agreement shall inure to the benefit of each Party's permitted successors and assigns.

6.3    Sale or Transfer. Each Party shall have the right to assign this Agreement in connection with a merger, acquisition or other sale or transfer of all or substantially all of the business, stock or assets to which this Agreement relates.

6.4    Acquisitions. If any Defendant or any of its Affiliates acquires any Third Party, or any business or asset of a Third Party, such acquired Third Party, or business or asset, shall be granted the releases set forth in Section 2.0 and the and covenants set forth in Section 3.0 retroactively as of the Effective Date, and shall thereby be released from any liability for infringement of the Covered Patents, whether past, present or future, as well as obtaining the benefits of all other rights set forth in this Agreement.

6.5    Spin-Offs. If a Defendant or any of its Affiliates sells or transfers a portion of its assets or business, including through formation of a joint venture or sale of an entity (a "Spin-Off"), then such Defendant or such Affiliates, as applicable, shall have the right to grant a sublicense, or otherwise extend such Defendant's rights, under the covenants and releases granted herein to such Spin-Off with respect to such assets or business provided, however, that any rights so sublicensed to any Spin-Off shall be limited to the business of the Spin-Off and shall not extend otherwise to any acquirer of such Spin-Off, the acquirer's Affiliates or any such acquirer's or such Affiliates' other businesses. This Agreement shall otherwise remain in effect with respect to such Defendant and its Affiliates and the covenants and releases shall continue to apply to the business and

assets retained or later acquired by each Defendant and its Affiliates in addition to those transferred to the Spin-Off.

## 7.0   NOTICES

7.1    Notices. All notices required or permitted to be given under this Agreement shall be in writing and shall be delivered by pre-paid nationally-recognized, overnight courier with tracking capabilities or by registered or certified airmail, postage prepaid. All notices shall be addressed as follows:

| For DSS: | DSS Technology Management, Inc. |
|---|---|
| | c/o Document Security Systems, Inc. |
| | 200 Canal View Boulevard, Suite 300 |
| | Rochester, New York 14623 |
| | Attn: General Counsel |
| For each Defendant: | The respective address(es) set forth in Schedule C hereto. |

Such notices shall be deemed to have been served when received by addressee. Any Party may give written notice of a change of address and, after notice of such change has been received, any notice or request shall thereafter be given to such Party as above provided at such changed address.

## 8.0   GENERAL PROVISIONS

8.1    Licenses in Bankruptcy. Without acknowledging that this Agreement is an executory contract, the Parties agree that all rights, releases, and immunities granted under or pursuant to this Agreement by each of the Parties are, and shall otherwise be deemed to be, for the purpose of Section 365(n) of the US Bankruptcy Code, as amended (the "Bankruptcy Code"), licenses of rights to "intellectual property" as defined under Section 101(35A) of the Bankruptcy Code. The Parties agree that each of the Parties shall retain and may fully exercise all of their respective rights and elections under the Bankruptcy Code. The Parties further agree that, in the event that any proceeding shall be instituted by or against a Party seeking to adjudicate it as bankrupt or insolvent, or seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, relief or composition of that Party or that Party's debt under any law relating to bankruptcy, insolvency, or reorganization or relief of debtors, or seeking an entry of an order for relief or the appointment of a receiver, trustee or other similar official for that Party or any substantial part of its property, or if a Party hereto shall take any action to authorize any of the foregoing actions, the other Party shall have the right to retain and enforce their respective rights under this Agreement.

8.2    Choice of Law.  This Agreement and matters connected with the performance thereof shall be construed, interpreted and governed in all respects in accordance with the laws of the United States of America and Delaware, without reference to conflict of laws principles.

8.3    Dispute Resolution.  The Parties agree (a) that any disputes and litigation regarding this Agreement, its construction, and matters connected with its performance, shall be subject to the exclusive jurisdiction of the Court of Chancery of the State of Delaware pursuant to 10 Del. C. Section 346 or the United States District Court for the District of Delaware and (b) to submit any disputes, matters of interpretation, or enforcement actions arising with respect to the subject matter of this Agreement exclusively to such Court. The Parties hereby waive any challenge to the jurisdiction or venue of such Court over such matters. A Party that obtains a judgment against any other Party in the Courts identified in this section may enforce that judgment in any court that has jurisdiction over the Parties.

8.4    Severability.  If any provision of this Agreement is held to be illegal or unenforceable, such provision shall be limited or eliminated to the minimum extent necessary so that the remainder of this Agreement will continue in full force and effect and be enforceable.  The Parties agree to negotiate in good faith an enforceable substitute provision for any invalid or unenforceable provision that most nearly achieves the intent of such provision.

8.5    Entire Agreement.  This Agreement embodies the entire understanding of the Parties with respect to the subject matter hereof, and merges all prior discussions among them, and none of the Parties shall be bound by any conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof other than as expressly provided herein.  No oral explanation or oral information by any Party hereto shall alter the meaning or interpretation of this Agreement.

8.6    Modification; Waiver.  No modification or amendment to this Agreement, nor any waiver of any rights, will be effective unless assented to in writing by the Parties, and the waiver of any breach or default will not constitute a waiver of any right hereunder or any subsequent breach or default.

8.7    No Additional Representations.    Each Party has entered into this Agreement based on its own investigation of the facts and circumstances and its own business judgment.  No Party has relied upon any representation of the other Party in entering this Agreement except for those expressly set forth herein.  Each Party expressly waives and disclaims any representation made prior to the Effective Date of this Agreement by itself or the other Party except for those expressly set forth herein.

8.8    <u>Construction; Language</u>.    Any rule of construction to the effect that ambiguities are to be resolved against the drafting party will not be applied in the construction or interpretation of this Agreement.   As used in this Agreement, the words "include" and "including" and variations thereof will not be deemed to be terms of limitation, but rather will be deemed to be followed by the words "without limitation." The headings in this Agreement will not be referred to in connection with the construction or interpretation of this Agreement.   This Agreement is in the English language only, which language shall be controlling in all respects, and all notices under this Agreement shall be in the English language.

8.9    <u>Several Liability of Defendants</u>.   No Defendant shall be responsible for any acts or omissions of DSS or any other Defendant.

8.10    <u>Counterparts</u>.    This Agreement may be executed in counterparts or duplicate originals, all of which shall be regarded as one and the same instrument, and which shall be the official and governing version in the interpretation of this Agreement. This Agreement may be executed by facsimile signatures and such signatures shall be deemed to bind each Party as if they were original signatures.

*[Signature page follows]*

IN WITNESS WHEREOF, the undersigned Parties have executed this Settlement Agreement effective as of the Effective Date.

