WILMER CUTLER PICKERING
    HALE AND DORR LLP
Mark D. Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

WILMER CUTLER PICKERING
    HALE AND DORR LLP
Leon B. Greenfield (*pro hac vice*)
leon.greenfield@wilmerhale.com
Amanda L. Major (*pro hac vice*)
amanda.major@wilmerhale.com
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (20) 663-6363

WILMER CUTLER PICKERING
HALE AND DORR LLP
William F. Lee (*pro hac vice*)
william.lee@wilmerhale.com
Joseph J. Mueller (*pro hac vice*)
joseph.mueller@wilmerhale.com
Timothy D. Syrett
timothy.syrett@wilmerhale.com
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

*Attorneys for Plaintiffs*
*Intel Corporation, Apple Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| INTEL CORPORATION, APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> FORTRESS INVESTMENT GROUP LLC, *et al.* <br><br> Defendants. | Case No. 3:19-cv-07651-EMC <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT DSS TECHNOLOGY MANAGEMENT INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS AND TO STRIKE PLAINTIFFS' COMPLAINT** |

Case No. 3:19-cv-07651

PLAINTIFFS' OPPOSITION TO DEFENDANT DSS TECHNOLOGY MANAGEMENT INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS AND TO STRIKE PLAINTIFFS' COMPLAINT

1

**TABLE OF CONTENTS**

2

Page

3

STATEMENT OF ISSUES TO BE DECIDED..............................................................................1

4

ARGUMENT ..................................................................................................................................2

5

I.      The Prior Settlement Agreement Between Intel And DSS Does Not Apply To
        Plaintiffs' Claims............................................................................................................2

6

        A.      The Prior Settlement Agreement Did Not Release The Claims Plaintiffs
                Bring In This Action. ........................................................................................2

7

8

        B.      The Prior Settlement Agreement Does Not Affect Plaintiffs' Right To
                Damages. .............................................................................................................4

9

II.     Plaintiffs' Claims Are Not Barred By The Statute Of Limitations...................................5

III.    Conclusion.........................................................................................................................8

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Albano v. Shea Homes Ltd. P'ship*,
   634 F.3d 524 (9th Cir. 2011)...................................................................................................... 6

5

6

*Aryeh v. Canon Bus. Sols., Inc.*,
   55 Cal. 4th 1185 (2013)............................................................................................................. 6

7

*DSS Tech. Mgmt., Inc. v. Intel Corp.*,
   Case No. 6:15-cv-00130-RWS (E.D. Tex. Sep. 8, 2015) ....................................................... 2, 8

8

9

*John-Charles v. California*,
   646 F.3d 1243 (9th Cir. 2011).................................................................................................... 7

10

11

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*,
   28 F.3d 376 (3d Cir. 1994), (Aug. 29, 1994) ........................................................................... 3

12

*Pace Industries, Inc. v. Three Ph Co*,
   813 F.2d 234 (9th Cir. 1987)...................................................................................................... 7

13

14

*Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*,
   771 F.3d 391 (7th Cir. 2014)...................................................................................................... 2

15

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006)...................................................................................................... 3

16

17

*Samsung Elecs. Co. v. Panasonic Corp.*,
   747 F.3d 1199 (9th Cir. 2014)................................................................................................. 6, 7

18

19

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d at 1005 (9th Cir. 2012)............................................................................................. 3, 4

20

*Supermail Cargo, Inc. v. United States*,
   68 F.3d 1204 (9th Cir. 1995).................................................................................................... 5, 8

21

22

*Thomas v. Hous. Auth. of The Cty. of L.A.*,
   No. CV 04-6970MMMRCX, 2005 WL 6136432 (C.D. Cal. June 3, 2005)............................. 3

23

24

*United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*,
   720 F.3d 1174 (9th Cir. 2013)................................................................................................. 5, 8

25

26

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir.2010)...................................................................................................... 5

27

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   401 U.S. 321 (1971).................................................................................................................. 6

28

1

**Federal Statutes**

2

15 U.S.C. § 15b................................................................................................................................ 5

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii        PLAINTIFFS' OPPOSITION TO DEFENDANT DSS TECHNOLOGY
                                                      MANAGEMENT INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF
                                                      DEFENDANTS' JOINT MOTION TO DISMISS AND TO STRIKE
                                                      PLAINTIFFS' COMPLAINT

1    As set forth in detail in Plaintiffs' Complaint, Defendant DSS Technology Management,

2  Inc. ("DSS") is one of the many patent assertion entities ("PAEs") that Defendant Fortress

3  Investment Group has enlisted as part of a large-scale, anticompetitive patent aggregation scheme

4  of which aggressive litigation is one tool. DSS's participation in that scheme began in 2014 when

5  it entered into a contract with Defendant Fortress Credit, escalated in 2015 when DSS sued Intel

6  for patent infringement, and continued through at least January 2019, when DSS and Intel settled

7  that lawsuit. In this action, Plaintiffs are suing DSS (as well as other defendants) under federal

8  antitrust and state unfair competition laws based on DSS's participation with Fortress in an

9  anticompetitive scheme and DSS's conduct in pursuing litigation against Intel.

