1    IRELL & MANELLA LLP
     Morgan Chu (SBN 70446)
2    Benjamin W. Hattenbach (SBN 186455)
     A. Matthew Ashley (SBN 198235)
3    Michael D. Harbour (SBN 298185)
     Olivia Weber (SBN 319918)
4    1800 Avenue of the Stars, Suite 900
     Los Angeles, California 90067-4276
5    Telephone:    (310) 277-1010
     Facsimile:    (310) 203-7199
6    Email: mchu@irell.com
     Email: bhattenbach@irell.com
7    Email: mashley@irell.com
     Email: mharbour@irell.com
8    Email: oweber@irell.com
     *Counsel for Defendants*
9    FORTRESS INVESTMENT GROUP LLC,
     FORTRESS CREDIT CO. LLC,
10   VLSI TECHNOLOGY LLC

11   PAUL, WEISS, RIFKIND, WHARTON &
     GARRISON LLP
12   Martin Flumenbaum (*pro hac vice*)
     1285 Avenue of the Americas
13   New York, NY 10019-6064
     Telephone:    (212) 373-3191
14   Facsimile:    (212) 492-0191
     Email:  mflumenbaum@paulweiss.com
15   *Counsel for Defendants*
     FORTRESS INVESTMENT GROUP LLC,
16   FORTRESS CREDIT CO. LLC

17   Additional counsel listed on signature page

18                    **UNITED STATES DISTRICT COURT**

19                   **NORTHERN DISTRICT OF CALIFORNIA**

20   INTEL CORPORATION and APPLE INC.,          Case No. 3:19-cv-07651-EMC

21              Plaintiffs,

22         v.                                    **DEFENDANTS' JOINT CONSOLIDATED
                                                 RESPONSE TO BRIEFS OF *AMICUS
23   FORTRESS INVESTMENT GROUP LLC,             CURIAE***
     FORTRESS CREDIT CO. LLC, UNILOC
24   2017 LLC, UNILOC USA, INC., UNILOC          Hon. Edward M. Chen
     LUXEMBOURG S.A.R.L., VLSI
25   TECHNOLOGY LLC, INVT SPE LLC,              Date:    June 18, 2020
     INVENTERGY GLOBAL, INC., DSS              Time:    1:30 p.m.
26   TECHNOLOGY MANAGEMENT, INC., IXI          Dept.:   Courtroom 5
     IP, LLC, and SEVEN NETWORKS, LLC,
27
                Defendants.
28

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .......................................................................................................... 1

II. PLAINTIFFS' AFFILIATIONS WITH AMICI HIGHLIGHT THAT THE AMICUS BRIEFS SHOULD BE TREATED WITH SKEPTICISM .................................................. 1

III. THE ARGUMENTS MADE BY AMICI ARE IRRELEVANT AND FLAWED ............ 3

    A. R Street Institute .............................................................................................. 3

    B. The App Association ......................................................................................... 6

    C. Unified Patents ................................................................................................. 6

    D. Fair Standards Alliance ..................................................................................... 8

    E. The High Tech Inventors Alliance And Computer & Communications Industry Association ................................................................. 10

IV. THE AMICUS BRIEFS UNDERMINE PLAINTIFFS' ARGUMENTS ...................... 12

V. CONCLUSION .......................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple Inc. et al. v. INVT SPE LLC*,
    IPR2018-01473 (P.T.A.B. Mar. 25, 2020)........................................................................5

*Apple Inc. et al. v. INVT SPE LLC*,
    IPR2018-01555 (P.T.A.B. Feb. 28, 2020) .......................................................................5

*Apple Inc. et al. v. INVT SPE LLC*,
    IPR2018-01581 (P.T.A.B. Feb. 28, 2020) .......................................................................5

*Apple, Inc. v. Motorola Mobility, Inc.*,
    886 F. Supp. 2d 1061 (W.D. Wis. 2012)........................................................................10

*Automatic Radio Mfg. Co. v. Hazeltine Research*, 339 U.S. 827 (1950),
    *overruled in part by Lear, Inc. v. Adkins*, 395 U.S. 653 (1969)......................................8

*Catch Curve, Inc. v. Venali, Inc.*,
    No. CV 05-04820 DDP, 2008 WL 11334024 (C.D. Cal. Nov. 3, 2008) ..................12

*Competitive Enters. Inst. v. U.S. Dep't of Agric.*,
    954 F. Supp. 265 (D.D.C. 1996) ......................................................................................4

*Consol. Salmonid Cases*,
    688 F. Supp. 2d 1013 (E.D. Cal. 2010)............................................................................3

*Fitbit, Inc. v. Laguna 2, LLC*,
    No. 17-CV-00079-EMC, 2018 WL 306724 (N.D. Cal. Jan. 5, 2018) ......................12

*In re Forge Grp. Power Pty LTD*, No. 17-cv-02045-PJH,
    2017 U.S. Dist. LEXIS 100488 (N.D. Cal. June 28, 2017) ..................................9, 11

*Funbus Sys., Inc. v. Cal. Pub. Utils. Comm'n*,
    801 F.2d 1120 (9th Cir. 1986)..........................................................................................2

*Gen-Probe, Inc. v. Amoco Corp., Inc.*,
    926 F. Supp. 948 (S.D. Cal. 1996) ................................................................................12

*Hartford Fire Ins. Co. v. Expeditors Int'l of Washington, Inc.*,
    No. 10 Civ. 5643(KBF), 2012 WL 6200958 (S.D.N.Y. Dec. 11, 2012)................1, 2

*Intel Corporation v. VLSI Technology LLC*,
    IPR 2018-01312 (P.T.A.B. Feb. 19, 2020) ....................................................................5

*Intel Corporation v. VLSI Technology LLC*,
    IPR2018-01040 (P.T.A.B. Feb. 12, 2020) .....................................................................5

*Intel Corporation v. VLSI Technology LLC*,
    IPR2018-01107 (P.T.A.B. Feb. 10, 2020) ..................................................................5

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
    342 U.S. 180 (1952) ..................................................................................................4

*Microsoft Corp. v. Motorola, Inc.*,
    795 F.3d 1024 (9th Cir. 2015)..................................................................................10

