WILMER CUTLER PICKERING
   HALE AND DORR LLP
Mark D. Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Fax: (650) 858-6100

WILMER CUTLER PICKERING
   HALE AND DORR LLP
Leon B. Greenfield (*pro hac vice*)
leon.greenfield@wilmerhale.com
Amanda L. Major (*pro hac vice*)
amanda.major@wilmerhale.com
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Fax: (202) 663-6363

*Attorneys for Plaintiffs*
*Intel Corporation and Apple Inc.*

WILMER CUTLER PICKERING
   HALE AND DORR LLP
William F. Lee (*pro hac vice*)
william.lee@wilmerhale.com
Joseph J. Mueller (*pro hac vice*)
joseph.mueller@wilmerhale.com
Timothy D. Syrett (*pro hac vice*)
timothy.syrett@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Additional counsel listed on signature page

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| INTEL CORPORATION and APPLE INC., | Case No. 3:19-cv-07651-EMC |
| Plaintiffs, | |
| v. | **INITIAL JOINT CASE MANAGEMENT STATEMENT** |
| FORTRESS INVESTMENT GROUP LLC, FORTRESS CREDIT CO. LLC, UNILOC 2017 LLC, UNILOC USA, INC., UNILOC LUXEMBOURG S.A.R.L., VLSI TECHNOLOGY LLC, INVT SPE LLC, INVENTERGY GLOBAL, INC., DSS TECHNOLOGY MANAGEMENT, INC., IXI IP, LLC, and SEVEN NETWORKS, LLC, | |
| Defendants. | |

Pursuant to Civil Local Rule 16-9 and this Court's Standing Order, the parties jointly submit this Joint Case Management Statement and Proposed Order. Counsel for Intel Corporation ("Intel") and Apple Inc. ("Apple") (hereinafter collectively, "Plaintiffs") and counsel for Fortress Investment Group LLC ("Fortress"), Fortress Credit Co. LLC ("Fortress Credit"), Uniloc 2017 LLC ("Uniloc 2017"), Uniloc USA, Inc. ("Uniloc USA"), Uniloc Luxembourg S.A.R.L. ("Uniloc Luxemborg"), VLSI Technology LLC ("VLSI"), INVT SPE LLC ("INVT"), Inventergy Global, Inc. ("Inventergy"), DSS Technology Management, Inc. ("DSS"), IXI IP, LLC ("IXI IP"), and Seven Networks, LLC ("Seven Networks") (hereinafter collectively, "Defendants") met and conferred on January 27, 2020.

## 1. Jurisdiction and Service

Plaintiffs contend that this Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to under 28 U.S.C. §§ 1331 (federal question) and 1337(a) (antitrust). This Court has jurisdiction over the unfair competition claims arising under state law pursuant to 28 U.S.C. § 1367(a). No issues exist regarding venue. All named parties have been served, and there are no unresolved issues relating to service of process.

## 2. Facts and Legal Issues

### a.   Plaintiffs' Statement

#### i.    Facts

As set forth in their detailed Complaint, Intel and Apple are challenging the Defendants' anticompetitive scheme of acquiring a massive portfolio of patents (including substitute and complementary patents) that purportedly read on electronic devices and components or software therein and processes used to manufacture them, and then using their aggregated portfolio to obtain patent royalties greatly exceeding the value of the alleged inventive contributions of and competitive prices for the patents, including through serial, baseless assertions, if necessary. For example, with the creation of VLSI, Fortress Investment Group has pursued a "Privateering Option" in which patents were transferred from an operating company to VLSI so that they could be asserted in litigation to attempt to obtain a windfall in royalties. As another example, Uniloc entities have sued Apple in 25 infringement actions, without regard to the merits of the assertions.

Intel and Apple now face damages demands in the billions of dollars from VLSI and Uniloc, respectively, in multiple litigations.

Intel and Apple allege that by aggregating a massive portfolio of patents, the Defendants have changed the dynamics for determining whether to assert a patent and the targets' available options for addressing the assertions—with harmful impacts on competition. Intel and Apple further allege that Defendants have targeted suppliers of high-tech consumer and enterprise electronic devices and components and software for those devices because they provide attractive targets for repeated and meritless patent assertions. The scope of Defendants' aggregation and their focus on electronics patents enables them to exercise hold-up power by eliminating substitutes and artificially inflating the value of patents with little or no inventive value. To further their anticompetitive scheme, the Defendants have asserted waves of patent lawsuits against their targets without regard for the merits of their claims. Rather than licensing and litigating based on the patent merits, the Defendants exploit volume and repetition, targeting the resolve of the targets. Given the number of patents that the Defendants own or control, the Defendants can serially bring weak patent claims against their targets with the threat of ever more patent assertions and ever more litigation. Faced with this threat, many victims have agreed to settle, rather than to defend the assertions, for amounts that reflect not the alleged merits of the underlying patents but the anticompetitive effectiveness of the Defendants' model. Thus, through their aggregation, the Defendants foreclose litigation as an economic alternative to licensing patents.

Through their conduct—as set out in more detail in the Complaint—the Defendants have harmed competition in the "Electronics Patents Market" in the United States—an antitrust market for patents for high-tech consumer and enterprise electronic devices and components or software therein and processes used to manufacture them. Fortress has market power in the Electronics Patents Market based on the number of patents that Fortress and its patent assertion entities ("PAEs") have aggregated and Fortress and its PAEs' methods of asserting those patents. In particular, given the size of the portfolio, it is exceedingly difficult for any potential licensee to meaningfully analyze the patents in the portfolio in a systematic fashion. Thus, the size of the

aggregated portfolio imposes substantial costs for suppliers of electronic devices to design or work around, no matter the merits of the constituent patents.  Moreover, Fortress's PAEs assert their patents to read broadly on the accused products in ways that are facially invalid, but that Fortress's PAEs claim make it infeasible to design around.  In addition, the features of products accused of infringement by Fortress's PAEs may be difficult or impossible to modify because of the extremely high switching costs involved given the investments that have already been made in product design and production.  The supracompetitive licensing returns Fortress's PAEs have obtained are direct evidence of market power.