**DSS TECHNOLOGY MANAGEMENT INC.**

By: _/. D'Angelo_
Name: Jeffrey D'Angelo
Title: VP, General Counsel

DEFENDANTS:

| INTEL CORPORATION<br><br>By: _KScha_<br>Name: Kimberly Schmitt<br>Title: Director of Patent Litigation | DELL INC.<br><br>By:_____<br>Name:_____<br>Title: |
|---|---|
| GAMESTOP CORP.<br><br>By:_____<br>Name:_____<br>Title: | CONN'S, INC.<br><br>By:_____<br>Name:_____<br>Title: |
| CONN'S APPLIANCES, INC.<br>By:<br><br>_____<br>Name:_____<br>Title: | WAL-MART STORES, INC.<br><br>By:_____<br>Name:_____<br>Title: |
| WAL-MART STORES TEXAS, LLC<br><br>By:_____<br>Name:_____<br>Title: | AT&T MOBILITY LLC<br><br>By:_____<br>Name:_____<br>Title: |

IN WITNESS WHEREOF, the undersigned Parties have executed this Settlement Agreement effective as of the Effective Date.

**DSS TECHNOLOGY MANAGEMENT INC.**

By: _J. D'Angelo_
Name: Jeffrey D'Angelo
Title: VP, General Counsel

DEFENDANTS:

| INTEL CORPORATION | DELL INC. |
|---|---|
| By:_____ | By:_____ |
| Name: | Name: |
| Title: | Title: |
| **GAMESTOP CORP.** | **CONN'S, INC.** |
| By: _Dan L. Reed_ | By:_____ |
| Name: Dan L. Reed | Name: |
| Title: General Counsel, U.S. | Title: |
| **CONN'S APPLIANCES, INC.** | **WAL-MART STORES, INC.** |
| By:_____ | By:_____ |
| Name: | Name: |
| Title: | Title: |
| **WAL-MART STORES TEXAS, LLC** | **AT&T MOBILITY LLC** |
| By:_____ | By:_____ |
| Name: | Name: |
| Title: | Title: |

IN WITNESS WHEREOF, the undersigned Parties have executed this Settlement Agreement effective as of the Effective Date.

**DSS TECHNOLOGY MANAGEMENT INC.**

By: _J. D'Angelo_

Name: Jeffrey D'Angelo

Title: VP, General Counsel

DEFENDANTS:

| INTEL CORPORATION<br><br>By:_____<br>Name:<br>Title: | DELL INC.<br><br>By:_____<br>Name:<br>Title: |
|---|---|
| GAMESTOP CORP.<br><br>By:_____<br>Name:<br>Title: | CONN'S, INC.<br><br>By: _Mark_<br>Name: MARK PRIOR<br>Title: SECRETARY |
| CONN'S APPLIANCES, INC.<br>By: _Mark_<br>Name: MARK PRIOR<br>Title: General Counsel, VP | WAL-MART STORES, INC.<br><br>By:_____<br>Name:<br>Title: |
| WAL-MART STORES TEXAS, LLC<br><br>By:_____<br>Name:<br>Title: | AT&T MOBILITY LLC<br><br>By:_____<br>Name:<br>Title: |

IN WITNESS WHEREOF, the undersigned Parties have executed this Settlement Agreement effective as of the Effective Date.

**DSS TECHNOLOGY MANAGEMENT INC.**

By:_____
Name:
Title:

DEFENDANTS:

| INTEL CORPORATION | DELL INC. |
|---|---|
| By:_____ <br> Name: <br> Title: | By:_____ <br> Name: <br> Title: |
| **GAMESTOP CORP.** | **CONN'S, INC.** |
| By:_____ <br> Name: <br> Title: | By:_____ <br> Name: <br> Title: |
| **CONN'S APPLIANCES, INC.** <br> By: <br> _____ <br> Name: <br> Title: | **WAL-MART STORES, INC.** <br> By: *[signature]* <br> Name: Ryan Peterson <br> Title: VP Omn |
| **WAL-MART STORES TEXAS, LLC** <br> By: *[signature]* <br> Name: Ryan Peterson <br> Title: VP omn | **AT&T MOBILITY LLC** <br> By:_____ <br> Name: <br> Title: |

- 14 -

IN WITNESS WHEREOF, the undersigned Parties have executed this Settlement Agreement effective as of the Effective Date.

**DSS TECHNOLOGY MANAGEMENT INC.**

By: _J. D'Angelo_
Name: Jeffrey D'Angelo
Title: VP, General Counsel

DEFENDANTS:

| INTEL CORPORATION | DELL INC. |
|---|---|
| By:_____ Name: Title: | By: _Lauren Hoffen_ Name: Lauren Hoffen Title: Sr. Legal Director |
| GAMESTOP CORP. By:_____ Name: Title: | CONN'S, INC. By:_____ Name: Title: |
| CONN'S APPLIANCES, INC. By: _____ Name: Title: | WAL-MART STORES, INC. By:_____ Name: Title: |
| WAL-MART STORES TEXAS, LLC By:_____ Name: Title: | AT&T MOBILITY LLC By:_____ Name: Title: |

IN WITNESS WHEREOF, the undersigned Parties have executed this Settlement Agreement effective as of the Effective Date.

**DSS TECHNOLOGY MANAGEMENT INC.**

By: *l. D'Angelo*
Name: Jeffrey D'Angelo
Title: VP, General Counsel

DEFENDANTS:

| INTEL CORPORATION<br><br>By:_____<br>Name:<br>Title: | DELL INC.<br><br>By:_____<br>Name:<br>Title: |
|---|---|
| GAMESTOP CORP.<br><br>By:_____<br>Name:<br>Title: | CONN'S, INC.<br><br>By:_____<br>Name:<br>Title: |
| CONN'S APPLIANCES, INC.<br>By:<br>_____<br>Name:<br>Title: | WAL-MART STORES, INC.<br><br>By:_____<br>Name:<br>Title: |
| WAL-MART STORES TEXAS, LLC<br><br>By:_____<br>Name:<br>Title: | AT&T MOBILITY LLC<br><br>By: *R Colon*<br>Name: TARA COLON<br>Title: AVP, Product Marketing |

## SCHEDULE A

### Stipulations and Orders for Dismissal of the Litigation

Schedule A-1, Stipulated Motion to Dismiss Litigation against Intel

[Attached on the following pages]

Schedule A-2, Stipulated Motion to Dismiss Litigation against the other Defendants

[Attached on the following pages]

Schedule A-3, Proposed Order for Stipulated Motion to Dismiss Litigation against Intel

[Attached on the following pages]

Schedule A-4, Proposed Order for Stipulated Motion to Dismiss Litigation against the other Defendants

[Attached on the following pages]

A-1

SCHEDULE A-1, STIPULATED MOTION TO DISMISS LITIGATION AGAINST INTEL

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| DSS Technology Management, Inc., | |
| Plaintiff, | Civil Action No. 6:15-cv-130-RWS |
| v. | |
| Intel Corporation, et al., | |
| Defendants. | |

## AGREED MOTION FOR DISMISSAL WITH PREJUDICE

Pursuant to Rule 41(a)(2), Plaintiff DSS Technology Management, Inc. and Defendant Intel Corporation respectfully request and move that the Court dismiss all of their respective claims and counterclaims in this action WITH PREJUDICE.  Each party shall bear its own costs and attorneys' fees.