10                        **STATEMENT OF ISSUES TO BE DECIDED**

11    In its supplemental brief in support of Defendants' motion to dismiss, DSS argues that

12  Plaintiffs' claims against DSS should be dismissed because Intel purportedly released them in

13  settling DSS's patent-infringement suit, and because the suit allegedly is barred by the statute of

14  limitations. Neither of those arguments has merit. In the January 2019 settlement agreement

15  upon which DSS relies, Intel released the "claims" it had brought as the defendant in that

16  litigation, but Intel did not bring in that action any counterclaims based on federal antitrust or

17  state unfair competition law. Intel thus plainly did not release such claims against DSS in the

18  settlement agreement. Separately, because—as Plaintiffs' well-pleaded Complaint

19  demonstrates—DSS participated in a "continuing conspiracy" to violate antitrust and unfair

20  competition laws that continued through January 2019, Plaintiffs' November 2019 Complaint was

21  filed well within the four-year limitations period.

22    Because Plaintiffs' claims against DSS have not been released and are timely, this Court

23  should deny DSS's supplemental motion to dismiss.[1]

24

25

26

27    [1] For the reasons set forth in Plaintiffs' separate filing, the Court should also deny
   Defendants' Motion to Dismiss and to Strike Plaintiffs' Complaint. *See* Dkt. 136.

28

# ARGUMENT

## I.   THE PRIOR SETTLEMENT AGREEMENT BETWEEN INTEL AND DSS DOES NOT APPLY TO PLAINTIFFS' CLAIMS

### A.   The Prior Settlement Agreement Did Not Release The Claims Plaintiffs Bring In This Action.

Plaintiffs' claims against DSS are based on federal antitrust law and California's unfair competition statute. Compl. ¶¶ 172-176, 182-185. DSS is incorrect that Intel somehow released these claims in settling DSS's patent-infringement action. [2]

In the January 2019 settlement agreement, Intel released any "claims" it had "asserted" in DSS's patent infringement suit. *See* Dkt. 116, Ex. A, at 5. Intel never brought in that action any counterclaims based on antitrust or unfair competition law, and DSS does not claim anything different. Dkt. 116, Ex. B; *see DSS Tech. Mgmt., Inc. v. Intel Corp.*, Intel's Answer to DSS's Second Amended Complaint, Dkt. 128, Case No. 6:15-cv-00130-RWS (E.D. Tex. Sep. 8, 2015). Thus, the language of the release plainly does not cover the claims Plaintiffs now bring against DSS under those laws.

In arguing to the contrary, DSS emphasizes that the settlement agreement defines the term "Claims" to include "answers" and that "Intel's answer asserted the invalidity and noninfringement of DSS's patents." DSS Supp. Br. 4. DSS further argues that because Plaintiffs' antitrust claims are "*based on* Defendants' alleged assertion of 'invalid' or 'noninfringed' patents," Intel effectively released its antitrust claims by releasing the "claims" contained in its prior answer. DSS Supp. Br. 4 (emphasis added). This argument fails for three reasons.

*First*, Intel's answer in the patent-infringement action raised invalidity and noninfringement only as affirmative defenses, not as counterclaims. *See* Dkt. 116, Ex. B, at 13-14. Courts have made it abundantly clear that affirmative defenses are not "claims." *Phila.*

---

[2] The January 2019 settlement agreement plainly does not bind Apple, as Apple is not a party to the agreement. *See* DSS Request For Judicial Notice, Dkt. 116, Ex. A, at 1. Accordingly, none of Apple's claims against DSS were released in that agreement, and the agreement provides no ground for dismissing the claims Apple brings in this action.

2   PLAINTIFFS' OPPOSITION TO DEFENDANT DSS TECHNOLOGY MANAGEMENT INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS AND TO STRIKE PLAINTIFFS' COMPLAINT

1    *Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 401 (7th Cir. 2014) ("An affirmative defense

2    is not a 'claim.'" (citing Black's Law Dictionary)); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v.*

3    *City Sav., F.S.B.*, 28 F.3d 376, 393 (3d Cir. 1994), *as amended* (Aug. 29, 1994) ("We think it is

4    plain enough that a defense or an affirmative defense is neither an 'action' nor a 'claim,' but

5    rather is a *response* to an action or a claim . . . ."); *Thomas v. Hous. Auth. of The Cty. of L. A.*, No.