*New England Patriots Football Club, Inc. v. University of Colorado*,
    592 F.2d 1196 (1st Cir. 1979) ...................................................................................2

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
    138 S.Ct. 1365 (2018) ...............................................................................................5

*Rambus Inc. v. FTC*,
    522 F.3d 456 (D.C. Cir. 2008) ..................................................................................8

*Ryan v. CFTC*,
    125 F.3d 1062 (7th Cir. 1997)...................................................................................1

*Seven Networks, LLC v. Apple Inc.*,
    Case No. 2:19-cv-115-JRG (E.D. Tex. March 31, 2020)...........................................5

*Sulitzer, et al. v. Tippins, et al.*,
    Case No. 2:19-cv-08902-GW-(MAAx) (C.D. Cal. March 19, 2020) .........................2

*Swan v. Peterson*,
    6 F.3d 1373 (9th Cir. 1993)........................................................................................4

*Transparent-Wrap Machine Corp. v. Stokes & Smith Co.*,
    329 U.S. 637, 67 S.Ct. 610.........................................................................................8

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966), The FSA.............................................................................9, 10

*USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council*,
    *AFL-CIO*, 31 F.3d 800 (9th Cir. 1994) ...............................................................11, 12

*Ward v. Wells Fargo Home Mortg.*,
    No. 14-CV-00887-JCS, 2014 WL 1922082 (N.D. Cal. May 6, 2014) .......................3

**Statutes**

Cal. Civ. Code § 47(b) .....................................................................................................13

**Other Authorities**

ACT | The App Association, *Sponsors, available at* https://actonline.org/about/ ............................2

Center for Technology and Democracy, *Financials, available at*
https://staging.cdt.org/financials/ ...................................................................................2

Computer & Communications Industry Association, *Members, available at*
https://www.ccianet.org/about/members/...................................................................2

Fair Standards Alliance, *Members, available at* https://fair-standards.org/members ......................2

High Tech Inventors Alliance, *HTIA Members, available at*
https://www.hightechinventors.com/about.........................................................2, 13

Joshua D. Wright & Angela M. Diveley, *Interpreting Section 5 Unfair Methods of
Competition After the 2015 Commission Statement*, ANTITRUST SOURCE
(Oct. 2015) at 11, *available at* http://www.americanbar.org/content/
dam/aba/publishing/antitrust_source/oct15_wright_10_19f.authcheckdam.pdf ......................9

P. Sameni, *Top 25 IPR Petitioners Filed Nearly 30 Percent of All Challenges*,
Patexia Insight, *available at* https://www.patexia.com/feed/weekly-chart-top-
25-ipr-petitioners-20160920...........................................................................................5

1  **I.      INTRODUCTION**

2          In accordance with the Court's order, Dkt. 157, Defendants submit this consolidated

3  response to the amicus briefs filed by the following parties:  (1) the R Street Institute, the Center

4  for Democracy & Technology, Public Knowledge, Engine Advocacy, and the Electronic Frontier

5  Foundation (collectively, "R Street"), Dkt. 133-1; (2) ACT | The App Association (the "App

6  Association"), Dkt. 131; (3) Unified Patents, LLC, CableLabs, Patreon, and Bitmovin, Inc.

7  (collectively, "Unified Patents" or "UP"), Dkt. 145-1; (4) the Fair Standards Alliance ("FSA"),

8  Dkt. 142-1; and (5) the High Tech Inventors Alliance ("HTIA") and the Computer &

9  Communications Industry Association ("CCIA"), Dkt. 154-1.[1]

10          For the reasons set forth below, none of the amicus briefs provides any basis for denying

11  Defendants' Motion to Dismiss and Strike ("Motion").  The amicus briefs largely consist of policy

12  arguments about the supposed infirmities of the patent system and generalized attacks against

13  PAEs that have nothing to do with whether the Complaint states a claim under Rule 12(b)(6).

14  Moreover, the parade of horribles that amici depict—describing the alleged abusive practices of

15  PAEs against small companies—bears little relationship to what the Complaint actually alleges.

16  And on the rare occasions the amici do address the proper pleading of an antitrust claim (none of

17  the amici discusses the state law claims), their arguments are either irrelevant, incorrect, or both.

18  In sum, nothing in the amicus briefs undermines the arguments set forth in Defendants' Motion

19  demonstrating that Plaintiffs have failed to plead an antitrust claim.

20  **II.     PLAINTIFFS' AFFILIATIONS WITH AMICI HIGHLIGHT THAT THE AMICUS
            BRIEFS SHOULD BE TREATED WITH SKEPTICISM**
21

22          As a threshold matter, the Court should give little weight to the amicus briefs given amici's

23  affiliation with Apple and Intel. "The term 'amicus curiae' means friend of the court, not friend of

24  a party." *Ryan v. CFTC*, 125 F.3d 1062, 1063 (7th Cir. 1997); *see also Hartford Fire Ins. Co. v.*

25  *Expeditors Int'l of Washington, Inc.*, No. 10 Civ. 5643(KBF), 2012 WL 6200958, at *1 n.1

26  _____

27          [1] The Department of Justice ("DOJ") has filed a Statement of Interest arguing that the
    Court should grant Defendants' Motion to Dismiss with respect to Count 1 ("Sherman Act") and
28  Count 2 ("Clayton Act").  Dkt. 148.  Because Defendants agree with this conclusion, they do not
    provide any response here.

(S.D.N.Y. Dec. 11, 2012) (declining to consider argument of amici because of their "close relationship" to one of the parties). Here, Plaintiffs are sponsors or members of signatories on each of the five amicus briefs. Both Apple and Intel are members of the Fair Standards Alliance and the App Association,[2] Apple is a member of Unified Patents,[3] and Intel is one of just ten members of the High Tech Inventors Alliance and a member of the Computer & Communications Industry Association.[4] In addition, both Apple and Intel are financial sponsors of the Center for Technology & Democracy.[5]

While amici need not be "totally disinterested," they are not supposed to advance a "highly partisan . . . account of the facts." *See Funbus Sys., Inc. v. Cal. Pub. Utils. Comm'n*, 801 F.2d 1120, 1124 (9th Cir. 1986) (quoting *New England Patriots Football Club, Inc. v. University of Colorado*, 592 F.2d 1196, 1198 n.3 (1st Cir. 1979)). Here, several of the amici are simply vehicles for Plaintiffs and other big tech companies to advance their policy agendas. The others have been at the forefront of the anti-patent movement for many years. To be sure, amici have every right to advocate for their policy positions, but the place for such advocacy is the public square and the halls of Congress, not in off-point briefs in opposition to a motion to dismiss an antitrust case.