Intel and Apple challenge the Defendants' conduct as (1) unlawful agreements to restrain competition in patent licensing in violation of Section 1 of the Sherman Act; (2) unlawful asset acquisitions in violation of Section 7 of the Clayton Act; (3) unfair methods of competition in violation of Section 17200 of the Cal. Bus. & Prof. Code; and (4) (by Apple only) attempts to evade their commitments to license their claimed standard-essential patents ("SEPs") for cellular standards under fair, reasonable, and non-discriminatory ("FRAND") terms and conditions by transferring these claimed SEPs among these Defendants, and by scheming to have the acquiring parties demand non-FRAND royalties constitutes unfair methods of competition in violation of Section 17200 of the Cal. Bus. & Prof. Code.

The factual issues to be decided include, but are not limited to:

- Whether Defendants entered agreements that unreasonably restrained trade and affected interstate or foreign commerce;

- Whether Defendants engaged in patent acquisitions that may substantially lessen competition;

- Whether Defendants' conduct has harmed competition in the licensing of patents for high-tech consumer and enterprise electronic devices and components or software therein and processes used to manufacture them and has also caused harm downstream in sales of electronics devices and components and software for those devices;

- Whether Fortress, Uniloc, INVT, and Inventergy have evaded or attempted to evade commitments to license claimed SEPs for cellular standards under FRAND terms and conditions by demanding non-FRAND royalties for SEPs;

- Whether Fortress, Uniloc, INVT, and Inventergy have harmed competition in the markets for the functionality for cellular standards that are claimed to be covered by their SEPs;

- Whether Defendants' conduct has injured Apple and Intel, and if so, in what amount.

### ii.    Legal Issues

The legal issues to be decided include, but are not limited to:

- Whether Fortress, Uniloc USA, Uniloc Luxembourg, Inventergy, DSS, and IXI IP's conduct constitutes an unlawful contract, combination, or conspiracy agreements in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

- Whether Fortress, Uniloc 2017, VLSI, INVT, IXI IP, and Seven Networks' acquisitions of patents (or interests in patents) are unlawful asset transfers in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

- Whether Defendants' agreements and patent acquisitions constitute illegal and/or unfair methods of competition in violation of Section 17200 of the Cal. Bus. & Prof. Code;

- Whether Fortress, Uniloc, INVT, and Inventergy's attempts to evade commitments to license their SEPs on FRAND terms and conditions by constitutes illegal and/or unfair methods of competition in violation of Section 17200 of the Cal. Bus. & Prof. Code.

Disputed contentions of law regarding specific elements of the causes of action listed above are described in Defendants' motions to dismiss and Intel and Apple's briefs opposing those motions.

**b.** **Defendants' Statement**

　　**i.** **Facts**

The Complaint alleges in conclusory fashion that Fortress and Fortress Credit have orchestrated a "web" of patent assertion entities ("PAEs") in order to aggregate "weak patents" and bring "meritless" patent litigations. Dkt. No. 1 ("Cmplt.") ¶ 9. None of this is true, and none of it has anything to do with the antitrust laws or protecting competition.

Defendant Fortress is a leading global investment management firm that offers a range of alternative investment strategies including credit, real estate, and private equity for institutional and private investors. In particular, Fortress's credit business is focused on investing globally, primarily in undervalued assets and illiquid credit investments, including intellectual property. Some of these business strategies involve providing loans to operating companies, where intellectual property serves as the main collateral with such financing, and providing private equity investments that enable inventors, research institutes, universities, and companies to efficiently realize the value of their intellectual property. Without Fortress's loans and investments, these individuals and organizations would often lack sufficient resources to enforce their Constitutionally-enshrined patent rights.

These patents are not "weak," nor are Defendants' infringement contentions "meritless," contrary to Plaintiffs' conclusory assertions. This is demonstrated by the fact that Defendants have prevailed in *inter partes* review proceedings, obtained favorable Markman and summary judgment rulings, and survived various other challenges brought by Plaintiffs in the very lawsuits that form the basis of Plaintiffs' Complaint. Tellingly, despite repeated allegations in their Complaint about "meritless" litigations, *see, e.g.*, Cmplt. ¶¶ 2, 9, 31, 40, 88, 93, 163, 164, Plaintiffs conceded in their Opposition to Defendants' Joint Motion to Dismiss and Strike Plaintiffs' Complaint that they are not invoking a sham litigation theory of antitrust liability and instead are complaining only about supposedly anticompetitive patent aggregation. Dkt. No. 136 at 29:7-9, 31:4-6. Plaintiffs' admission that they are not basing their case on a sham litigation theory demonstrates that the bulk of the case pled in their Complaint is irrelevant and without merit. Plaintiffs' pivoted focus on unlawful patent aggregation is likewise baseless, especially

1   given that (i) Plaintiffs' own patent portfolios <u>alone</u> are many times the size of all of Defendants'

2   portfolios combined, (ii) Plaintiffs make no attempt to plead any facts to support their allegation

3   that Defendants have market power in the so-called "Electronics Patents Market," which would

4   have to be comprised of millions of patents, and (iii) Plaintiffs make no attempt to plead any facts

5   about Defendants' purported aggregation of substitute patents.