A proposed Order to this effect is attached.

A-3

Dated:   January XX, 2019          Respectfully submitted by:

*/s/ Derek Gilliland, with*
*permission by*
*Michael E. Jones*
**Derek Gilliland**
Texas State Bar No. 24007239
**Attorney in Charge**

**Kirk Voss**
Texas State Bar No. 24075229
**Robert Winn Cutler**
State Bar No. 24084364
**Ross Leonoudakis**
State Bar No. 24087915
Nix Patterson & Roach, L.L.P.
5215 N. O'Connor Blvd., Suite 1900
Irving, Texas 75039
972.831.1188 (telephone)
972.444.0716 (facsimile)
edchin@me.com
christianhurt@nixlawfirm.com
kirkvoss@me.com
winncutler@nixlawfirm.com
rossl@nixlawfirm.com


**William E. "Bo" Davis, III**
Texas State Bar No. 24047416
**Christian J. Hurt**
State Bar No. 24084364
THE DAVIS FIRM, PC
213 N. Fredonia St.
Longview, Texas 75601
Telephone: 903-230-9090
Telecopier: 903-230-9661
Email: bdavis@bdavisfirm.com

**ATTORNEYS FOR PLAINTIFF DSS**
**TECHNOLOGY MANAGEMENT INC.**



*/s/ Michael E. Jones*


A-4

Michael E. Jones
Texas Bar No. 10929400
POTTER MINTON, P.C.
110 North College, Suite 500
Tyler, Texas 75702
Tel.: (903) 597-8311
Fax: (903) 593-0846
Email: mikejones@potterminton.com

Michael J. Summersgill (admitted
*pro hac vice*)
William F. Lee (admitted *pro hac
vice*)
Sarah Beigbeder Petty (admitted
*pro hac vice*)
Louis W. Tompros (admitted *pro hac
vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel.: (617) 526-6000
Fax : (617) 526-5000
Email: william.lee@wilmerhale.com
       michael.summersgill@wilmerhale.com
       sarah.petty@wilmerhale.com
       louis.tompros@wilmerhale.com

**ATTORNEYS FOR DEFENDANT
INTEL CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 9, 2019.

*/s/ Michael E. Jones*

A-5

SCHEDULE A-2, STIPULATED MOTION TO DISMISS LITIGATION AGAINST
THE OTHER DEFENDANTS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| DSS Technology Management, Inc., | |
| Plaintiff, | Civil Action No. 6:16-cv-197-RWS |
| v. | |
| Intel Corporation, et al., | |
| Defendants. | |

## AGREED MOTION FOR DISMISSAL WITH PREJUDICE

Pursuant to Rule 41(a)(2), Plaintiff DSS Technology Management, Inc. and Defendants Dell Inc., GameStop Corp., Conn's, Inc., Conn Appliances, Inc., Wal-Mart Stores, Inc., Wal-Mart Stores Texas, LLC and AT&T Mobility LLC (collectively, "Defendants") respectfully request and move that the Court dismiss all of their respective claims and counterclaims in this action WITH PREJUDICE. Each party shall bear its own costs and attorneys' fees.

A proposed Order to this effect is attached.

A-7

Dated:   January XX, 2019          Respectfully submitted by:

*/s/ Derek Gilliland, with*
*permission by*
*Michael E. Jones*
**Derek Gilliland**
Texas State Bar No. 24007239
**Attorney in Charge**

**Kirk Voss**
Texas State Bar No. 24075229
**Robert Winn Cutler**
State Bar No. 24084364
**Ross Leonoudakis**
State Bar No. 24087915
Nix Patterson & Roach, L.L.P.
5215 N. O'Connor Blvd., Suite 1900
Irving, Texas 75039
972.831.1188 (telephone)
972.444.0716 (facsimile)
edchin@me.com
christianhurt@nixlawfirm.com
kirkvoss@me.com
winncutler@nixlawfirm.com
rossl@nixlawfirm.com

**William E. "Bo" Davis, III**
Texas State Bar No. 24047416
**Christian J. Hurt**
State Bar No. 24084364
THE DAVIS FIRM, PC
213 N. Fredonia St.
Longview, Texas 75601
Telephone: 903-230-9090
Telecopier: 903-230-9661
Email: bdavis@bdavisfirm.com

**ATTORNEYS FOR PLAINTIFF DSS**
**TECHNOLOGY MANAGEMENT INC.**

*/s/ Michael E. Jones*

A-8

Michael E. Jones
Texas Bar No. 10929400
POTTER MINTON, P.C.
110 North College, Suite 500
Tyler, Texas 75702
Tel.: (903) 597-8311
Fax: (903) 593-0846
Email: mikejones@potterminton.com

Michael J. Summersgill (admitted
*pro hac vice*)
William F. Lee (admitted *pro hac
vice*)
Sarah Beigbeder Petty (admitted
*pro hac vice*)
Louis W. Tompros (admitted *pro hac
vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel.: (617) 526-6000
Fax : (617) 526-5000
Email: william.lee@wilmerhale.com
michael.summersgill@wilmerhale.com
sarah.petty@wilmerhale.com
louis.tompros@wilmerhale.com

ATTORNEYS FOR DEFENDANTS GAMESTOP
CORPORATION, CONN'S INC., CONN
APPLIANCES, INC., WAL-MART STORES,
INC., AND WAL-MART STORES TEXAS
LLC

*/s/ James G. Warriner, with
permission by
Michael E. Jones*
James G. Warriner
State Bar No. 24070813
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite
1100

A-9

Austin, TX 78701
Tel: 512.474.5201
Fax: 512.536.4598
jim.warriner@nortonrosefulbright.c
om

Dan D. Davison
State Bar No. 05590900
Brandy S. Nolan
State Bar No. 24070337
NORTON ROSE FULBRIGHT US LLP
2200 Ross Ave., Suite 3600
Dallas, TX 75201
Tel: 214.855.8000
Fax: 214.855.8200
dan.davison@nortonrosefulbright.co
m
brandy.nolan@nortonrosefulbright.c
om

Darren Smith
State Bar No. 24088433
NORTON ROSE FULBRIGHT US LLP
1301 McKinney Ave., Suite 5100
Houston, TX 77010
Tel: 713.651.5151
Fax: 713.651.5246
darren.smith@nortonrosefulbright.c
om

Deron R. Dacus
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Tel: (903) 705-1117
Fax: (903) 705-1117
ddacus@dacusfirm.com

**ATTORNEYS FOR DEFENDANT DELL INC.**

*/s/ Harry L. Gillam, Jr., with
permission by
Michael E. Jones*

Harry L. Gillam, Jr.
State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 S. Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
gil@gillamsmithlaw.com

Ronald S. Lemieux
CA Bar No. 120822
Vid Bhakar
CA Bar No. 220210
SINGULARITY LLP
275 Shoreline Drive, Suite 520
Redwood Shores, CA 94065
Telephone: (650) 720-4650
Facsimile: (650) 720-4662
rlemieux@ipsingularity.com
vbhakar@ipsingularity.com

**ATTORNEYS FOR DEFENDANT AT&T
MOBILITY LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 9, 2019.

/s/ Michael E. Jones

A-11

SCHEDULE A-3, PROPOSED ORDER FOR STIPULATED MOTION TO DISMISS LITIGATION AGAINST INTEL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| DSS Technology Management, Inc., | Civil Action No. 6:15-cv-130-RWS |
| Plaintiff, | |
| v. | |
| Intel Corporation, et al., | |
| Defendants. | |

## ORDER DISMISSING ALL CLAIMS AND COUNTERCLAIMS WITH PREJUDICE

Having considered Plaintiff DSS Technology Management, Inc. ("DSS") and Defendant Intel Corporation's ("Intel") Agreed Motion to Dismiss With Prejudice as to the claims and counterclaims asserted by Plaintiff DSS and Defendant Intel, it is hereby ORDERED that DSS's claims against Intel are dismissed with prejudice, with each party to bear its own costs and attorneys' fees.