6    CV 04-6970MMMRCX, 2005 WL 6136432, at *9 (C.D. Cal. June 3, 2005) ("An affirmative

7    defense is not a claim or cause of action."). Because Intel brought no counterclaims based on

8    invalidity or infringement, Intel did not release via the settlement agreement its right to bring such

9    a claim in the future.

10            ***Second***, even if Intel had released through the settlement agreement its right to bring

11   *claims* of invalidity and noninfringement (it did not), it would not matter, because Intel is not now

12   bringing such a claim. To be sure, Defendants' anticompetitive scheme involves, among other

13   things, assertion of weak patents in the hopes that some will be found improperly valid and

14   infringed. *See, e.g.,* Compl. ¶ 9. But that does not change the fact that Intel's claims are for a

15   violation of federal antitrust and state unfair competition laws, not for a declaration of patent

16   invalidity or noninfringement.

17            DSS cites no authority suggesting that a party who asserts affirmative defenses and then

18   releases "claims" in a settlement agreement is barred from later asserting an unrelated claim to

19   which those affirmative defenses may bear some passing relevance. To the contrary, the two

20   cases on which DSS relies simply apply well-established principles of release and preclusion.

21   DSS Supp. Br. at 3. In *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, the Ninth Circuit applied issue

22   preclusion to the issue of whether a release in a class-action settlement agreement covered certain

23   claims precisely ***because*** that exact issue had been raised in objections to the settlement and

24   consequently determined by the prior court. 442 F.3d at 746 (9th Cir. 2006). In other words, the

25   issue of whether the release covered those claims was "actually litigated and determined" and

26   thus had issue-preclusive effect. And in *Skilstaf, Inc. v. CVS Caremark Corp.*, the Ninth Circuit

27   affirmed the district court's enforcement of a prior settlement agreement that released the

28

1  plaintiff's right to bring certain claims against not only the defendant in that prior action but also

2  "any other person." 669 F.3d at 1008 (9th Cir. 2012). The plaintiff argued that the contract's

3  inclusion of the phrase "any other person" was ambiguous and/or violated his right to due

4  process. *Id.* at 1014. Notably, he ***did not challenge*** whether the legal claims he was attempting

5  to bring in the second action were the same as those he released in the prior settlement agreement;

6  rather, he argued only that he should be permitted to bring those claims against defendants that

7  had not been parties to the prior settlement. *Id.* These cases simply reaffirm the uncontroversial

8  points that a party may release ***claims*** in a settlement agreement and may be precluded from

9  relitigating ***issues*** that another court already has decided—neither of which precludes Intel from

10  now asserting claims that it did not release in the settlement with DSS.

11       ***Third***, Plaintiffs' claims here do not depend on proving that every single patent that

12  Defendants, including DSS, ever asserted against Plaintiffs was invalid and/or not infringed.

13  Rather, Plaintiffs need only show that Defendants' conduct with respect to patent transfers and

14  enforcement was anticompetitive and unlawful under federal and state law. Thus, regardless of

15  the effects of the prior settlement agreement on a determination of the invalidity or infringement

16  of the patents DSS previously asserted against Intel, the agreement offers no basis for dismissing

17  Plaintiffs' claims in this action.

18       **B.**    **The Prior Settlement Agreement Does Not Affect Plaintiffs' Right To
19  Damages.**

20       DSS separately argues that Plaintiffs' "claims" somehow are barred because they seek

21  "litigation costs" and Intel purportedly "waived its right" to recover such costs from DSS as part

22  of the January 2019 settlement agreement. DSS Supp. Br. 3. But even if Intel had released its

23  right to recover such costs in the January 2019 agreement (it did not), such a release would not

24  require dismissal of Plaintiffs' claims, as Plaintiffs have pleaded damages beyond litigation costs.

25  In particular, Plaintiffs have alleged that the anticompetitive conduct of Defendants, including

26  DSS, has caused Plaintiffs to suffer harm including "the risk of supracompetitive licensing rates,

27  business uncertainty, and business resources lost in dealing with the consequences of the

28

1  Agreeing Parties' unlawful agreements," as well as "economic harm in the form of litigation costs

2  and diversion of resources away from innovation to respond to these entities' serial nuisance

3  suits." Compl. ¶¶ 176, 185.  Thus, even if DSS were correct that Intel released its right to recover

4  litigation costs from DSS, Intel still could recover damages for the other harms alleged, and any

5  such release would not provide grounds for dismissal.  Indeed, DSS at no point suggests that

6  these other costs, as alleged, are inadequate to maintain Plaintiffs' claim.