Further, where amici address issues that a party has "already addressed—or easily could have addressed . . . [the] desire to duplicate or supplement that discussion . . . is in effect an attempt to have the Court consider extra briefing beyond the limits allowed by this Court's Local Rules." *See Sulitzer, et al. v. Tippins, et al.*, Case No. 2:19-cv-08902-GW-(MAAx) (C.D. Cal. Mar. 19, 2020), Dkt. 36. The Court should accordingly treat amici's attacks on Defendants'

---

[2] *See* Fair Standards Alliance, *Members*, *available at* https://fair-standards.org/members/; ACT | The App Association, *Sponsors*, *available at* https://actonline.org/about/.

[3] *See* UP Br. at 1:19.

[4] *See* High Tech Inventors Alliance, *HTIA Members*, *available at* https://www.hightechinventors.com/about; Computer & Communications Industry Association, *Members*, *available at* https://www.ccianet.org/about/members/.

[5] According to the Center's financials, Apple has donated at least $200,000 and Intel has donated at least $50,000 to the Center. *See* Center for Technology and Democracy, *Financials*, *available at* https://staging.cdt.org/financials/.

1  purported business model and litigation conduct—which are conclusory, at times repetitive, and

2  irrelevant in any event—with considerable skepticism.

3  **III.    THE ARGUMENTS MADE BY AMICI ARE IRRELEVANT AND FLAWED**

4       The question before the Court is straightforward:  have Apple and Intel adequately pleaded

5  the elements of an antitrust claim?  As demonstrated in Defendants' Motion and Reply, the answer

6  is plainly "no."  For the most part, the amicus briefs do not address this question.  They do not

7  analyze the elements of an antitrust claim or what must be pleaded to satisfy them.  Instead, the

8  amicus briefs largely consist of (1) attacks on the purported business model of PAEs, (2) policy

9  arguments targeted at supposed patent abuse more generally, and (3) what amici believe are

10 inherent flaws of the United States patent system.  Even assuming that these policy-based

11 arguments have any merit, they have nothing to do with the numerous pleading deficiencies

12 Defendants demonstrate in their Motion (*e.g.*, Plaintiffs' failure to plead a viable market, a

13 cognizable antitrust injury, or a Sherman Act or Clayton Act violation, as well as the applicability

14 of *Noerr-Pennington* immunity).  *See Ward v. Wells Fargo Home Mortg.*, No. 14-CV-00887-JCS,

15 2014 WL 1922082, at *9 (N.D. Cal. May 6, 2014) ("[P]olicy arguments are inapposite to the

16 Court's task at hand, which is to determine whether the claims made in the Complaint are legally

17 sufficient to survive the standard set forth in Rule 12(b)(6) of the Federal Rules of Civil

18 Procedure."); *see also Consol. Salmonid Cases*, 688 F. Supp. 2d 1013, 1035 (E.D. Cal. 2010)

19 (amicus curiae's "extensive policy arguments are unnecessary" where the law is clear).  And in the

20 few instances where amici attempt to address these issues, their contentions are both wrong and

21 irrelevant for the reasons explained below.

22      **A.    R Street Institute**

23      The basic premise of R Street's brief—that so-called "weak" patents can create market

24 power because they cover a wide range of technologies and because technology companies lack

25 economic incentives to challenge them, R Street Br. at 6:21-23; 14:1-4—is misplaced for multiple

26 reasons.

27      As an initial matter, it is clear that R Street's argument is nothing more than a critique of

28 the U.S. patent system.  According to R Street, "the nature of current United States patent law"

makes it "quite likely" that a "weak" patent will "give rise to market power," and this is because

"patent law places a statutory thumb on the scale against invalidation even of weak patents"

thereby "prevent[ing] invalidation of truly invalid patents." *Id.* at 7:8-10, 12:16-22.  The purpose

of antitrust law, however, is to prohibit unlawful restraints on competition, not to second-guess the

policy judgments made by Congress.  *See Swan v. Peterson*, 6 F.3d 1373, 1382 (9th Cir. 1993)

(rejecting amicus's "policy argument" because the court's role is to apply the law, not "prescribe

[new] rules"); *see also Competitive Enters. Inst. v. U.S. Dep't of Agric.*, 954 F. Supp. 265, 277

(D.D.C. 1996) (rejecting amici's attempt to "have this court become their vehicle for

accomplishing their legislative agenda").[6]

Regardless, even assuming that R Street's policy-based argument has any merit, it has no

application here.  First, R Street's "weak" patent argument is inconsistent with Plaintiffs'

Complaint.  R Street defines "weak" patents as those that are drafted "so broadly" as to

"encompass a wide range of products and services within [their] ambit of infringement."  R. Street

Br. at 6:12-15.  But Plaintiffs' allegations contradict this overbreadth theory.  Intel and Apple

assert not only that Defendants' patents are supposedly invalid, but also that they are "not

infringed."  Cmplt. ¶¶ 39, 97, 118.  In other words, at least according to Intel and Apple, their

products are not "within [the] ambit" of these patents, contrary to the theory offered by R Street.

Thus, R Street's theory of market power bears no relationship to the theory that Plaintiffs have

actually pleaded.