6        As set forth in Defendants' Joint Motion to Dismiss and Strike Plaintiffs' Complaint

7   (herein "Motion to Dismiss and Strike"), Dkt. No. 111, the Complaint has nothing to do with

8   protecting competition. Rather, Plaintiffs' real complaint is that loans or equity investments from

9   Fortress-managed investment funds have allowed patent owners to sue Plaintiffs for infringement,

10  when the original inventors and owners might not have been able to withstand the expense of

11  Plaintiffs' well-known scorched-earth defense tactics and refusals to pay for the technology they

12  are using. There is nothing unlawful about that.

13                    **ii.    Legal Issues**

14       Plaintiffs assert that certain Defendants' alleged conduct violates Sherman Act Section 1,

15  Clayton Act Section 7, and California's unfair competition law, Cal. Bus. & Prof. Code § 17200,

16  *et seq.* ("UCL"). A threshold legal issue is whether Plaintiffs have stated claims pursuant to

17  Federal Rule of Civil Procedure 12(b)(6), which is the subject of Defendants' pending Motion to

18  Dismiss and Strike. For the reasons briefly summarized below and numerous others contained in

19  Defendants' pending Motion to Dismiss and Strike, all of Plaintiffs' claims fail as a matter of law

20  for multiple independent reasons.

21       ***No Plausible, Relevant Antitrust Market.*** Each of Plaintiffs' antitrust claims requires

22  Plaintiffs to allege a plausible, relevant antitrust market. In order to plead a plausible, relevant

23  antitrust market, Plaintiffs must define their market by identifying the particular product or

24  technology at issue and each of its close economic substitutes. Courts in this district and around

25  the nation routinely dismiss antitrust complaints where the proposed market does not identify the

26  specific goods or technologies and their economic substitutes, or where the proposed market

27  includes goods or technologies that are not economic substitutes. Here, Plaintiffs' proposed

28  "Electronics Patents Market," which consists of the entire "market for patents for high-tech

consumer and enterprise electronic devices and components or software therein and processes used to manufacture them," (Cmplt. ¶ 156) fails on both counts. Plaintiffs provide no bounds for their "market," so it is unclear what it includes and what it excludes. Moreover, what little is alleged about the market shows that it is enormously overbroad because it includes goods and technologies that are not substitutes for each other. For instance, just using the names of some of the "customers" the Complaint identifies, Plaintiffs' proposed market would include (but not remotely be limited to): microprocessors, televisions, computers, electronic business databases, streaming services, e-commerce, smartphones, e-books, nuclear reactor control systems, clock radios, and semiconductors. Without a proper antitrust market, Plaintiffs' federal antitrust claims fail, as do the state law claims based on them. Apple also alleges a market consisting of "claimed" standards essential patents. That supposed market suffers from the same infirmities of over-breadth and lack of definition as the Electronics Patents Market. In particular, Apple fails to identify any substitute technologies considered at the time the standard was adopted, a legal prerequisite to pleading their purported claim. Moreover, that market is only relevant to Apple's unfair competition claim (Count 4).

   ***No Antitrust Injury.*** To state an antitrust claim, Plaintiffs must allege facts showing that they have suffered injury of the type the antitrust laws were intended to prevent, namely injuries resulting from harm to <u>competition</u>. Neither Apple nor Intel alleges that it has suffered this type of injury. For instance, there is no allegation that any of Defendants' supposed competitors in the "Electronic Patents Market" have been forced out of the market or that anyone has been prevented from entering the market and competing. Nor is there any allegation of price fixing, exclusive dealing, or other such recognized harms to competition. Instead, Plaintiffs make bald assertions of supposed injury to themselves in terms of allegedly "supracompetitive" license fees and litigation costs. However, while the Complaint vaguely refers to "supracompetitive licensing returns" (Cmplt. ¶ 160), it never identifies any such licenses or the parties to them, or what supposedly makes the returns "supracompetitive," or even alleges that Apple or Intel entered into any such license. Thus, Plaintiffs' purported antitrust injury boils down to the cost of Apple and Intel having to defend against patent infringement cases brought by some of the Defendants. *Id.* ¶¶ 2,

9, 31, 40, 88, 163, 176, 178, 181, 185, 191.  However, Plaintiffs allege that they are Defendants' "customers" (*id.* ¶ 170)—not Defendants' competitors—so allegedly driving up litigation costs of Plaintiffs fails to constitute antitrust injury as a matter of law.

**Noerr-Pennington.**  Defendants' patent infringement lawsuits that Plaintiffs ask this Court to prejudge as "meritless" (even while the vast majority of them are still pending) constitute First Amendment-protected petitioning activity.  The Complaint's conclusory assertions of purported "meritless" and "weak" patents fail as a matter of law to overcome that First Amendment protection.  *See* Motion to Dismiss and Strike at 24-30.  This fundamental failing infects Plaintiffs' Section 1 and UCL claims.

**Failure of Additional Elements.**  In addition to the failings noted above, Plaintiffs' claims fail for other reasons.  These include but are not limited to:  (i) the failure to allege required evidentiary facts of an agreement to unreasonably restrain trade (Sherman Act Section 1 Claim), as all the Complaint alleges are garden variety lending and investment transactions and with no factual allegations of any intent to harm competition; (ii) the failure to allege any basis for concluding that the mere acquisition of patents poses an antitrust problem, as patents provide a lawful monopoly, and their acquisition is expressly permitted (Clayton Section 7 Claim); (iii)  the failure to allege any claims against Seven Networks and IXI IP within the applicable limitations period; and (iv) the state law claims are barred by California's litigation privilege (Cal. Civ. Code § 47), as they attack protected petitioning conduct—namely, the filing of litigation and associated licensing demands.  All of these and other failings are discussed more fully in Defendants' pending Motion to Dismiss and Strike.