IT IS FURTHER ORDERED that Intel's counterclaims against DSS are dismissed with prejudice, with each party to bear its own costs and attorneys' fees.

A-13

SCHEDULE A-4, PROPOSED ORDER FOR STIPULATED MOTION TO DISMISS
LITIGATION AGAINST THE OTHER DEFENDANTS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| DSS Technology Management, Inc., <br><br>             Plaintiff, <br><br>    v. <br><br> Intel Corporation, et al., <br><br>             Defendants. | Civil Action No. 6:16-cv-197-RWS |

## ORDER DISMISSING ALL CLAIMS AND COUNTERCLAIMS WITH PREJUDICE

Having considered Plaintiff DSS Technology Management, Inc. ("DSS") and Defendants Dell Inc., GameStop Corp., Conn's, Inc., Conn Appliances, Inc., Wal-Mart Stores, Inc., Wal-Mart Stores Texas, LLC and AT&T Mobility LLC's (collectively, "Defendants") Agreed Motion to Dismiss With Prejudice as to the claims and counterclaims asserted by Plaintiff DSS and Defendants, it is hereby ORDERED that DSS's claims against Defendants are dismissed with prejudice, with each party to bear its own costs and attorneys' fees.

IT IS FURTHER ORDERED that Defendants' counterclaims against DSS are dismissed with prejudice, with each party to bear its own costs and attorneys' fees.

A-15

# SCHEDULE B

## Stipulations and Orders for Dismissal of the IPR Appeal

[Attached on the following pages]

Nos. 2017-2366 -2367

# United States Court of Appeals for the Federal Circuit

DSS Technology Management Inc.,

*Appellant,*

*v.*

INTEL CORPORATION, QUALCOMM INCORPORATED, GLOBALFOUNDRIES INC., GLOBALFOUNDRIES U.S., INC., GLOBALFOUNDRIES DRESDEN MODULE ONE LLC & CO. KG, GLOBALFOUNDRIES DRESDEN MODULE TWO LLC & CO. KG,

*Appellees.*

On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2016-00287, IPR2016-00288, IPR2016-01311, and IPR2016-01314.

**APPELLANT DSS TECHNOLOGY MANAGEMENT, INC.'S AND APPELLEE INTEL CORPORATION'S STIPULATED MOTION TO VOLUNTARILY DISMISS APPEAL**

January XX, 2019

Pursuant to Federal Rule of Appellate Procedure 42(b),

Appellant DSS Technology Management, Inc. and Appellees

Intel Corporation, Qualcomm Incorporated,

GLOBALFOUNDRIES Inc., GLOBALFOUNDRIES U.S., Inc.,

GLOBALFOUNDRIES Dresden Module One LLC & Co. KG, and

GLOBALFOUNDRIES Dresden Module Two LLC & Co. KG hereby

move the Court for an order dismissing the above-

captioned appeal.

The parties have agreed that each side shall bear its

own costs and fees on appeal.


January XX, 2019                        Respectfully

submitted,


/s/ James C. Gumina                /s/ Michael J.
JAMES C. GUMINA                    Summersgill
MICHAEL D. CLIFFORD                WILLIAM F. LEE
JAMES L. LOVSIN                    MICHAEL J. SUMMERSGILL
MICHAEL D. ANDERSON                LOUIS W. TOMPROS
GEORGE T. LYONS, III               WILMER CUTLER PICKERING HALE
                                        AND DORR LLP
MCDONNELL BOEHNEN                  60 STATE STREET
HULBERT & BERGHOFF LLP             BOSTON, MA  02109
300 SOUTH WACKER DRIVE             (617) 536-6000
CHICAGO, IL  60606
(312) 913-0001                     Attorneys for Appellee
                                   Intel Corporation
Attorneys for Appellant DSS

Technology Management, Inc.　　　/s/ David McCombs

DAVID MCCOMBS
DEBRA J MCCOMAS
DAVID M. O'DELL
HAYNES AND BOONE LLP
2323 Victory Avenue
Suite 700
Dallas, Texas 75219
(972) 739-8636


*Attorneys for Appellees
Qualcomm Incorporated,
GLOBALFOUNDRIES Inc.,
GLOBALFOUNDRIES U.S.,
Inc., GLOBALFOUNDRIES
Dresden Module One LLC &
Co. KG, and
GLOBALFOUNDRIES Dresden
Module Two LLC & Co. KG*

## CERTIFICATE OF INTEREST

Counsel for Appellant DSS Technology Management, Inc. certifies as follows:

1.   The full name of every party or *amicus* represented by us is:

DSS Technology Management Inc.

2.   The names of the real party in interest represented by us is:

Not applicable.

3.   All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Document Security Systems, Inc.

4.   The names of all law firms and the partners or associates that appeared for the party or *amicus* now represented by us in the trial court, or are expected to appear in this court are:

McDonnell Boehnen Hulbert & Berghoff LLP; James C. Gumina; Michael D. Clifford; James L. Lovsin; Michael D. Anderson; George T. Lyons, III; Nix Patterson & Roach, LLP; Derek Tod Gilliland; Andrew Joseph Wright (former); Christian J. Hurt; Edward K Chin (former); Kirk Austin Voss; Robert Winn Cutler; Ross Leonoudakis; The Davis Firm, P.C.; William Ellsworth Davis, III; Smith & Hopen, P.A.; Andriy Lytvyn; Anton J. Hopen

```
Dated:   January XX, 2019      /s/ James C. Gumina
                                JAMES C. GUMINA

                                MCDONNELL BOEHNEN
                                HULBERT & BERGHOFF LLP
                                300 SOUTH WACKER DRIVE
                                CHICAGO, IL  60606
                                (312) 913-0001
```

## CERTIFICATE OF INTEREST

Counsel for Appellee Intel Corporation certifies as follows:

1.   The full name of every party or *amicus* represented by us is:

     Intel Corporation

2.   The names of the real party in interest represented by us is:

     Not applicable.

3.   All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

     Not applicable.