7        Moreover, the settlement agreement's costs provision covers only "costs and attorneys'

8  fees relating to the Litigation, the IPR Appeal and/or the negotiation of this Agreement." Dkt.

9  116, Ex A, at 6.[3]  The agreement does not cover costs from other proceedings, such as those that

10  preceded the referenced "IPR Appeal." *See* Compl. ¶ 111 (describing proceedings before the

11  PTAB).  Thus, even aside from the other forms of damages alleged, Intel's purported

12  relinquishment of the right to recover some litigation costs would not require dismissal of

13  Plaintiffs' claims for damages based on other litigation costs.

14  **II.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS**

15        "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the

16  running of the statute [of limitations] is apparent on the face of the complaint.'"  *United States ex*

17  *rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (quoting

18  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir.2010)).  Put

19  another way, "a complaint cannot be dismissed [as untimely] unless it appears beyond doubt that

20  the plaintiff can prove no set of facts that would establish the timeliness of the claim."  *Supermail*

21  *Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995).

22        Antitrust and unfair competition claims like those alleged by Plaintiffs here are timely as

23  long as they were brought within four years of when the claims "accrue[d]."  *See* 15 U.S.C. § 15b

24  (Sherman Act claim); Cal. Bus. & Prof. Code § 17208 (state unfair competition claim).  "In the

25  context of a continuing conspiracy to violate the antitrust laws," "a cause of action accrues" "each

26

27        [3] The court's final judgment after the settlement agreement is even less explicit, stating
    simply that the case is dismissed "with each party to bea[r] its own costs and attorneys' fees."

28  Dkt. 116, Ex C.

1    time a plaintiff is injured by an act of the defendants." *Zenith Radio Corp. v. Hazeltine Research,*

2    *Inc.*, 401 U.S. 321, 338 (1971).  "To state a continuing violation of the antitrust laws in the Ninth

3    Circuit, a plaintiff must allege that a defendant completed an overt act during the limitations

4    period that meets two criteria: 1) It must be a new and independent act that is not merely a

5    reaffirmation of a previous act; and 2) it must inflict new and accumulating injury on the

6    plaintiff." *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014) (citation

7    and internal quotation marks omitted).  "This standard is meant to differentiate those cases where

8    a continuing violation is ongoing—and an antitrust suit can therefore be maintained—from those

9    where all of the harm occurred at the time of the initial violation."  *Id.*

10            Similarly, under California law, which governs the timeliness of Plaintiffs' state-law

11    claims, *see Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011), the "continuing

12    violation doctrine" applies where "[a]llegations of a pattern of reasonably frequent and similar

13    acts . . . justify treating the acts as an indivisible course of conduct actionable in its entirety,

14    notwithstanding that the conduct occurred partially outside and partially inside the limitations

15    period." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198 (2013).  The doctrine exists, at

16    least in part, to protect defendants whose "injuries are the product of a series of small harms, any

17    one of which may not be actionable on its own," from being "handicapped by the inability to

18    identify with certainty when harm has occurred or has risen to a level sufficient to warrant

19    action." *Id.* at 1197-1198.

20            Here, Plaintiffs' allegations clearly demonstrate that their claims accrued within four years

21    of November 20, 2019, when Plaintiffs filed the Complaint.  The Complaint identifies multiple

22    individual acts taken by DSS within that four-year period that constituted violations of antitrust

23    and unfair competition law.  For example, the Complaint alleges that on December 2, 2016, DSS

24    and Fortress amended their Investment Agreement in a number of respects, including "to require

25    that DSS share proceeds from monetization efforts associated with certain additional patents."

26    Compl. ¶ 71.  The Complaint further alleges that "[o]n June 26, 2018, DSS entered into an

27    agreement with Fortress Credit, pursuant to which DSS transferred to Fortress Credit all the

28

Case No. 3:19-cv-07651            6         PLAINTIFFS' OPPOSITION TO DEFENDANT DSS TECHNOLOGY
                                             MANAGEMENT INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF
                                             DEFENDANTS' JOINT MOTION TO DISMISS AND TO STRIKE
                                             PLAINTIFFS' COMPLAINT

1   remaining economic rights to certain of DSS's semiconductor related patents." *Id.* ¶ 72.  Both of

2   these agreements aided Defendants' efforts to aggregate and monetize patents on a large scale,

3   and thus furthered Defendants' anticompetitive scheme.  Because the Complaint was filed less

4   than four years after those individual actions by DSS, Plaintiffs' claims are timely.