Moreover, the theory that Plaintiffs have actually pleaded is fatally flawed, and nothing in

R Street's brief demonstrates otherwise.  As Defendants note in their Reply, Plaintiffs do not

---

[6] Moreover, R Street misleadingly suggests that, in *Kerotest Manufacturing Company*, the Supreme Court warned against the "incentives 'of 'owners of weak patents to avoid real tests of their patents' validity'[.]" R. Street Br. at 9:10-12 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 184-85 (1952)).  However, that quote was actually a recitation of one of the party's arguments which the Court ultimately *rejected*.  Specifically, *Kerotest* addressed a narrow procedural question:  whether the court of appeals properly refused to enjoin a patent infringement suit pending in another circuit in favor of a declaratory judgment suit premised on invalidity.  342 U.S. at 183-84.  In affirming the court of appeals, the Court rejected the party-argument that R Street quotes, finding it "implie[d] a lack of discipline and of disinterestedness on the part of the lower courts," which are perfectly capable of fairly adjudicating claims brought by supposedly "weak" patent owners.  *Id.* at 185.

dispute that they have failed to plead sufficient facts to demonstrate that Defendants' patents are "weak" or invalid.  Reply at 16:4-6.  Nor could they, given that Defendants have successfully defeated many of Plaintiffs' invalidity challenges (and Defendants have continued to accrue victories after their Motion was filed).[7]  Mot. at 6 n.1-2.  Plaintiffs do not acknowledge these numerous victories in their Opposition and neither does R Street.  Indeed, R Street admits that it "does not take a position on the particular patents" at issue in the underlying litigations.  R Street Br. at 6:24-26.  Thus, R Street's brief presents what is at best a purely theoretical discussion about the standards for patentability, the efficacy of the Patent Office in examining patents, and whether patents should enjoy a presumption of validity—none of which has any application to the motion that is presently before the Court or, for that matter, this case at all.

Finally, R Street's assertion that companies lack the economic incentives to challenge invalid patents is belied by this very case.  Apple and Intel have filed IPRs challenging the validity of virtually every patent asserted in the underlying litigations—in many instances multiple IPRs per patent.  *See, e.g.*, Cmplt. ¶¶ 98, 111, 116.  Moreover, Apple has historically filed more IPRs than any other single entity, and Intel has likewise ranked among the most prolific IPR petitioners.[8]  Accordingly, R Street's theory that so-called "weak" patents confer market power because they are likely to go unchallenged has no relevance or support here.  Deep-pocketed companies like Apple

---

[7] *See, e.g.,* Final Written Decision Determining No Challenged Claims Unpatentable, *Intel Corporation v. VLSI Technology LLC*, IPR2018-01107 (P.T.A.B. Feb. 10, 2020); Final Written Decision Determining No Challenged Claims Unpatentable, *Intel Corporation v. VLSI Technology LLC*, IPR2018-01040 (P.T.A.B. Feb. 12, 2020); Final Written Decision Determining No Challenged Claims Unpatentable, *Intel Corporation v. VLSI Technology LLC*, IPR 2018-01312 (P.T.A.B. Feb. 19, 2020); Final Written Decision Determining No Challenged Claims Unpatentable, *Apple Inc. et al. v. INVT SPE LLC*, IPR2018-01555 (P.T.A.B. Feb. 28, 2020); Final Written Decision Determining No Challenged Claims Unpatentable, *Apple Inc. et al. v. INVT SPE LLC*, IPR2018-01581 (P.T.A.B. Feb. 28, 2020); Final Written Decision Determining No Challenged Claims Unpatentable, *Apple Inc. et al. v. INVT SPE LLC*, IPR2018-01473 (P.T.A.B. Mar. 25, 2020); *Seven Networks, LLC v. Apple Inc.*, Case No. 2:19-cv-115-JRG (E.D. Tex. Mar. 31, 2020), Dkt. 116 (construing a majority of 19 disputed terms favorably to Seven Networks).

[8] *See* Brief for Apple Inc. as Amicus Curiae in Support of Respondents, *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S.Ct. 1365 (2018) (No. 16-712), 2017 WL 4946906, at *2 ("Indeed, through 2016, Apple had filed the most IPR petitions of any petitioner, with its 267 petitions comprising almost 5% of all petitions filed since 2012."); P. Sameni, *Top 25 IPR Petitioners Filed Nearly 30 Percent of All Challenges*, Patexia Insight, *available at* https://www.patexia.com/feed/weekly-chart-top-25-ipr-petitioners-20160920.

1  and Intel clearly have the means and incentive to challenge any patent they wish.

2       In sum, nothing in R Street's brief provides any basis to deny Defendants' motion.

3       **B.**     **The App Association**

4       The App Association's brief does not address any of the issues raised in Defendants'

5  Motion, nor does it discuss the necessary elements of an antitrust claim, let alone whether these

6  elements have been adequately pleaded.  Instead, the premise of the App Association's brief is that

7  so-called "abusers of the patent system" prey on small companies, who "often do not have the

8  resources or time to engage in lengthy and expensive litigation[,] . . . banking on a quick

9  settlement with little or no protest."  App Association Br. at 4:14-16.  This policy argument, like R

10  Street's, both is irrelevant to Defendants' Rule 12(b)(6) Motion and has no application to the

11  allegations in the Complaint.  This case is not about small companies.  Apple and Intel are two of

12  the largest and most valuable corporations in the world, and Apple and Intel do not allege in their

13  Complaint, and no amicus alleges in its brief, that Defendants have ever brought abusive

14  infringement claims against any small companies.  Nor is this case about trying to extract "quick

15  settlement[s]" (which would be a dubious strategy against Intel and Apple given their extensive

16  resources).  According to Plaintiffs' Complaint, the underlying patent suits have involved

17  protracted litigation with billions of dollars at stake.  *See, e.g.*, Cmplt. ¶¶ 82, 102, 161.  And

18  Plaintiffs admit that the purported purpose of Defendants' infringement suits is to obtain what

19  Plaintiffs call large "windfall" judgments, not "quick settlements" at nuisance value.  Opp. at 9:9-

20  11; *see also* Cmplt. ¶¶ 45-57.  Notably, the App Association does not name a single "small"

21  company out of its 5,000 members that has supposedly been abused by any of the Defendants.

22  Thus, whatever the merits of the App Association's arguments about supposed abusive patent

23  assertions against small companies, they are simply irrelevant here.