**Failures As To DSS**.  The Complaint's allegations concerning DSS fail for two additional reasons.  First, they were released by a settlement between Intel and DSS that resolved the only underlying litigation involving DSS identified in the Complaint.  Second, based on the Complaint's own allegations, the statute of limitations bars all claims against DSS because they are based on 2014 and early 2015 events.  These failings are discussed further in DSS's Supplemental Brief in support of the Motion To Dismiss and Strike (Dkt. 114).

Defendants do not believe the case should proceed as explained in their pending Motion to Dismiss and Strike.  However, if the case did proceed, Defendants anticipate that the following disputed points of law, among others, could arise:

- Whether certain Defendants' alleged conduct constitutes an unlawful contract, combination, or conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

- Whether certain Defendants' acquisitions of patents violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

- Whether certain Defendants' alleged conduct constitutes unfair methods of competition in violation of the California Unfair Competition Law, Cal. Bus. Prof. Code § 17200, *et seq.*;

- Whether Plaintiffs have suffered cognizable antitrust or other injury;

- Whether Plaintiffs are entitled to statutory damages, costs, attorneys' fees, pre- and post-judgment interest, declaratory relief, equitable relief, and any other relief.;

- All other issues raised in the Motion to Dismiss and Strike.

## 3. Motions

On February 4, 2020, Defendants filed a joint motion to dismiss and strike the Complaint and a request for judicial notice in connection with that motion.  Defendant DSS filed a supplemental motion to dismiss and strike and a request for judicial notice in connection with that supplemental motion.  On March 19, 2020, Intel and Apple filed their oppositions.  On April 13, 2020, Defendants filed their reply briefs.  A hearing on Defendants' motions is scheduled for June 18, 2020.

On February 4, 2020, Defendants also filed a motion to stay discovery pending a ruling on Defendants' motion to dismiss and strike.  On March 19, 2020, Intel and Apple filed their statement of non-opposition to the motion to stay.  On March 25, 2020, the Court granted Defendants' motion to stay discovery pending a ruling on Defendants' motion to dismiss and strike.  Dkt. No. 158.

Other motions may be filed as the case progresses, and the parties reserve the right to address the same.

1

### a.   Plaintiffs' Statement

2   Apple and Intel may file motions for summary judgment on one or more claims or issues at

3   the appropriate time.

4

### b.   Defendants' Statement

5   Defendants reserve the right to file additional motions if the case progresses, including but

6   not limited to summary judgment motions.

7

### 4.   Amendment of Pleadings

8

### a.      Plaintiffs' Statement

9   Apple and Intel propose that they may amend their pleadings without leave until

10   November 20, 2020.  Plaintiffs disagree with Defendants' statement below.  Intel's voluntary

11   dismissal pursuant to Rule 41(a) of a separate lawsuit has no bearing on whether Plaintiffs should

12   be permitted to amend their pleadings in this action.

13

### b.      Defendants' Statement

14   Defendants believe that discussion of amendments is premature given that the Motion to

15   Dismiss and Strike is still pending.  Moreover, Plaintiffs' deadline to amend as a matter of course

16   has passed.  Plaintiffs made the strategic decision not to amend to attempt to address the

17   deficiencies in the Complaint identified by Defendants' Motion to Dismiss and Strike.  In

18   addition, Intel filed a very similar complaint against several of the Defendants, only to dismiss it

19   and refile the Complaint in this action the same day.  *Compare* Dkt. No. 1 *with Intel Corporation*

20   *v. Fortress Investment Group LLC et al.*, No. 3:19-cv-06856-EJD, Dkt. No. 35.  Consequently,

21   Defendants believe that, should the Court address the issue of the deadline to amend the pleadings,

22   Plaintiffs should have no further right to amend the Complaint without leave of Court.  Should

23   Plaintiffs later seek to amend, Plaintiffs must demonstrate why any proposed amendment would

24   not be futile given their failure to articulate cognizable claims.

25

### 5.   Evidence Preservation

26   Plaintiffs and Defendants certify that they have reviewed the Guidelines Relating to the

27   Discovery of Electronically Stored Information, and confirm that the parties have met and

28   conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to

preserve evidence relevant to the issues reasonably evident in this action.  The parties anticipate that they will submit an ESI Stipulation setting forth their agreements with respect to the discovery of ESI in this action.

**6.   Disclosures**

### i.       Plaintiffs' Statement

Plaintiffs are prepared to exchange Rule 26(a)(1) disclosures on June 11, the same day as the filing of the Joint Case Management Statement.  In light of the Court's order staying discovery pending a ruling on Defendants' motion to dismiss and strike (ECF No. 158), however, Plaintiffs agree that initial disclosures do not need to be exchanged at this time.  The Court's Order staying discovery (ECF No. 158) ends when the Court rules on Defendants' pending motions, and Plaintiffs therefore propose that initial disclosures be exchanged within 14 days of the Court ruling on Defendants' motion to dismiss and strike, as set forth in the Court's March 25 Order.

### ii.      Defendants' Statement

Defendants believe that the exchange of initial disclosures is unnecessary at this time, given that Plaintiffs did not oppose Defendants' motion to stay and a full discovery stay has been entered by the Court.  Defendants also disagree with Plaintiffs' position that the Court's Order staying discovery (ECF No. 158) will necessarily end when the Court rules on Defendants' pending motions.  For example, if the Court grants those motions, Plaintiffs should not be permitted to take discovery and the stay should remain in effect including with respect to initial disclosures.  Defendants propose that initial disclosures should be exchanged 14 days after the Court's order affirmatively lifting the discovery stay issued on March 25, 2020 (ECF No. 158), if and when that occurs.