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by us in the trial court, or are expected to appear in this court are:

     WILMER CUTLER PICKERING HALE AND DORR LLP:  William F. Lee, Michael J. Summersgill, Louis Tompros, Sarah Petty, Cosmin Maier (former), James L. Quarles III (former), Grant K. Rowan, Yung-Hoon Ha

```
Dated:   January XX, 2019        /s/ Michael J. Summersgill
                                 _____

                                 MICHAEL J. SUMMERSGILL

                                 WILMER CUTLER PICKERING HALE
                                     AND DORR LLP
                                 60 STATE STREET
                                 BOSTON, MA  02109
                                 (617) 536-6000
```

## CERTIFICATE OF INTEREST

Counsel for Appellees Qualcomm Incorporated,
GLOBALFOUNDRIES Inc., GLOBALFOUNDRIES U.S., Inc.,
GLOBALFOUNDRIES Dresden Module One LLC & Co. KG, and
GLOBALFOUNDRIES Dresden Module Two LLC & Co. KG
certifies as follows:

1.   The full name of every party or *amicus* represented
by us is:

> Qualcomm Incorporated; GLOBALFOUNDRIES Inc.;
> GLOBALFOUNDRIES U.S., Inc.; GLOBALFOUNDRIES
> Dresden Module One LLC & Co. KG;
> GLOBALFOUNDRIES Dresden Module Two LLC & Co. KG
> 2.

2.   The names of the real party in interest
represented by us is:

Not applicable.

3.   All parent corporations and any publicly held
companies that own 10 percent or more of the stock of
the party or amicus curiae represented by me are:

> Qualcomm Incorporated has no parent
> corporation.
>
> Common parent companies of GLOBALFOUNDRIES
> Inc.; GLOBALFOUNDRIES U.S., Inc.;
> GLOBALFOUNDRIES Dresden Module One LLC & Co.
> KG; GLOBALFOUNDRIES Dresden Module Two LLC &
> Co. KG (the "GLOBALFOUNDRIES entities") are
> GLOBALFOUNDRIES Netherlands Cooperatief U.A., a
> Netherlands cooperative, and GLOBALFOUNDRIES
> Inc., a Cayman Islands company.
>
> Direct or indirect parent corporation(s) of
> GLOBALFOUNDRIES Dresden Module One LLC & Co.

KG. are GLOBALFOUNDRIES Dresden Module One
Holding GmbH, GLOBALFOUNDRIES Management
Services LLC & Co. KG, GLOBALFOUNDRIES
Netherlands Holding B.V., GLOBALFOUNDRIES
Netherlands Cooperatief U.A., and
GLOBALFOUNDRIES Inc.

Direct or indirect parent corporation(s) of
GLOBALFOUNDRIES Dresden Module Two LLC & Co.
KG. are GLOBALFOUNDRIES Dresden Module Two
Holding GmbH, GLOBALFOUNDRIES Management
Services LLC & Co. KG, GLOBALFOUNDRIES
Netherlands Holding B.V., GLOBALFOUNDRIES
Netherlands Cooperatief U.A., and
GLOBALFOUNDRIES Inc.

No publicly held corporation holds 10% or more
of the stock of the parties represented by me.

4.   The names of all law firms and the partners or
associates that appeared for the party or amicus now
represented by us in the trial court, or are expected
to appear in this court are:

HAYNES AND BOONE LLP

Dated:  January XX, 2019      /s/ David McCombs
                              DAVID MCCOMBS

                              HAYNES AND BOONE LLP
                              2323 Victory Avenue
                              Suite 700
                              Dallas, Texas 75219
                              (972) 739-8636

B-10

## ECF-3(B)(2) REPRESENTATION

Pursuant to this Court's Administrative Order Regarding Electronic Case Filing, the undersigned represents under ECF-3(b)(2) that counsel for Appellees Intel Corporation, Qualcomm Incorporated, GLOBALFOUNDRIES Inc., GLOBALFOUNDRIES U.S., Inc., GLOBALFOUNDRIES Dresden Module One LLC & Co. KG, and GLOBALFOUNDRIES Dresden Module Two LLC & Co. KG have consented to their signature on this Motion.

Dated:  January XX, 2019       /s/ James C. Gumina
                               JAMES C. GUMINA

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 27(d) and 32(g), the undersigned hereby certifies that this motion complies with the type-volume limitation of Circuit Rule 27(d).

1. Exclusive of the accompanying documents as authorized by Fed. R. App. P. 27(a)(2)(B) and the exempted portions of the motion as provided by Fed. R. App. P. 27(d)(2) and 32(f), the motion contains ____ words.

2. The motion has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font as provided by Fed. R. App. P. 32(a)(5)-(6). As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ James C. Gumina
JAMES C. GUMINA

McDONNELL BOEHNEN
HULBERT & BERGHOFF LLP
300 SOUTH WACKER DRIVE
CHICAGO, IL 60606
(312) 913-0001

B-12

January XX, 2019

## CERTIFICATE OF SERVICE

I hereby certify that, on this XXth day of January, 2019, I filed the foregoing Stipulated Motion to Voluntarily Dismiss Appeal with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

/s/ James C. Gumina
JAMES C. GUMINA

MCDONNELL BOEHNEN
HULBERT & BERGHOFF LLP
300 SOUTH WACKER DRIVE
CHICAGO, IL  60606
 (312) 913-0001

B-14

## SCHEDULE C

### Defendant Notice Addresses

| | |
|---|---|
| **INTEL CORPORATION**<br><br>General Counsel<br>Intel Corporation<br>2200 Mission College Blvd.<br>Santa Clara, CA 95054<br>with a copy to:<br><br>Director of Patent Litigation<br>Intel Corporation<br>2200 Mission College Blvd.<br>Santa Clara, CA 95054 | **DELL, INC.**<br><br>Sr. Vice President – Intellectual Property<br>Dell Inc.<br>One Dell Way<br>Round Rock, TX  78682<br><br>With a copy to:<br><br>Mark Garrett<br>Norton Rose Fulbright US LLP<br>98 San Jacinto Blvd., Suite 1100<br>Austin, TX 78701 |
| **GAMESTOP CORP.**<br><br>GameStop<br>Attention: General Counsel<br>625 Westport Parkway<br>Grapevine, TX  76051 | **CONN'S, INC.**<br><br>Office of the General Counsel<br>Conn's, Inc.<br>2445 Technology Forest Blvd. – Suite 800<br>The Woodlands, Texas 77381 |
| **CONN APPLIANCES, INC.**<br><br>Office of the General Counsel<br>Conn Appliances, Inc.<br>2445 Technology Forest Blvd. – Suite 800<br>The Woodlands, Texas 77381 | **WAL-MART STORES, INC.**<br><br>General Counsel - eCommerce<br>850 Cherry Ave<br>San Bruno, CA 94066 |
| **WAL-MART STORES TEXAS, LLC**<br>General Counsel - eCommerce<br>850 Cherry Ave<br>San Bruno, CA 94066 | **AT&T MOBILITY LLC**<br><br>Brian J. Gaffney, Esq.<br>Assistant Vice President – Senior Legal<br>Counsel<br>Intellectual Property Litigation<br>Whitacre Tower, Room 502<br>208 S. Akard St.<br>Dallas, TX 75202<br><br>and<br><br>Thomas A. Restino, Esq. |

| | Chief Intellectual Property Counsel<br>Room 3A161<br>One AT&T Way<br>Bedminster, NJ 07921 |
|---|---|