5         Moreover, beyond those specific, identified acts, Plaintiffs have alleged that DSS and the

6   other Defendants have engaged in a continuing conspiracy to violate federal antitrust and state

7   unfair competition law through patent aggregation and aggressive litigation.  Each successive act

8   DSS took to further the anticompetitive scheme, including through continuing to pursue its

9   lawsuit against Intel, was a "new and independent act" that caused "new and accumulating

10  injury" by forcing Intel to incur additional litigation costs and divert additional business

11  resources.  *See Samsung*, 747 F.3d at 1203.  Because Defendants' litigation conduct is one part of

12  the anticompetitive activity giving rise to this action, and much of DSS's litigation conduct took

13  place within a four-year window of the Complaint's filing, the Complaint is timely.

14  *Pace Industries, Inc. v. Three Phoenix Co*, 813 F.2d 234 (9th Cir. 1987), relied on by DSS, is not

15  to the contrary.[4]  In *Pace*, the Ninth Circuit held that "***where the alleged antitrust violation is the***

16  ***attempted enforcement of an illegal contract through judicial process***, the initiation of judicial

17  proceedings is the last overt act for purposes of the statute of limitations."  *Id.* (emphasis added).

18  In other words, where a plaintiff sues on a contract that itself violates the antitrust laws, "[t]he

19  complaint puts the aggrieved party on notice that there is a possible antitrust violation."  *Id.* at

20  238.  Here, unlike in *Pace*, DSS did not sue Intel to enforce a contract that, standing alone, was

21  unlawful under the antitrust laws.  Rather, DSS's antitrust violations stem from participating in

22  and furthering Defendants' anticompetitive scheme.  Thus, it is not the case, as it was in *Pace*,

23  that DSS's mere filing of a complaint against Intel put Intel "on notice that there [wa]s a possible

24  antitrust violation" by DSS.  *See id.* at 238.  DSS's complaint (and its two amended complaints)

25  _____

26        [4] DSS develops no argument that Plaintiffs have not pleaded a continuing violation under
    California law and has thus waived any argument for dismissal of Plaintiffs' state-law claims on
27  that ground.  *See John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) ("John–
    Charles has failed to develop any argument on this front, and thus has waived it.").

28  _____

    Case No. 3:19-cv-07651          7          PLAINTIFFS' OPPOSITION TO DEFENDANT DSS TECHNOLOGY
                                                MANAGEMENT INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF
                                                DEFENDANTS' JOINT MOTION TO DISMISS AND TO STRIKE
                                                PLAINTIFFS' COMPLAINT

1   made no mention of its contract with Fortress (or any mention of Fortress at all), and thus did not

2   put Intel on notice that DSS had any relationship with Fortress, let alone of the full course of

3   conduct that constituted the antitrust violation here.  *See DSS Tech. Mgmt.*, Complaint, Dkt. 1,

4   Case No. 6:15-cv-00130-RWS (E.D. Tex. Feb. 16, 2015); Dkt. 54 (June 12, 2015); Dkt. 109

5   (Aug. 20, 2015).  At a minimum,  then, it is not "apparent on the face of" Plaintiffs' complaint

6   here that Plaintiffs had reason in 2015 to know of DSS's antitrust violation, which fatally

7   undermines DSS's argument for dismissal based on untimeliness.  *See Air Control Techs.*, 720

8   F.3d at 1178; *see also Supermail*, 68 F.3d at 1207.

9   **III.   CONCLUSION**

10       The Court should deny the motion to dismiss Plaintiffs' claims against DSS.

11

12
    Dated: March 19, 2020                          WILMER CUTLER PICKERING HALE AND
13                                                  DORR LLP

14

15                                                  By: */s/ Mark D. Selwyn*
                                                         MARK D. SELWYN
16
                                                         *Attorneys for Plaintiffs Apple Inc. and*
17                                                       *Intel Corporation*

18

19

20

21

22

23

24

25

26

27

28

1

## **<u>CERTIFICATE OF SERVICE</u>**

2      I hereby certify that a true and correct copy of the above and foregoing document has been

3  served on March 19, 2020, to all counsel of record who are deemed to have consented to

4  electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

5

6                                                            */s/ Mark D. Selwyn*
                                                             Mark D. Selwyn
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:19-cv-07651                        9        PLAINTIFFS' OPPOSITION TO DEFENDANT DSS TECHNOLOGY
                                                        MANAGEMENT INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF
                                                        DEFENDANTS' JOINT MOTION TO DISMISS AND TO STRIKE
                                                        PLAINTIFFS' COMPLAINT