24       **C.**     **Unified Patents**

25       Like the App Association's brief, Unified Patents' brief consists largely of misplaced

26  policy arguments against the alleged practice of seeking "nuisance value" settlements.  UP Br. at

27  5:12.  This policy argument is irrelevant to Defendants and this case for all the reasons explained

28  above.  Unified Patents focuses on the fact that so-called PAEs allegedly have low success rates in

1   court because their suits are of "little or no merit." UP Br. at 5:2-3. But whatever may be true of

2   PAEs generally, Plaintiffs have not adequately alleged that Defendants' suits are of "little or no

3   merit" here. Indeed, as detailed in Defendants' Reply, Plaintiffs concede that they have not

4   alleged sham litigation.[9] Instead, they insist that their antitrust theory is not actually predicated on

5   Defendants' infringement suits at all. Reply at 16:4-7. Moreover, like Plaintiffs, Unified Patents

6   simply ignores the numerous victories that Defendants have achieved and continue to accumulate

7   in the underlying suits that are currently being litigated in other courts and the victories that

8   Defendants have achieved in now-settled litigations against other defendants.

9          Though Unified Patents asserts that "patent acquisition schemes" are "subject to antitrust

10  scrutiny," UP Br. at 12, its brief hardly mentions the required elements for an antitrust claim, let

11  alone attempts to demonstrate how Plaintiffs have met these requirements. Nor does Unified

12  Patents even attempt to explain how any of the alleged patent acquisitions at issue here have

13  injured competition, which is an especially dubious proposition given that neither Plaintiffs nor

14  amici dispute that Defendants' alleged patent portfolios apparently make up a miniscule portion of

15  the massive alleged "Electronics Patents Market." Instead, Unified Patents cites the DOJ

16  Guidelines (along with two law review articles) for the proposition that harm to competition can

17  under certain circumstances arise when "patents are aggregated to create a monopoly." *Id.* But

18  the DOJ has filed a statement of interest in this case demonstrating that Plaintiffs have failed to

19  allege that there is any risk of such a monopoly here. As the DOJ's brief points out, "Plaintiffs fail

20  to identify a single specific patent that Fortress acquired (or reached an agreement regarding the

21  marketing of) that was a substitute of any other patent in its portfolio." Dkt. 148 at 14 (emphasis

22  in original). Unified Patents' brief never addresses this fatal pleading defect.

23         Unified Patents' brief is also highly misleading. Without analysis or explanation, it asserts

24  that the Supreme Court's "caveats" in *Automatic Radio Manufacturing Company v. Hazeltine*

25  *Research* "appear to map readily onto Defendants' practices" here. UP Br. at 13. But these so

26  called "caveats" were actually arguments proffered by counsel that the Supreme Court ultimately

27  _____

28      [9] *See* Opp. at 29, 31:5-6 ("Plaintiffs are complaining about a pattern of anticompetitive patent transfers that led to supracompetitive royalties, not sham ligation.").

1  rejected.  The full quote from the Court reads:

2      The mere accumulation of patents, no matter how many, is not in and of itself
       illegal.  *See Transparent-Wrap Machine Corp. v. Stokes & Smith Co.*, 329 U.S.
3      637, 67 S.Ct. 610.  And this record simply does not support incendiary, yet vague,
       charges that respondent uses its accumulation of patents "for the exaction of
4      tribute" and collects royalties "by means of the overpowering threat of disastrous
       litigation."

5

6  *Automatic Radio Mfg. Co. v. Hazeltine Research*, 339 U.S. 827, 834 (1950), *overruled in part by*

7  *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969).  Thus, *Hazeltine Research* supports Defendants'

8  position.  Because neither Plaintiffs nor amici can dispute that the mere accumulation of patents

9  standing alone is not unlawful, they, just like the plaintiff in *Hazeltine*, resort to vague and

10  incendiary accusations regarding Defendants' supposedly aggressive litigation tactics.  *Hazeltine*

11  *Research* makes clear that this is not sufficient to state an antitrust claim.

12      **D.      Fair Standards Alliance**

13      The FSA's brief focuses on the standard-setting process and so-called SEP "patent hold-

14  up," *i.e.*, the refusal to license Standard Essential Patents on FRAND terms.  FSA Br. at 2-5.  But

15  those arguments are not relevant here because Plaintiffs (1) fail to allege that Defendants actually

16  own any SEPs; (2) fail to identify any particular patent that any of the Defendants have wrongly

17  refused to license on FRAND terms; and (3) fail to allege that any Defendant is a member of a

18  standard-setting organization ("SSO") and that any Defendant deceptively induced the SSO into

19  adopting a standard that it otherwise would not have chosen.  Mot. at 44-45.  While the FSA

20  asserts in conclusory fashion that "it believes the Complaint states a claim under the antitrust

21  laws," FSA Br. at 5, it does not address any of Defendants' arguments as to why their alleged

22  failure to abide by FRAND commitments does not state a claim.  Nor does the FSA explain why

23  "it believes" the Complaint states an antitrust claim notwithstanding the disinterested antitrust

24  authorities that endorse the opposite view—that an alleged breach of a FRAND commitment,

25  absent deception during the standard-setting process, is <u>not</u> cognizable under the antitrust laws.[10]

26

27      [10] *See, e.g.,* DOJ Statement at 20 ("[I]t is not a violation of federal antitrust laws merely for
       SEP licensors to seek allegedly supra-FRAND terms."); *Rambus Inc. v. FTC*, 522 F.3d 456, 466
28     (D.C. Cir. 2008) ("[A]n otherwise lawful monopolist's end-run around price constraints, even
       when deceptive or fraudulent, does not alone present a harm to competition in the monopolized

1    Moreover, the FSA claims that its "brief focuses on [Plaintiffs'] federal claims."  *Id.* at 5 n.4.  But

2    Plaintiffs have not brought any federal antitrust claims based on Defendants' alleged evasion of

3    FRAND commitments.  Instead, Apple has brought a single California UCL claim (Count 4)

4    based on this theory, and the FSA does not address any of the independent reasons why Count 4

5    fails to state a claim under California law.

6         In addition, the FSA's arguments as to why the Complaint supposedly satisfies the

7    pleading requirements for a federal antitrust claim fail for multiple reasons.