**7.   Discovery**

**a.     Discovery Taken to Date**

### i.       Plaintiffs' Statement

Discovery is currently stayed, and neither party has sought discovery to date.  Plaintiffs believe there is no need to phase discovery and Defendants have articulated no reason why they believe it is necessary to phase discovery.

### ii.   **Defendants' Statement**

Defendants do not agree that there is no need to phase discovery.  Because discovery is currently stayed while Defendants' Motion to Dismiss and Strike is pending, any discussion of phasing discovery is premature.  If necessary, Defendants will meet and confer with Plaintiffs about phasing discovery if and when the stay is lifted.

### b.   **Scope of Discovery**

### i.   **Plaintiffs' Statement**

Intel and Apple expect that substantial discovery will be necessary in this case, in part because of the number of purportedly separate entities owned or controlled by Fortress.  Intel and Apple intend to pursue discovery relating to the factual and legal issues set forth herein and in their Complaint, including any amendments thereto. As discussed above, Intel and Apple are challenging the Defendants' anticompetitive scheme of acquiring a massive portfolio of patents (including substitute and complementary patents) that purportedly read on electronic devices and components or software therein and processes used to manufacture them, and then using their aggregated portfolio for serial assertions to obtain patent royalties greatly exceeding the value of the alleged inventive contributions of and competitive prices for the patents.

Among other things, Intel and Apple will need discovery from Defendants and third parties relating to the (1) patents transferred to the Defendants; (2) the terms of those transfers and agreements relating to those transfers; (3) the Defendants' respective patent enforcement strategies; (4) licenses, settlement agreements, covenants not to sue, and any other agreements under which Defendants have granted or received any rights relating to any of the patents asserted in the litigations identified in the complaint or any other litigation where Defendants have asserted patents in which Fortress has an economic, financial, or ownership interest or an agreement with the Defendant with respect to those patents ("Fortress-backed patents"); (5) offers to license or settle or otherwise grant or receive any rights relating to any Fortress-backed patents; (6) agreements to acquire or sell any rights relating to any of the Fortress-backed patents; (7) agreements (a) between any of the Fortress entities and any of the other Defendants or (b) that otherwise show the relationship(s) between one or more of the Fortress entities and any of the

other Defendants; (8) communications between Defendants relating to any of the above categories; (9) the Defendants' rationales and motivations for the conduct; (10) documents sufficient to show funding arrangements for the assertion (either by litigation or in a pre-litigation demand) of Fortress-backed patents; (11) the Defendants' FRAND obligations; and (12) the costs that Defendants have imposed on third parties.

### ii.   Defendants' Statement

Defendants believe that the appropriate scope of discovery, if any, should be determined after the Court rules on the pending Motions to Dismiss and Strike, as the parties cannot determine what amount of discovery will be necessary given that it is unknown what claims or parties (if any) may remain after the Court rules on the Motions.

### c.   Modifications to Discovery

### i.   Plaintiffs' Statement

Based on the expected scope of discovery, Plaintiffs propose the following:

*Requests for Production*

Unlimited

*Interrogatories*

Apple and Intel may collectively serve 50 interrogatories on each Defendant.  Defendants may collectively serve 50 interrogatories on Apple and 50 interrogatories on Intel.

*Requests for Admission*

Unlimited

*Party Depositions*

Apple and Intel shall collectively have 185 hours of total fact deposition time of the Defendants collectively (not counting expert depositions) to take the depositions of Defendants' witnesses, including corporate depositions under Fed. R. Civ. P. 30(b)(6) depositions.  Defendants shall collectively have 70 hours of total fact deposition time of Apple and Intel collectively (not counting expert depositions) to take the depositions of Apple's and Intel's witnesses, including corporate depositions under Fed. R. Civ. P. 30(b)(6) depositions.

Each deposition shall be governed by the one-day, seven-hour limit of Fed. R. Civ. P. 30(d)(1), with each deposition counting at least 3.5 hours.  The deposition of any single individual designated as a corporate witness to testify regarding a deposition topic contained in a deposition notice served under Fed. R. Civ. P. 30(b)(6) is presumptively limited to seven hours of deposition testimony for that individual, with each deposition counting at least 3.5 hours.  However, if an individual Fed. R. Civ. P. 30(b)(6) corporate witness is designated by the offering party on multiple unrelated topics, the deposing party may request a reasonable number of additional deposition hours, and the offering party shall not unreasonably deny the request.

*Non-Party Depositions*

No limitation, but each party reserves any right it has to object to non-party discovery.

*Response to Defendants' Statement*

Contrary to Defendants' insinuations, to the extent Plaintiffs' deposition time proposals are disproportionate, it is in favor of Defendants. There are **eleven** defendants and only **two** plaintiffs. Plaintiffs' proposal permits Defendants to take an average of 35 hours of deposition time per Plaintiff while permitting Plaintiffs only an average of 16.8 hours deposition time per Defendant. Defendants are also simply incorrect that they would be limited under Plaintiffs' proposal to only 10 depositions – to the extent they opted to take depositions that lasted less than 7 hours they would be permitted more than 10 depositions.  Plaintiffs respectfully submit that imposing a limit on the number of deposition hours rather than the total number of depositions will encourage each side to take depositions that are no longer than necessary while allowing each side the discovery that it needs.  To the extent Defendants are arguing that each side should be permitted no more than 10 depositions total, this would be extremely prejudicial to Plaintiffs as they would not be able to take even a single deposition of every Defendant.