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| DSS Technology Management, Inc., | |
| Plaintiff, | |
| v. | Civil Action No. 6:15-cv-130 |
| | **Jury Trial Demanded** |
| Intel Corporation, et al. | |
| Defendants. | |

## <u>DEFENDANT INTEL CORPORATION'S ORIGINAL ANSWER TO AMENDED COMPLAINT</u>

Defendant Intel Corporation ("Intel" or "Defendant") submits this answer to the Amended Complaint for Patent Infringement (Dkt. No. 54 ("Complaint")) by Plaintiff DSS Technology Management, Inc. ("DSS") and submits its Counterclaims. To the extent not specifically admitted below, Intel denies the allegations of the Complaint.

### THE PARTIES[1]

1.      Intel denies the allegations of paragraph 1.

2.      Intel admits that it is a Delaware corporation with its principal place of business at 2200 Mission College Boulevard, Santa Clara, California 95054. Intel admits that it may be served via its registered agent in Dallas, Texas.

3.      Intel lacks knowledge or information sufficient to form a belief as to the truth of

---

[1]      Intel does not admit any of the allegations contained in DSS's headings.

the allegations contained in Paragraph 3, and therefore denies the same.

4.      Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4, and therefore denies the same.

5.      Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5, and therefore denies the same.

6.      Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6, and therefore denies the same.

7.      Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7, and therefore denies the same.

8.      Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8, and therefore denies the same.

9.      Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9, and therefore denies the same.

## ALLEGATIONS OF JURISDICTION AND VENUE

10.     No answer is required as to the allegations in Paragraph 10, which are merely conclusions of law.  To the extent that any answer is required, Intel denies infringement of any asserted United States patent.

11.     Intel denies that it designs, manufactures, markets, sells or offers for sale the Intel Core i3, i5, i7, Pentium, Celeron, Atom, and Xeon microprocessors (which the Complaint defines as the "Infringing Products" and which, to avoid confusion, this Answer will refer to as the "Accused Products") in the Eastern District of Texas.  No answer is required as to the allegations in Paragraph 11 asserting that "[v]enue is proper," which are merely conclusions of law.  To the extent that any answer is required, Intel denies infringement of any asserted United

States patent and denies that the Eastern District of Texas is the most convenient venue to resolve this action. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 11, and therefore denies the same.

12. Intel admits that it is doing business in the United States, including in the Eastern District of Texas. Intel admits that it advertises the Accused Products in the State of Texas, and the Eastern District of Texas. Intel admits that the Accused Products have been and continue to be imported into and purchased by consumers in the Eastern District of Texas. Intel denies that it has committed acts of patent infringement in this District or anywhere else. Intel denies that the Eastern District of Texas is the most convenient venue to resolve this action. No answer is required as to the conclusions of law contained in Paragraph 12. Intel denies the remaining allegations in Paragraph 12.

13. Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13, and therefore denies the same.

14. Intel admits that it is doing business in the United States, including in the Eastern District of Texas. No answer is required as to the allegation that Intel has "committed acts of patent infringement and/or have induced acts of patent infringement by others in this district, the State of Texas, and elsewhere in the United States," because that allegation is a conclusion of law. To the extent that any answer is required, Intel denies the allegation. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 14, and therefore denies the same.

15. Intel denies that it has partnered with Dell to design or sell the Accused Products. Intel admits that certain marketing materials include both Dell and Intel information related to the Accused Products. Intel admits that Dell's website states, "[T]he Dell and Intel partnership

has created a series of workstation and desktop solutions…" (*See* http://www.dell.com/learn/us/en/rc956904/solutions/intel-and-dell.) Intel admits that Intel's website states, "Dell works in close partnership with companies like Intel Corp. to deliver product-ready systems for distributed and compute intensive environments." (*See* http://www.intel.com/content/www/us/en/infiniband/truescale-infiniband-global-partners.html.) Intel denies that Intel has specifically optimized the Accused Products for Dell's products and services. Intel admits that Dell marketing personnel coordinated with Intel employees to market the Accused Products. Additionally, Intel denies infringement of any asserted United States patent. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 15, and therefore denies the same.

16. Intel denies that is has partnered with AT&T to design, sell, and/or market the Accused Products. Intel denies that AT&T and Intel have joint research and development programs that seek to improve the functionality of the Accused Products. Additionally, Intel denies infringement of any asserted United States patent. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 16, and therefore denies the same.

17. No answer is required as to the allegations in Paragraph 17, which are merely conclusions of law. To the extent that any answer is required, Intel denies that the Eastern District of Texas is the most convenient venue to resolve this action. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations concerning the other Defendants contained in Paragraph 17, and therefore denies the same.

18. Intel denies the allegations of paragraph 18.

**GENERAL ALLEGATIONS**

- 4 -

19.     Intel admits that an uncertified copy of what purports to be United States Patent No. 5,965,924 ("the '924 patent") is attached to the Complaint as Exhibit A and that it is entitled "Metal Plug Local Interconnect."  Intel lacks knowledge or information sufficient to admit or deny the remaining allegations contained in Paragraph 19 and therefore denies the same.

20.     Intel admits that an uncertified copy of what purports to be United States Patent No. 6,784,552 ("the '552 patent") is attached to the Complaint as Exhibit B and that it is entitled "Structure Having Reduced Lateral Plug Erosion."  Intel lacks knowledge or information sufficient to admit or deny the remaining allegations contained in Paragraph 20 and therefore denies the same.

21.     Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21, and therefore denies the same.

### DEFENDANTS' ALLEGED INFRINGEMENT OF THE '924 PATENT

22.     Intel denies the allegations in Paragraph 22.

23.     Intel denies the allegations in Paragraph 23.

24.     Intel denies the allegations in Paragraph 24.

25.     Intel admits that it has not obtained a license from DSS to make, use, offer to sell, sell, or import products embodying the claims in the '924 Patent.  Intel denies infringement of any asserted United States patent.

**A. Intel's Alleged Infringement of the '924 Patent**

26.     Intel admits that it makes, uses, sells, offers for sale, imports into the United States, and/or exports the Accused Products.  Intel denies the remaining allegations in Paragraph 26.

27.     Intel admits that it makes, uses, makes available for another's use, offers to

license or licenses in the United States, sells, offers for sale, and/or imports into the United States the Accused Products. Intel also admits that it sells and offers to sell said products directly and via sales representatives, distributors, and resellers to consumers, businesses, distributors, and resellers. Intel denies the remaining allegations in Paragraph 27.