8         <u>Relevant Market</u>.  The FSA asserts that Plaintiffs have sufficiently pleaded a relevant

9    market, but the FSA improperly proffers a theory that Plaintiffs have not alleged.  *See In re Forge*

10   *Grp. Power Pty LTD*, No. 17-cv-02045-PJH, 2017 U.S. Dist. LEXIS 100488, at *3 (N.D. Cal. June

11   28, 2017) ("[A]n amicus may not . . . create, extend, or enlarge the issues.").  Specifically, the FSA

12   argues that "a cluster of products" can comprise a relevant market.  FSA Br. at 6:12-16.  The

13   Complaint, however, does not assert a "cluster" theory, nor do Plaintiffs attempt to adopt such a

14   theory in their Opposition.  Indeed, the word "cluster" does not appear anywhere in the Complaint,

15   and the Opposition makes clear that it is Plaintiffs' theory that the purported allegations of direct

16   evidence of market power "negate any need to define a relevant market."  Opp. at 16.  The DOJ

17   likewise observes that Plaintiffs do not allege a cluster market theory.  *See* DOJ at 9 n.11

18   ("Plaintiffs have not alleged that their Electronics Patent Market includes different technologies that

19   ought to be 'clustered' together for administrative convenience[.]").  Regardless, the FSA's cluster

20   theory fails.  The gargantuan purported "Electronics Patent Market," which includes everything

21   from microprocessors and semiconductors, to microwaves and clock radios, to commercial

22   equipment like photocopiers and cash registers, could not possibly constitute a "cluster" of products

23   that are typically sold in "combination."  *United States v. Grinnell Corp*., 384 U.S. 563, 573

24   _____

25   market."); Joshua D. Wright & Angela M. Diveley, *Interpreting Section 5 Unfair Methods of Competition After the 2015 Commission Statement*, ANTITRUST SOURCE (Oct. 2015) at 11,

26   ("[P]atent holdup without deception is tantamount to a lawful monopolist charging supracompetitive prices.  The case law in this area uniformly establishes that any consumer harm

27   arising from a patentee's breach of its FRAND commitment to an SSO, after its lawful acquisition of market power via its contribution of an SEP to a standard, is not cognizable under the antitrust

28   laws." (citations omitted)) *available at* http://www.americanbar.org/content/dam/aba/publishing/antitrust_source/oct15_wright_10_19f.authcheckdam.pdf.

1   (1966).[11]

2       <u>Noerr-Pennington</u>.  The Court should also reject the FSA's contention that *Noerr-*

3   *Pennington* "does not absolve the anticompetitive tactics alleged here" because Defendants'

4   alleged failure to abide by FRAND commitments constitutes a breach of contract.  FSA Br. at 8-

5   11.  Plaintiffs have not brought a breach of contract claim.  Moreover, one of the very cases that

6   the FSA relies on, *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061 (W.D. Wis. 2012),

7   supports Defendants' position.[12]  Based on the allegations before it, the court in *Motorola*

8   concluded that an SSO member's promise to offer FRAND terms essentially constituted a

9   contractual promise not to sue, and breach of that promise was not subject to *Noerr-Pennington*

10   immunity.  *Id.* at 1078.  The court, however, held that Apple's antitrust claims were barred by

11   *Noerr-Pennington* because these claims were based solely on defendant's petitioning activity to

12   enforce its SEPs in court.  *Id.* at 1076 ("The problem for Apple is that its allegations and

13   arguments make clear that its antitrust claim is necessarily based on Motorola's patent

14   litigation.").  Thus, Apple proffers the same theory here that it unsuccessfully raised in *Motorola*.

15   Contrary to the FSA's arguments, nothing in the *Motorola* decision supports Apple's antitrust

16   claims.[13]

17       **E.**    **The High Tech Inventors Alliance And Computer & Communications**
    **Industry Association**

18

19       Although the first section of the HTIA's and CCIA's brief asserts that "PAE Patent

20

---

21       [11] The FSA also argues that the Court should not dismiss Plaintiffs' claims for failure to

22   define a market because Defendants' alleged "obfuscation" "precludes the plaintiff from obtaining information necessary to show the market's precise boundaries."  FSA Br. at 7:13-14.  But this proposition makes no sense, and the FSA cites no authority for it.  If it is Plaintiffs' position that Defendants have the power to control prices for certain technologies and their substitutes, then

23

24   they should be able to allege what these technologies and substitutes are.  Regardless, Plaintiffs have not alleged any facts that plausibly suggest obfuscation, Mot. at 8-9, nor do they dispute that Fortress's alleged security interests are a matter of public record, *id.* n.4.

25

26       [12] The other case that the FSA relies on—*Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1048-49 (9th Cir. 2015)—simply determined that *Noerr-Pennington* did not protect a defendant from liability <u>in a breach of contract action</u>.

27       [13] The Court should also reject the FSA's arguments that the sham exception to *Noerr-*

28   *Pennington* should apply, as Plaintiffs have expressly disclaimed this theory of harm.  *See* Opp. at 29, 31.

1    Aggregation Raises Antitrust Concerns," HTIA/CCIA Br. at 2-7, their brief does not even attempt

2    to argue that any of the required elements of an antitrust claim (market definition, antitrust injury,

3    etc.) are satisfied here.  Instead, this section either just regurgitates the allegations of the

4    Complaint or argues why "serial litigation" by supposed PAEs is harmful.  Not only are these

5    policy arguments untethered to antitrust law, they also have no basis in antitrust policy.  Among

6    all the invective against PAEs and "aggregation" of patents, there is hardly a word about how

7    aggregation of patents by PAEs affects <u>competition</u>.  Nor is there any explanation of how courts

8    can distinguish the lawful aggregation of patents from activity that is anticompetitive.  Rather,

9    HTIA's and CCIA's argument appears to be that <u>any</u> "aggregation" of patents by PAEs is harmful

10   and should be illegal—which runs counter to Plaintiffs' theory of the case, as they concede that

11   the acquisition of patents, without more, is lawful.  Cmplt. ¶ 48.  None of this supports denying

12   Defendants' Motion.

13          The second section of the HTIA's and CCIA's brief asserts that the Complaint

14   "sufficiently alleges sham litigation under *Noerr-Pennington*."  HTIA/CCIA Br. at 7:15.