**ii.    Defendants' Statement**

Defendants disagree with Plaintiffs' enhanced limits to discovery and believe it is premature to discuss modifications of the discovery rules while discovery is stayed pending Defendants' Motion to Dismiss and Strike.  The parties cannot determine what amount of discovery will be necessary given that it is unknown what claims or parties (if any) may remain

after the Court rules on the pending Motion to Dismiss and Strike.  Moreover, Plaintiffs' proposals are disproportionate—*e.g.*, 185 hours of fact deposition time of the Defendants versus 70 hours of fact deposition time of the Plaintiffs.  Under this proposal, Defendants would only be allowed to take the 10 depositions provided under the default rule, Fed. R. Civ. P. 30(a)(2)(A)(i),  whereas Plaintiffs would get to take more than two-and-half times that amount.  And the fact that Plaintiffs' proposal permits more deposition time per Plaintiff than per Defendant is irrelevant given that Plaintiffs are much larger companies who have far more employees than Defendants.

Defendants also disagree that Plaintiffs' proposal to allocate party depositions by a total number of hours, as opposed to a total number of depositions as assumed in Rule 30, is reasonable or appropriate.  Under this proposal, Plaintiffs would be able to notice and take scores of short depositions, imposing significant burdens of preparation on Defendants and their counsel. Defendants do not believe the Court should vary from the approach found in Rule 26(b)(2) and Rule 30, in which the limit on the number of depositions is based on the deponents, not hours.

Defendants propose that the parties meet and confer over the scope of discovery once the Motion to Dismiss and Strike has been decided.

### d.    Discovery of ESI

If and when the discovery stay is lifted, the parties intend to discuss and enter into an ESI stipulation addressing preservation, collection, and production of ESI.

### e.    Protective Order

If and when the discovery stay is lifted, the parties intend to negotiate the scope of a protective order to govern this action.

### f.    Discovery Disputes

None at this time.

### g.    Service

The parties agree that, to the extent possible in light of the volume of the submission, all court filings, discovery, and documents to be served on opposing counsel, to the extent not served through ECF (namely, filings under seal), will be served via email, or if too voluminous, by FTP

1  or other internet file service, on each of the other parties, and such service shall constitute proper

2  service under Fed. R. Civ. P. 5(b)(2)(E).

3      **h.    Privilege Logs/Privileged Information**

4          **i.    <u>Plaintiffs' Statement</u>**

5      The parties are not required to include on their privilege logs any: (1) attorney-client

6  communications and/or work product regarding prosecution or defense of any of the patent

7  litigations mentioned in the Complaint or any future patent litigations among any of the parties to

8  this action after each such suit was or is filed; or (2) attorney-client communications and/or work

9  product regarding the underlying litigation, including any protected documents that reflect

10  communications between counsel and their respective clients, or work-product documents that

11  reflect work of counsel that were created in anticipation of this litigation, even if created before

12  the filing date of the Complaint.  For clarity, the foregoing does not exempt from privilege logging

13  obligations documents that relate to (a) transfer of rights in or licensing of (or potential transfer of

14  rights in or potential licensing of) any patent, (b) the relationships between or among the parties,

15  or (c) anything relating to formation of the parties, even if such documents have some connection

16  to the patent litigations in (1).

17      It is not premature to discuss privilege logging at this time.  The scope of the case is

18  unlikely to materially affect the type of responsive privileged material that may be at issue in this

19  case.

20          **ii.    <u>Defendants' Statement</u>**

21      Defendants believe it is premature to discuss privilege logging until the scope of the case

22  (if any) is determined by the Court's ruling on the Motion to Dismiss and Strike.

23  **8.  Class Actions**

24      This is not a class action.

25  **9.  Related Cases**

26      **a.    <u>Plaintiffs' Statement</u>**

27      As Defendants acknowledge, there are no related cases.  Intel did not file a motion to relate

28  the instant action to *Intel Corporation v. Fortress Investment Group LLC, et al.*, No. 5:19-cv-

06856-EJD (N.D. Cal.) ("-6856 Action").  Intel filed an "Administrative Motion to Consider Whether Cases Should Be Related so that the Court may consider whether this case is related to" the -6856 Action.  Dkt. No. 7 at 1.  As Defendants note, Judge Davila found the instant case and -6856 Action were not related.  Dkt. No. 47.

> **b.    Defendants' Statement**

Defendants are not aware of any related cases as defined under the local rules, but highlight for the Court two instances in which various parties filed administrative motions to consider whether the present case (and Intel's substantially similar prior antitrust case) were related to other actions.  First, Intel filed an administrative motion to consider whether the instant action was related to Intel's nearly identical prior (and now voluntarily dismissed) antitrust suit against Defendants Fortress, Fortress Credit, VLSI, and DSS before Judge Davila.  *See Intel Corporation v. Fortress Investment Group LLC et al.*, No. 3:19-cv-06856-EJD (filed October 21, 2019).  Intel's prior antitrust suit asserted a Sherman Act Section 1 claim, a Sherman Act Section 2 monopolization claim, a Clayton Act Section 7 unlawful acquisition claim, and a California unfair competition law claim premised largely on the same alleged conduct by the same entities in the instant action.  Intel voluntarily dismissed the suit on November 20, 2019, and refiled the present action on the very same day—dropping the monopolization claim, adding Apple as a plaintiff, and naming seven additional Defendants (all of which were mentioned in the prior antitrust suit by way of virtually identical allegations).  Defendants Fortress, Fortress Credit, and VLSI filed a response in support of Intel's administrative motion.  *Id.*, Dkt. No. 38.  Judge Davila denied Intel's motion.  *Id.*, Dkt. No. 39.