28. Intel admits that at least as of the time of filing of the Complaint, Intel knew of the '924 patent. Intel denies infringement of any asserted United States patent. Intel denies the remaining allegations in Paragraph 28.

29. Intel denies the allegations in Paragraph 29.

**B. GameStop's Alleged Infringement of the '924 Patent**

30. Intel admits that Intel's Core i3, i5, and i7 microprocessors are used in the Alienware Alpha and X series of computers. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 30, and therefore denies the same.

31. Intel admits that Intel's Core i3, i5, and i7 microprocessors are used in the Alienware Alpha and X series of computers. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 31, and therefore denies the same.

32. Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32, and therefore denies the same.

**C. Dell's Alleged Infringement of the '924 Patent**

33. Intel admits that the Accused Products are used in Dell's Inspiron Desktop 3000 Series (including the Dell Inspiron 3847 Desktop PCs) and PowerEdge rack servers. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations

contained in Paragraph 33, and therefore denies the same.

34. Intel admits that the Accused Products are used in Dell's Inspiron Desktop 3000 Series (including the Dell Inspiron 3847 Desktop PCs) and PowerEdge rack servers. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 34, and therefore denies the same.

35. Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35, and therefore denies the same.

36. Intel denies that is has partnered with Dell to design or sell the Accused Products. Intel admits that certain marketing materials include both Dell and Intel information related to the Accused Products. Intel admits that Dell's website states, "[T]he Dell and Intel partnership has created a series of workstation and desktop solutions…" (*See* http://www.dell.com/learn/us/en/rc956904/solutions/intel-and-dell.) Intel admits that Intel's website states, "Dell works in close partnership with companies like Intel Corp. to deliver product-ready systems for distributed and compute intensive environments." (*See* http://www.intel.com/content/www/us/en/infiniband/truescale-infiniband-global-partners.html.) Intel denies that Intel has specifically optimized the Accused Products for Dell's products and services. Intel admits that Dell marketing personnel coordinated with Intel employees to market the Accused Products. Additionally, Intel denies infringement of any asserted United States patent. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 36, and therefore denies the same

**D. Wal-Mart's Alleged Infringement of the '924 Patent**

37. Intel admits that the Dell Inspiron 3847 Desktop PC contains the i5 microprocessor. Intel lacks knowledge or information sufficient to form a belief as to the truth

of the remaining allegations contained in Paragraph 37, and therefore denies the same.

38.    Intel admits that the Dell Inspiron 3847 Desktop PC contains the i5 microprocessor.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 38, and therefore denies the same.

39.    Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39, and therefore denies the same.

**E. Conn's Alleged Infringement of the '924 Patent**

40.    Intel admits that Intel's Core i3, i5, i7, Celeron, and Pentium microprocessors are used in the HP Pavilion 15-n263nr Notebook PC.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 40, and therefore denies the same.

41.    Intel admits that Intel's Core i3, i5, i7, Celeron, and Pentium microprocessors are used in the HP Pavilion 15-n263nr Notebook PC.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 41, and therefore denies the same.

42.    Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42, and therefore denies the same.

**F. AT&T's Alleged Infringement of the '924 Patent**

43.    Intel admits that Intel Atom microprocessors are used in the ASUS MeMO Pad 7 LTE.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 43, and therefore denies the same.

44.    Intel admits that Intel Atom microprocessors are used in the ASUS MeMO Pad 7 LTE.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations contained in Paragraph 44, and therefore denies the same.

45.     Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45, and therefore denies the same.

## DEFENDANTS' ALLEGED INFRINGEMENT OF THE '552 PATENT

46.     Intel denies the allegations in Paragraph 46.

47.     Intel denies the allegations in Paragraph 47.

48.     Intel denies the allegations in Paragraph 48.

49.     Intel admits that it has not obtained a license from DSS to make, use, offer to sell, sell, or import products embodying the claims in the '552 Patent.  Intel denies infringement of any United States patent.

**A. Intel's Alleged Infringement of the '552 Patent**

50.     Intel admits that it makes, uses, sells, offers for sale, imports into the United States, and/or exports the Accused Products.  Intel denies the remaining allegations in Paragraph 50.

51.     Intel admits that it makes, uses, makes available for another's use, offers to license or licenses in the United States, sells, offers for sale, and/or imports into the United States the Accused Products.  Intel also admits that it sells and offers to sell said products directly and via sales representatives, distributors, and resellers to consumers, businesses, distributors, and resellers.  Intel denies that any Intel product infringes any of the Asserted Patents.  Intel denies the remaining allegations in Paragraph 51.

52.     Intel admits that at least as of the time of filing of the Complaint, Intel knew of the '552 patent.  Intel denies infringement of any United States patent.  Intel denies the remaining allegations in Paragraph 52.

53. Intel denies the allegations in Paragraph 53.

**B. GameStop's Alleged Infringement of the '552 Patent**

54. Intel admits that Intel's Core i3, i5, and i7 microprocessors are used in the Alienware Alpha and X series of computers. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 54, and therefore denies the same.

55. Intel admits that Intel's Core i3, i5, and i7 microprocessors are used in the Alienware Alpha and X series of computers. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 55, and therefore denies the same.

56. Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56, and therefore denies the same.

**C. Dell's Alleged Infringement of the '552 Patent**

57. Intel admits that the Accused Products are used in Dell's Inspiron Desktop 3000 Series (including the Dell Inspiron 3847 Desktop PCs) and PowerEdge rack servers. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 57, and therefore denies the same.

58. Intel admits that the Accused Products are used in Dell's Inspiron Desktop 3000 Series (including the Dell Inspiron 3847 Desktop PCs) and PowerEdge rack servers. Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 58, and therefore denies the same.

59. Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59, and therefore denies the same.

60.     Intel denies that is has partnered with Dell to design or sell the Accused Products. Intel admits that certain marketing materials include both Dell and Intel information related to the Accused Products.  Intel admits that Dell's website states, "[T]he Dell and Intel partnership has created a series of workstation and desktop solutions…" (*See* http://www.dell.com/learn/us/en/rc956904/solutions/intel-and-dell.)   Intel admits that Intel's website states, "Dell works in close partnership with companies like Intel Corp. to deliver product-ready systems for distributed and compute intensive environments." (*See* http://www.intel.com/content/www/us/en/infiniband/truescale-infiniband-global-partners.html.) Intel denies that Intel has specifically optimized the Accused Products for Dell's products and services.  Intel admits that Dell marketing personnel coordinated with Intel employees to market the Accused Products.  Additionally, Intel denies infringement of any asserted United States patent.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 60, and therefore denies the same

**D. Wal-Mart's Alleged Infringement of the '552 Patent**

61.     Intel admits that the Dell Inspiron 3847 Desktop PC contains the i5 microprocessor.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 61, and therefore denies the same.

62.     Intel admits that the Dell Inspiron 3847 Desktop PC contains the i5 microprocessor.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 62, and therefore denies the same.

63.     Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63, and therefore denies the same.