15   **<u>Plaintiffs, however, expressly disclaim reliance on this theory in their Opposition</u>**, *see* Opp. at

16   29:9-10, 31:5-6 ("Plaintiffs are complaining about a pattern of anticompetitive patent transfers . . .

17   not sham litigation"), and an amicus may not "create, extend, or enlarge the issues" under

18   consideration.  *In re Forge Grp. Power Pty LTD*, 2017 U.S. Dist. LEXIS 100488, at *3.

19          Regardless, the HTIA's and CCIA's sham litigation arguments are wholly without merit.

20   Their brief incorrectly argues that Defendants "ignore[] governing law" concerning the "series"

21   formulation of the sham exception.  HTIA Br. at 7-10.  This is false.  Defendants argued in their

22   Motion that even assuming the Ninth Circuit's "series" formulation of the sham exception applies,

23   the "series" test also requires a plaintiff to plead (i) baseless lawsuits and (ii) motivation to use the

24   governmental <u>process</u> rather than the <u>outcome</u> of that process to injure a <u>competitor</u>.  *See* Mot. at

25   25 n.11; *see also USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, AFL-*

26   *CIO*, 31 F.3d 800, 811 (9th Cir. 1994) ("When dealing with a series of lawsuits, the question is . . .

27   whether they are brought pursuant to a policy of starting legal proceedings without regard to the

28   merits and <u>for the purpose of injuring a market rival</u>." (emphasis added)).  Plaintiffs admit that

1  they are not competitors of Defendants, and they do not dispute that Defendants have brought their

2  infringement claims to achieve particular litigation outcomes (*e.g.*, favorable settlements or trial

3  outcomes), not just to harm Apple and Intel's business (which would serve no purpose for

4  Defendants).  Reply 12:1-11, 16:1-7.  The "series" test cannot be satisfied on this basis alone, and

5  HTIA and CCIA do not even address these arguments.

6         The "series" formulation also does not somehow do away with the requirement that a

7  plaintiff adequately allege that the defendant's suits were "objectively baseless," as HTIA and

8  CCIA seem to suggest.  *See, e.g.*, *Catch Curve, Inc. v. Venali, Inc.*, No. CV 05-04820 DDP, 2008

9  WL 11334024, at *6 (C.D. Cal. Nov. 3, 2008) ("Whether the lawsuits at issue are baseless is a

10  component of the [series] approach."); *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948,

11  959 (S.D. Cal. 1996) (explaining that "under either the *PRE* or the *USS-POSCO* test, [the plaintiff]

12  . . . must demonstrate objective baselessness" because the pattern of claims must be "baseless as a

13  whole.").  The "series" formulation simply stands for the proposition that, where the plaintiff

14  alleges that the defendant has filed a series of sham lawsuits, the mere fact that "any one of them

15  has merit" does not shield the defendant from liability.  *USS-POSCO Indus*, 31 F.3d at 811.  Here,

16  Plaintiffs do not dispute that they have failed to adequately allege that <u>even a single one</u> of

17  Defendants' infringement suits is "objectively baseless," let alone that all, most, or even a majority

18  of them are.[14]

19  **IV.**    **THE AMICUS BRIEFS UNDERMINE PLAINTIFFS' ARGUMENTS**

20         In addition to their other failings, the amicus briefs actually undermine Plaintiffs'

21  arguments in at least two ways.

22         First, while Plaintiffs' Opposition runs away from the Complaint by arguing that Plaintiffs'

23

24        [14] Amici retort that Plaintiffs adequately plead "losses on validity" and that the Court, absent fact discovery, cannot conclude whether the alleged litigations were objectively baseless. HTIA/CCIA Br. at 12.  But the mere fact that Defendants have lost some validity challenges does

25  not establish that their lawsuits were "objectively baseless," especially given the presumption of validity.  Mot. at 28:15-22.  And the FSA's contention that baselessness cannot be decided without

26  discovery ignores the fact that courts routinely hold that antitrust claims are barred by the *Noerr-*

27  *Pennington* doctrine at the pleading stage.  Mot. at 26:2-4.  The FSA also ignores that sham litigation must be pleaded with specificity—a legal rule that Plaintiffs do not contest in their

28  Opposition.  *See Fitbit, Inc. v. Laguna 2, LLC*, No. 17-CV-00079-EMC, 2018 WL 306724, at *10 (N.D. Cal. Jan. 5, 2018).

1  antitrust claims are predicated solely on Defendants' alleged patent acquisitions as opposed to

2  Defendants' infringement suits, it is clear that amici read the Complaint differently.  Each of the

3  amici who filed briefs in support of Plaintiffs explains that the Complaint is predicated on

4  Defendants' alleged litigation conduct.[15]  Amici's emphasis on this only underscores that, despite

5  Plaintiffs' protests to the contrary in their Opposition, their antitrust claims are clearly predicated

6  on Defendants' protected litigation activity.  These claims are therefore barred by the *Noerr-*

7  *Pennington* doctrine, California's Anti-SLAPP statute, and California's statutory litigation

8  privilege (Cal. Civ. Code § 47(b)).

9        Second, the amici demonstrate that Plaintiffs' allegation that Defendants possess market

10  power over the massive alleged "Electronics Patents Market" is plainly absurd.  The Complaint

11  alleges that Fortress controls "over a thousand U.S. patents," Cmplt. ¶ 30, but if amici's assertions

12  are true, this alleged portfolio constitutes a miniscule fraction of the overall market.  For example,

13  R Street asserts that there are "between 250,000 and 314,000 patents covering smartphones," R

14  Street Br. at 7:21, and this is but one component of the alleged Electronics Patents Market.  In

15  addition, CCIA asserts that its "members receive more than 150,000 U.S. patents each year and

16  regularly appear in the list of top U.S. patent recipients."  HTIA/CCIA Br. 1:21-22 (emphasis

17  added).[16]  Finally, the App Association's brief demonstrates just how implausibly expansive the

18  purported Electronics Patents Market is.  According to the App Association, the "scheme detailed

19  in the Complaint" somehow implicates "cutting edge health care devices," including "blood

20

---

21        [15] *See* HTIA/CCIA Br. at 3:14-16 ("PAE aggregators seek license fees based not on the value of any specific technology, but rather on the cost they can impose through serial litigation.
22  This is precisely the conduct plaintiffs allege . . . ."); App Association Br. at 5:17-19 ("The Complaint filed in this case discusses how Fortress IP and its affiliated assertion entities have
23  aggregated a high number of patents and have systematically used threats of litigation to seek royalties for those patents that exceed the value of the patents."); UP Br. at 15:22-24 ("The
24  complaint likewise demonstrates that Defendants have engaged in campaigns of serial [patent] assertions."); *id.* at 14:3-4 ("Defendants Have Combined the Mass Aggregation of Patents with
25  Serial Enforcement Campaigns to Harm Competition."); FSA Br. at 4:13-16 ("By deploying their patent portfolios in voluminous and repetitive litigation, PAEs force innovative product
26  manufacturers (including FSA members) to choose between funding 'the extreme expense of litigation defense' and licensing the PAEs' patents at inflated rates." (quoting Cmplt. ¶¶ 11, 31)).

27        [16] While not noted in its brief, HTIA's website states that its members alone possess more than 115,000 U.S. patents.  High Tech Inventors Alliance, *HTIA Members*, *available at*
28  https://www.hightechinventors.com/about.

1  glucose reading technology," in addition to the various other products and categories set forth in

2  the Complaint.  App Association Br. at 6:12-19.  This shows that Plaintiffs' vague and amorphous

3  market has virtually no bounds and therefore fails as a matter of law.

4  **V.    CONCLUSION**

5        The arguments and assertions raised by amici are either irrelevant, incorrect, or actually

6  undermine Plaintiffs' antitrust claims.  For all of the reasons stated in Defendants' Motion and

7  Reply, the Complaint should be dismissed.  Nothing in the amicus briefs demonstrates otherwise.

8  Dated:  April 13, 2020                              Respectfully submitted,

9                                                      IRELL & MANELLA LLP

10

11                                                     By:*/s/ A. Matthew Ashley*

12                                                     A. Matthew Ashley
                                                       *Counsel for Defendants*

13                                                     FORTRESS INVESTMENT GROUP LLC,
                                                       FORTRESS CREDIT CO. LLC,
                                                       VLSI TECHNOLOGY LLC

14

15                                                     */s/ Martin Flumenbaum*

16                                                     Martin Flumenbaum (*pro hac vice*)
                                                       mflumenbaum@paulweiss.com
                                                       PAUL, WEISS, RIFKIND, WHARTON &
                                                       GARRISON LLP

17                                                     1285 Avenue of the Americas
                                                       New York, NY 10019-6064

18                                                     Telephone:  212-373-3191
                                                       Facsimile:  212-492-0191

19                                                     *Counsel for Defendants*
                                                       FORTRESS INVESTMENT GROUP LLC,

20                                                     FORTRESS CREDIT CO. LLC

21                                                     */s/ Christopher A. Seidl*

22                                                     Christopher A. Seidl (*pro hac vice*)
                                                       CSeidl@RobinsKaplan.com

23                                                     ROBINS KAPLAN LLP
                                                       800 LaSalle Avenue, Suite 2800

24                                                     Minneapolis, MN 55402
                                                       Telephone:  612 349 8468
                                                       Facsimile:  612 339-4181

25                                                     *Counsel for Defendants*
                                                       INVT SPE LLC

26                                                     INVENTERGY GLOBAL, INC.

27

28

1

*/s/ Nathaniel Lipanovich*
Nathaniel Lipanovich (Bar No. 292283)

2

nlipanovich@thoits.com
THOITS LAW

3

400 Main Street, Suite 250
Los Altos, CA 94022

4

Telephone: 650 327-4200
Facsimile:  650-325-5572

5

*Counsel for Defendant*
DSS TECHNOLOGY MANAGEMENT,

6

INC.

7

*/s/ Jason D. Cassady*
Jason D. Cassady (*pro hac vice*)

8

jcassady@caldwellcc.com
CALDWELL CASSADY & CURRY

9

2121 N. Pearl Street, Suite 1200
Dallas, TX 75201

10

Telephone: 214 888-4841
Facsimile:  214-888-4849

11

*Counsel for Defendant*
IXI IP, LLC

12

13

*/s/ James J. Foster*
James J. Foster

14

jfoster@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700

15

Boston, MA 02110
Telephone:  617 456-8022

16

Facsimile:  617 456-8100
*Counsel for Defendant*

17

UNILOC 2017 LLC

18

*/s/ Daniel. R. Shulman*
Daniel R. Shulman (*pro hac vice*)

19

daniel.shulman@lathropgpm.com
Dean C. Eyler (*pro hac vice*)

20

dean.eyler@lathropgpm.com
LATHROP GPM LLP

21

500 IDS Center
80 South 8th Street

22

Minneapolis, MN 55402
Telephone: 612 632-3335

23

Facsimile: 612 632-4000
*Counsel for Defendants*

24

UNILOC LUXEMBOURG S.A.R.L.
UNILOC USA, INC

25

*/s/ Samuel F. Baxter*
Samuel F. Baxter (*pro hac vice*)

26

sbaxter@mckoolsmith.com
John Briody (*pro hac vice*)

27

jbriody@mckoolsmith.com
MCKOOL SMITH

28

104 East Houston, Suite 100

- 15 -

DEFENDANTS' JOINT CONSOLIDATED RESPONSE TO
BRIEFS OF *AMICUS CURIAE*
Case No. 3:19-cv-07651-EMC

1

2

Marshall, TX 75670
Telephone:  903 923-9001
Facsimile:  903 923-9099

3

4

One Manhattan West
395 9th Avenue, 50th Floor
New York, NY 10001-8603
Telephone: 212.402.9438
*Counsel for Defendant*
SEVEN NETWORKS, LLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## ECF ATTESTATION

2      I, Olivia Lauren Weber, am the ECF user whose ID and password are being used to file

3   DEFENDANTS' JOINT CONSOLIDATED RESPONSE TO BRIEFS OF AMICUS CURIAE.  I

4   hereby attest that I received authorization to insert the signatures indicated by a conformed

5   signature (/s/) within this e-filed document.

6

7

8                                       By: */s/   Olivia Lauren Weber*
                                            Olivia Lauren Weber
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28