Second, in Intel's prior antitrust action, Defendants Fortress, Fortress Credit, and VLSI filed an administrative motion to relate that action to VLSI's patent infringement suit against Intel in this District, *VLSI Technology LLC. v. Intel Corp.*, Case No. 5:17-CV-05671-BLF, noting that the merits of the patent infringement suit bore upon Intel's prior action.  *See id.*, Dkt. No. 266.  Intel opposed the motion and argued that the legal issues were entirely distinct and that the antitrust claims "do not hinge on the merits outcome of the present action."  *See id.*, Dkt. No. 269 at 2:26-27.  Judge Freeman denied the administrative motion.  *See id.* Dkt. No. 270.

**10. Relief**

Plaintiffs' Complaint contains the following requests for relief:

a. That Defendants' unlawful conduct be declared a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; Section 7 of the Clayton Act, 15 U.S.C. § 18; and Cal. Bus. Prov. Code § 17200, et seq.;

b. That Intel and Apple recover damages against Defendants in an amount to be determined and multiplied to the extent provided by law, including under Section 4 of the Clayton Act;

c. That all contracts or agreements Defendants entered into in violation of the Sherman Act, Clayton Act, or Cal. Bus. Prov. Code § 17200, et seq. be declared void and the patents covered by those transfer agreements be transferred back to the transferors;

d. That all patents transferred to Defendants in violation of the Sherman Act, Clayton Act, or Cal. Bus. Prov. Code § 17200, et seq. be declared unenforceable;

e. Award Plaintiffs' injunctive relief under Section 7 of the Clayton Act, 15 U.S.C. § 18;

f. Award Plaintiffs' injunctive relief for their Unfair Competition Law Claim;

g. Award to Intel and Apple their costs and expenses associated with this case, together with interest; and

h. Grant such other and further relief as the Court may deem just and proper under the circumstances.

**a.  Defendants' Statement**

Defendants oppose all forms of relief sought by Plaintiffs and contend that Plaintiffs' claims lack merit and that they are therefore not entitled to any damages.  Specifically, Plaintiffs are not entitled to any relief because the Complaint fails to state any claims under Federal Rule of Civil Procedure 12(b)(6).  Defendants also seek attorneys' fees and costs pursuant to California's Anti-SLAPP statute for all fees and costs incurred in connection with Defendants' Motion to Dismiss and Strike.

1  If any portion of the Complaint survives Defendants' Motion to Dismiss and Strike,

2  Defendants reserve the right to assert counterclaims and cross claims, and Defendants may seek to

3  recover attorneys' fees and costs expended in the defense of this matter (in addition to those being

4  sought pursuant to California's Anti-SLAPP statute).

5  **12. Settlement and ADR**

6  The parties propose private mediation before a mediator to be agreed to by the parties at a

7  later date.

8  **13. Consent to Magistrate Judge For All Purposes**

9  The parties do not consent to having a magistrate judge conduct all further proceeding

10 including trial and summary judgment.

11 **14. Other References**

12 The parties do not believe this case is suitable for reference to binding arbitration, a special

13 master, or the Judicial Panel on Multidistrict Litigation.

14 **15. Narrowing of Issues**

15 a.  **Plaintiffs' Statement**

16 At this time, Plaintiffs are unaware of any issues that may be narrowed by agreement or by

17 motion.

18 b.  **Defendants' Statement**

19 Defendants respectfully submit that it is premature to consider an agreement to narrow issues

20 for trial or to expedite the presentation of evidence at trial.  Plaintiffs' claims can be dismissed

21 entirely, as set forth in Defendants' Motion to Dismiss and Strike.

22 **16. Expedited Trial Procedure**

23 This is not the type of case that can be handled under the Expedited Trial Procedure of

24 General Order No. 64 Attachment A.

25 **17. Scheduling**

26 a.  **Plaintiffs' Statement**

27 Plaintiffs respectfully request that the Court set a schedule consistent with this Court's

28 Guidelines re Calculation of Trial Time Line:

| **Event** | **Deadline** |
|---|---|
| Case Management Conference | June 18, 2020 |
| Hearing on Motion to Strike | June 18, 2020 |
| Amendment of Pleadings | November 20, 2020 |
| Fact Discovery Deadline | December 17, 2020 |
| Designation of Opening Experts with Reports | December 17, 2020 |
| Designation of Rebuttal Experts with Reports | January 14, 2021 |
| Expert Discovery Deadline | February 11, 2021 |
| Deadline for Filing Dispositive Motions | February 11, 2021 |
| Hearing on Dispositive Motions | March 18, 2021 |
| Joint Pretrial Conference Statement and Trial Briefs | May 4, 2021 |
| Objections | May 14, 2021 |
| Pre-Trial Conference | May 25, 2021 |
| Trial Date | June 21, 2021 |

To the extent the Court agrees with Defendants that a case schedule should be delayed until the Court rules on Defendants' pending motions to Dismiss and Strike, Plaintiffs respectfully suggest that the Court should set trial for approximately one year from the Court's ruling. Defendants' proposed schedule is inconsistent with this Court's Guidelines.

**b.   Defendants' Statement**

Because the scope of this case depends on what claims (if any) can survive Defendants' pending Motions to Dismiss and Strike, Defendants believe that the Court should defer setting a case schedule until those motions have been decided.

In the alternative, Defendants propose the case schedule set forth below.  The proposed schedule includes a trial date that is appropriate for this complex, multi-party antitrust action, and

is also consistent with the timeline that the Court recently approved in another complex antitrust case, *Staley et al. v. Gilead Sciences, Inc. et al*, 3:19-cv-02573-EMC, Dkt. No. 342.

| **Event** | **Deadline** |
|---|---|
| Initial disclosures and start of fact discovery | 30 days after Court's whole or partial denial of Defendants' motions to dismiss |
| Close of fact discovery | 470 days after start of fact discovery |
| Last day for parties to designate experts and issue expert reports | 90 days after close of fact discovery |
| Rebuttal expert reports | 60 days after issuance of expert reports |
| Reply expert reports | 45 days after issuance of rebuttal expert reports |
| Close of expert discovery | 60 days after issuance of reply expert reports |
| Last day for parties to file dispositive pre-trial motions and objections to experts (i.e., *Daubert* and similar motions) | 60 days after close of expert discovery |
| Joint Pretrial Conference Statement and Trial Briefs | 40 days after decision on summary judgment or as determined by the Court |
| Objections | 50 days after decision on summary judgment or as determined by the Court |
| Pretrial conference | 60 days after decision on summary judgment or as determined by the Court |
| Trial | 105 days after decision on summary judgment or as determined by the Court |

**18. Trial**

    **a.**   **Plaintiffs' Statement**

Apple and Intel have demanded a jury trial for their claims, and expect that a 15-day trial may be required.

**b.** **Defendants' Statement**

Defendants respectfully submit that it is premature to estimate an expected length of trial at this time.

**19. Disclosure of Non-Party Interested Entities or Persons**

The parties have filed Certifications of Interested Persons or Entities pursuant to Civil Local Rule 3-16.

**20. Professional Conduct**

All attorneys of record have reviewed the Guidelines for Profession Conduct for the Northern District of California.

Dated: June 11, 2020

Respectfully submitted,

By: */s/ Mark D. Selwyn*
Mark D. Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Pal Alto, CA  94304
Telephone: (650) 858-6000
Fax: (650) 585-6100

William F. Lee (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
Joseph J. Mueller (*pro hac vice*)
joseph.mueller@wilmerhale.com
Timothy D. Syrett (*pro hac vice*)
timothy.syrett@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

WILMER CUTLER PICKERING
  HALE AND DORR LLP
Leon G. Greenfield (*pro hac vice*)
leon.greenfield@wilmerhale.com
Amanda L. Major (*pro hac vice*)
amanda.major@wilmerhale.com
1875 Pennsylvania Avenue N.W.
Washington, DC 20006
Telephone: (202) 663-6000
Fax: (202) 663-6363

*Attorneys for Plaintiffs*
INTEL CORPORATION and APPLE INC.

By: */s/ A. Matthew Ashley*
A. Matthew Ashley
*Counsel for Defendants*
FORTRESS INVESTMENT GROUP LLC,
FORTRESS CREDIT CO. LLC,
VLSI TECHNOLOGY LLC

*/s/ Martin Flumenbaum*
Martin Flumenbaum (*pro hac vice*)
mflumenbaum@paulweiss.com

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  212-373-3191
Facsimile:  212-492-0191
*Counsel for Defendants*
FORTRESS INVESTMENT GROUP LLC, FORTRESS CREDIT CO. LLC


*/s/ Christopher A. Seidl*
Christopher A. Seidl (*pro hac vice*)
CSeidl@RobinsKaplan.com
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone:  612 349 8468
Facsimile:  612 339-4181
*Counsel for Defendants*
INVT SPE LLC
INVENTERGY GLOBAL, INC.


*/s/ Nathaniel Lipanovich*
Nathaniel Lipanovich (Bar No. 292283)
nlipanovich@thoits.com
THOITS LAW
400 Main Street, Suite 250
Los Altos, CA 94022
Telephone: 650 327-4200
Facsimile:  650-325-5572
*Counsel for Defendant*
DSS TECHNOLOGY MANAGEMENT, INC.


*/s/ Jason D.* Cassady
Jason D. Cassady (*pro hac vice*)
jcassady@caldwellcc.com
CALDWELL CASSADY & CURRY
2121 N. Pearl Street, Suite 1200
Dallas, TX 75201
Telephone: 214 888-4841
Facsimile:  214-888-4849
*Counsel for Defendant*
IXI IP, LLC


*/s/ James J. Foster*
James J. Foster
jfoster@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Telephone:  617 456-8022

Facsimile:  617 456-8100
*Counsel for Defendant*
UNILOC 2017 LLC

*/s/ Daniel. R. Shulman*
Daniel R. Shulman (*pro hac vice*)
daniel.shulman@lathropgpm.com
Dean C. Eyler (*pro hac vice*)
dean.eyler@lathropgpm.com
LATHROP GPM LLP
500 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612 632-3335
Facsimile: 612 632-4000
*Counsel for Defendants*
UNILOC LUXEMBOURG S.A.R.L.
UNILOC USA, INC

*/s/ Samuel F.* Baxter
Samuel F. Baxter (*pro hac vice*)
sbaxter@mckoolsmith.com
John Briody (*pro hac vice*)
jbriody@mckoolsmith.com
MCKOOL SMITH
104 East Houston, Suite 100
Marshall, TX 75670
Telephone:  903 923-9001
Facsimile:  903 923-9099

One Manhattan West
395 9th Avenue, 50th Floor
New York, NY 10001-8603
Telephone: 212.402.9438
*Counsel for DefendantCounsel for Defendant*
SEVEN NETWORKS, LLC

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that I caused the foregoing document entitled Joint Case Management

3

Statement to be filed via the court's CM/ECF system, which shall send notice to the counsel of

4

record for the parties.

5

6

Dated: June 11, 2020                              Respectfully submitted,

7

8

By: _/s/ Mark D. Selwyn_____

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28