**E. Conn's Alleged Infringement of the '552 Patent**

64.     Intel admits that Intel's Core i3, i5, i7, Celeron, and Pentium microprocessors are used in the HP Pavilion 15-n263nr Notebook PC.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 64, and therefore denies the same.

65.     Intel admits that Intel's Core i3, i5, i7, Celeron, and Pentium microprocessors are used in the HP Pavilion 15-n263nr Notebook PC.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 65, and therefore denies the same.

66.     Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66, and therefore denies the same.

**F. AT&T's Alleged Infringement of the '552 Patent**

67.     Intel admits that Intel Atom microprocessors are used in the ASUS  MeMO  Pad 7  LTE.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 67, and therefore denies the same.

68.     Intel admits that Intel Atom microprocessors are used in the ASUS  MeMO  Pad 7  LTE.  Intel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 68, and therefore denies the same.

69.     Intel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 69, and therefore denies the same.

**DEMAND FOR A JURY TRIAL**

70.     Intel demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

71.     Intel denies that it is liable for any relief requested in DSS's Prayer for Relief.

Intel has not directly, indirectly, literally, or under the doctrine of equivalents infringed either of the Asserted Patents. DSS is not entitled to recover damages, costs, expenses, pre-judgment interest, post-judgment interest, or supplemental damages from Intel. DSS's prayer should, therefore, be denied in its entirety and with prejudice.

72. Intel denies that DSS is entitled to any relief whatsoever.

73. Intel denies that DSS is entitled to any relief whatsoever.

74. Intel denies that DSS is entitled to any relief whatsoever.

75. Intel denies that DSS is entitled to any relief whatsoever.

76. Intel denies that DSS is entitled to any relief whatsoever.

77. Intel denies that DSS is entitled to any relief whatsoever.

78. Intel denies that DSS is entitled to any relief whatsoever.

79. Intel denies that DSS is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

By alleging the Affirmative Defenses below, Intel does not agree or concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part. For its Affirmative Defenses to the Complaint, Intel alleges as follows:

### FIRST AFFIRMATIVE DEFENSE
### (Non-Infringement – No Direct Infringement)

1. DSS is not entitled to any relief against Intel. Intel does not directly infringe and has not directly infringed, either literally or under the doctrine of equivalents, any valid and enforceable claim of any of the Asserted Patents.

### SECOND AFFIRMATIVE DEFENSE
### (Non-Infringement – No Induced Infringement)

2. DSS is not entitled to any relief against Intel. Intel does not indirectly infringe,

and has not indirectly infringed, by inducing infringement of any valid and enforceable claim of any of the Asserted Patents.

### THIRD AFFIRMATIVE DEFENSE
### (No Willful Infringement)

3.    DSS is not entitled to any relief against Intel.  Intel has not willfully infringed and is not willfully infringing the Asserted Patents.

### FOURTH AFFIRMATIVE DEFENSE
### (Unenforceability)

4.    Each of the Asserted Patents is unenforceable against Intel because of one or more applicable equitable doctrines, such as laches, acquiescence, estoppel, collateral estoppel, waiver, or unclean hands.

### FIFTH AFFIRMATIVE DEFENSE
### (Invalidity)

5.    Each of the claims of the Asserted Patents is invalid and/or unenforceable for failing to meet one or more of the requisite conditions for patentability under Title 35 of the United States Code, including, without limitation, §§ 101, 102, 103, 112, and/or 116.

### SIXTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

6.    DSS has failed to state a claim upon which relief can be granted because Intel has not performed any act and is not performing any act in violation of any rights validly belonging to DSS.

### SEVENTH AFFIRMATIVE DEFENSE
### (Prosecution History Estoppel)

7.    By reason of proceedings in the United States Patent and Trademark Office during prosecution of both of the Asserted Patents, and specifically statements, arguments, amendments, assertions, and/or representations made by or on behalf of the applicants for the

Asserted Patents, DSS is estopped from construing the claims of the Asserted Patents in any way to cover any product, method, or service of Intel under the doctrine of equivalents.

## EIGHTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

8.     DSS's right to seek damages is limited, including, without limitation, by 35 U.S.C. § 286.

## NINTH AFFIRMATIVE DEFENSE
### (No Exceptional Case)

9.     DSS's right to seek damages and other remedies from Intel is limited by 35 U.S.C. §§ 285, 286, and/or 287.

## TENTH AFFIRMATIVE DEFENSE
### (No Double Compensation)

10.     The relief sought by DSS is limited, in whole or in part, by any compensation received or sought by DSS for its alleged patent rights from parties whose products incorporate any accused Intel products.

## ELEVENTH AFFIRMATIVE DEFENSE
### (License)

11.     Intel is exempt from liability for infringement in whole or in part to the extent that any of the alleged inventions described in and allegedly covered by the patents-in-suit are used, manufactured, or sold by or for Intel, its suppliers, and/or its customers pursuant to a license, either expressed or implied.

## TWELFTH AFFIRMATIVE DEFENSE
### (Additional Affirmative Defenses)

12.     Intel reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further investigation in

this case.

Respectfully Submitted,

Dated: June 29, 2015

/s/ Michael E. Jones

**POTTER MINTON, P.C.**
Michael E. Jones
Texas Bar No. 10929400
110 North College, Suite 500
Tyler, Texas 75702
Tel.: (903) 597-8311
Fax: (903) 593-0846
Email: mikejones@potterminton.com

**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
Michael J. Summersgill (admitted *pro hac vice*)
William F. Lee (admitted *pro hac vice*)
Sarah Beigbeder Petty (admitted *pro hac vice*)
Louis W. Tompros (admitted *pro hac vice*)
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax : (617) 526-5000
Email: michael.summersgill@wilmerhale.com
louis.tompros@wilmerhale.com
sarah.petty@wilmerhale.com
william.lee@wilmerhale.com

**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
James L. Quarles (admitted *pro hac vice*)
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: (202) 663-6236
Fax: (202) 663-6363
Email: james.quarles@wilmerhale.com

*Attorneys for Defendant Intel Corporation*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that this document was filed electronically pursuant to Local Rule CV-5(a) on

June 29, 2015.  Pursuant to Local Rule CV-5(a)(3)(A), this electronic filing acts to electronically

serve all counsel who have consented to electronic service via the Court's CM/ECF system.


<u>*/s/ Michael E. Jones*</u>

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| DSS Technology Management, Inc., | § § § | |
| Plaintiff, | § § | Civil Action No. 6:15-cv-130-RWS |
| v. | § § | |
| Intel Corporation, | § § | |
| Defendant. | § § | |

## FINAL JUDGMENT

Pursuant to the Court's Order of Dismissal, the Court hereby enters Final Judgment. It is, therefore,

**ORDERED** that all claims and counterclaims between the Plaintiff and the Defendant are **DISMISSED WITH PREJUDICE** with each party to beat its own costs and attorneys' fees. All pending motions are **DENIED-AS-MOOT.**

The Clerk of the Court is directed to close this case.

It is so **ORDERED**.

**SIGNED this 5th day of February, 2019.**

Robert W. Schroeder III
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE