1 | IRELL & MANELLA LLP
Morgan Chu (SBN 70446)
2 | Benjamin W. Hattenbach (SBN 186455)
Michael D. Harbour (SBN 298185)
3 | 1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
4 | Telephone:     (310) 277-1010
Facsimile:     (310) 203-7199
5 | Email:  mchu@irell.com
Email:  bhattenbach@irell.com
6 | Email:  mharbour@irell.com

7 | A. Matthew Ashley (SBN 198235)
Olivia L. Weber (SBN 319918)
8 | 840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
9 | Telephone:     (949) 760-0991
Facsimile:     (949) 760-5200
10 | Email:  mashley@irell.com
Email:  oweber@irell.com

11 |

12 | *Counsel for Defendants*
FORTRESS INVESTMENT GROUP LLC,
FORTRESS CREDIT CO. LLC,
13 | VLSI TECHNOLOGY LLC

14 | Additional counsel listed on signature page

15 | **UNITED STATES DISTRICT COURT**

16 | **NORTHERN DISTRICT OF CALIFORNIA**

17 | INTEL CORPORATION and APPLE INC., | Case No. 3:19-cv-07651-EMC

18 | Plaintiffs,

19 | v. | **DEFENDANTS' JOINT CONSOLIDATED RESPONSE TO BRIEFS OF *AMICUS CURIAE***

20 | FORTRESS INVESTMENT GROUP LLC,
FORTRESS CREDIT CO. LLC, UNILOC | Hon. Edward M. Chen
21 | 2017 LLC, UNILOC USA, INC., UNILOC
LUXEMBOURG S.A.R.L., VLSI | Date:     December 17, 2020
22 | TECHNOLOGY LLC, INVT SPE LLC, | Time:     1:30 p.m.
INVENTERGY GLOBAL, INC., IXI IP, LLC, | Dept.:     Courtroom 5
23 | and SEVEN NETWORKS, LLC,

24 | Defendants.

25 |

26 |

27 |

28 |

10891467

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    PLAINTIFFS' AFFILIATIONS WITH AMICI HIGHLIGHT THAT THE AMICUS
       BRIEFS SHOULD BE TREATED WITH SKEPTICISM ................................ 1

III.   THE ARGUMENTS MADE BY AMICI ARE IRRELEVANT AND FLAWED ........... 2

       A.    The App Association ................................................................... 2

       B.    Unified Patents ........................................................................... 4

       C.    Fair Standards Alliance .............................................................. 5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................5

*Fed. Trade Comm'n v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) .......................................................... *passim*

*Funbus Sys., Inc. v. Cal. Pub. Utils. Comm'n*,
    801 F.2d 1120 (9th Cir. 1986) ...............................................................2

*Hartford Fire Ins. Co. v. Expeditors Int'l of Washington, Inc.*,
    No. 10 Civ. 5643(KBF), 2012 WL 6200958 (S.D.N.Y. Dec. 11, 2012) ....................1

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ............................................................4, 5

*New England Patriots Football Club, Inc. v. University of Colorado*,
    592 F.2d 1196 (1st Cir.1979) ................................................................2

*NGV Gaming, Ltd. v. Upstream Point Molate*,
    LLC, 355 F. Supp. 2d 1061 (N.D. Cal. 2005) ...........................................4

*Ryan v. Commodity Futures Trading Comm'n*,
    125 F.3d 1062 (7th Cir. 1997) ...............................................................1

*Sulitzer, et al. v. Tippins, et al.*,
    Case No. 2:19-cv-08902-GW-(MAAx) (C.D. Cal. March 19, 2020), Dkt. 36 ..........6

*Ward v. Wells Fargo Home Mortg.*,
    No. 14-CV-00887-JCS, 2014 WL 1922082 (N.D. Cal. May 6, 2014) .....................3

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................1, 3

**Other Authorities**

4 Am. Jur. 2d Amicus Curiae § 8 ...........................................................4

App Association, *Sponsors, available at* https://actonline.org/about/ ..............1

Fair Standards Alliance, *Members, available at* https://fair-standards.org/members/ .....................1

## I. INTRODUCTION

In accordance with the Court's order, Dkt. 212, Defendants submit this consolidated response to the amicus briefs filed by the following parties: (1) ACT | The App Association (the "App Association"), Dkt. 205-1; (2) Unified Patents, LLC and CableLabs (collectively, "Unified Patents,"), Dkt. 211-1; and (3) the Fair Standards Alliance ("FSA"), Dkt. 209-1.

For the reasons set forth below, none of the amicus briefs provides any basis for denying Defendants' Joint Motion to Dismiss and Strike Plaintiffs' Amended Complaint ("Motion"). Significant portions of these briefs consist of policy arguments about the supposed infirmities of the patent system and generalized attacks against PAEs that have nothing to do with whether the Amended Complaint ("AC") states a claim under Rule 12(b)(6). And when the amici do address the proper pleading of an antitrust claim, their arguments are either irrelevant, incorrect, and/or flatly ignore this Court's Order granting the motion to dismiss the Complaint ("Order," Dkt. 190) as well as the Ninth Circuit's recent holding in *Fed. Trade Comm'n v. Qualcomm Inc.,* 969 F.3d 974 (9th Cir. 2020). In sum, just as before, nothing in the amicus briefs rescues Plaintiffs' failure to plead any cognizable antitrust claims.

## II. PLAINTIFFS' AFFILIATIONS WITH AMICI HIGHLIGHT THAT THE AMICUS BRIEFS SHOULD BE TREATED WITH SKEPTICISM

As a threshold matter, the Court should give little weight to the amicus briefs given amici's affiliation with Apple and Intel. "The term 'amicus curiae' means friend of the court, not friend of a party." *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997); *see also Hartford Fire Ins. Co. v. Expeditors Int'l of Washington, Inc*., No. 10 Civ. 5643(KBF), 2012 WL 6200958, at *1, n.1 (S.D.N.Y. Dec. 11, 2012) (declining to consider argument of amici because of their "close relationship" to one of the parties). Here, Plaintiffs are members of signatories on each of the three amicus briefs. Both Apple and Intel are members of FSA and the App Association,[1] and Apple is a member of Unified Patents.[2]

---

[1] *See* Fair Standards Alliance, *Members*, *available at* https://fair-standards.org/members/; ACT | The App Association, *Sponsors*, *available at* https://actonline.org/about/.

[2] *See* Unified Patents Br. at 1:26.

1    While amici need not be "totally disinterested," they are not supposed to advance a "highly

2   partisan . . . account of the facts." *See Funbus Sys., Inc. v. Cal. Pub. Utils. Comm'n*, 801 F.2d

3   1120, 1124 (9th Cir. 1986) (quoting *New England Patriots Football Club, Inc. v. University of*

4   *Colorado*, 592 F.2d 1196, 1198 n. 3 (1st Cir.1979)).  Here, the amici are simply vehicles for

5   Plaintiffs and other big tech companies to advance their policy agendas, and much of their briefs

6   seek to attack and disparage Defendants' alleged business model.  To be sure, amici have every

7   right to advocate for their policy positions, but the place for such advocacy is the public square

8   and the halls of Congress, not in off-point briefs in opposition to a motion to dismiss an antitrust

9   case.

10   **III.    THE ARGUMENTS MADE BY AMICI ARE IRRELEVANT AND FLAWED**

11          **A.    The App Association**

12          The App Association's brief is nearly identical to the one that it filed previously.  Dkt. 131.

13   It does not address any of the issues raised in Defendants' Motion, nor does it discuss the

14   necessary elements of an antitrust claim, let alone whether these elements have been adequately

15   pleaded.  Indeed, the App Association's brief does not even discuss aggregation of substitute

16   patents at all.

17          Instead, the App Association spends a significant portion of its brief extolling the virtues of

18   the standard setting process and endorsing the Federal Trade Commission's (FTC) alleged view

19   that a breach of a FRAND commitment is a "competition law problem."  App Association Br. at

20   9:13-21.  The App Association, however, just ignores the Ninth Circuit's decision in *Qualcomm*,

21   which specifically rejected this position.  969 F.3d at 997 ("We therefore decline to hold that

22   Qualcomm's alleged breach of its SSO commitments to license its SEPs on FRAND terms . . .

23   amounted to anticompetitive conduct").  As the Ninth Circuit explained, and as Defendants

24   discuss in their Motion (Mot. at 38:27-29:12), the proper remedy for such alleged breaches lies in

25   contract and patent law, not antitrust law:

26          [W]hile antitrust policy has its place as a policy lever to enhance market
             competition, the rules of contract and patent law are better equipped to handle
27          commercial disputes between the world's most sophisticated companies about
             FRAND agreements.  Echoing this sentiment, a former FTC Commissioner, Joshua
28          Wright, argues that the antitrust laws are not well suited to govern contract disputes
             between private parties in light of remedies available under contract or patent law,

1
2

and that imposing antitrust remedies in pure contract disputes can have harmful effects in terms of dampening incentives to participate in standard-setting bodies and to commercialize innovation.

3   *Qualcomm*, 969 F.3d at 997 (internal citations and quotation marks omitted).  The App

4   Association not only ignores *Qualcomm*, it relies on inapposite authority that directly contradicts

5   *Qualcomm*'s binding holding.  App. Association Br. at 9, n.20.

6         The rest of the App Association's brief is just an attack on the United States patent system.

7   According to the App Association, so-called "abusers of the patent system" are able to prey on

8   "small companies," who "often do not have the resources or time to engage in lengthy and

9   expensive litigation [,] . . . banking on a quick settlement with little or no protest."  App

10  Association Br. at 4:9-16.  But even assuming that this policy-based concern has any merit, it has

11  nothing to do with the numerous pleading deficiencies Defendants demonstrate in their Motion

12  (*e.g.*, Plaintiffs' failure to plead a viable market, a cognizable antitrust injury, or a Sherman Act or

13  Clayton Act violation).  *See Ward v. Wells Fargo Home Mortg.*, No. 14-CV-00887-JCS, 2014 WL

14  1922082, at *9 (N.D. Cal. May 6, 2014) ("[P]olicy arguments are inapposite to the Court's task at

15  hand, which is to determine whether the claims made in the Complaint are legally sufficient to

16  survive the standard set forth in Rule 12(b)(6) of the Federal Rules of Civil Procedure.").  Neither

17  "small" nor "big" companies benefit from flawed federal court pleadings or from the improper

18  application of this nation's antitrust laws.

19        Moreover, the App Association's policy concerns have no application here in any event.

20  This case is not about "small companies."  Apple and Intel are two of the largest and most

21  powerful corporations in the world, and Apple and Intel do not allege in the AC and no amicus

22  alleges in its brief, that Defendants have ever brought abusive infringement claims against any

23  small companies.  Nor is this case about trying to extract "quick settlement[s]" (which would be a

24  dubious strategy against Intel and Apple given their extensive resources).  According to Plaintiffs'

25  AC, the underlying patent suits have involved protracted litigation with billions of dollars at stake.

26  *See, e.g.*, AC ¶¶ 96, 104, 177.  Notably, the App Association does not name a single "small

27  company" out of its 5,000 members that has supposedly been "abused" by any of the Defendants.

28  Thus, whatever the merits of the App Association's arguments about supposed abusive patent

1   assertions against small companies, they are simply irrelevant here.

2       **B.     Unified Patents**

3       Unified Patents spends the entirety of its brief arguing that the AC has pleaded sufficient

4   facts to demonstrate that Defendants' patents are "weak."  But as Defendants' Motion pointed out,

5   and Plaintiffs' Opposition does not dispute, the AC makes no allegations whatsoever regarding the

6   vast majority of the infringement suits that Defendants have brought against Plaintiffs.  Mot. at

7   7:8-12.  Moreover, Unified Patents (like Plaintiffs) does not dispute that Defendants have obtained

8   numerous favorable rulings in these infringement suits.  Mot. at 7:12-16; *see also id.* at n.6 (listing

9   favorable rulings).

10      Unified Patents asserts that Defendants' patents must be weak and part of a nefarious

11  antitrust conspiracy because otherwise the PAE defendants would have taken advantage of the

12  supposedly "robust market [] for patent litigation financing" rather than accepting allegedly

13  "severe" terms from Fortress.  Unified Patents Br. at 5:18, 5:21-22.

14      This is pure speculation.  A conspiracy allegation must be accompanied by "evidentiary

15  facts."  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).  Unified Patents points

16  to no evidentiary facts in the AC that there is a "robust market" for patent litigation financing, nor

17  is an amicus entitled to amend the factual allegations of the AC, which makes no mention of any

18  such market.  4 Am. Jur. 2d Amicus Curiae § 8 ("[T]he brief of an amicus curiae, or attachments

19  thereto, cannot be used as a vehicle . . . to raise new facts."); *see also NGV Gaming, Ltd. v.*

20  *Upstream Point Molate*, LLC, 355 F. Supp. 2d 1061, 1068 (N.D. Cal. 2005) ("[A]n amicus curiae

21  is not a party and has no control over the litigation and no right to . . . file any pleadings.").

22      The same holds true for Unified Patents' assertion that the litigation finance market "[did]

23  not want" the "PAE" Defendants' patents solely because the PAE Defendants never took

24  advantage of such financing.  Unified Patents Br. at 5:22.   That allegation is nowhere in the AC,

25  and to "infer" it is simply to speculate.  For example, it is equally possible that litigation financiers

26  made various offers to the "PAE" Defendants, but these offers were declined in favor of Fortress's

27  offer.  Likewise, the AC's allegation that Fortress imposes "severe" terms is both unsupported by

28  any allegations of evidentiary facts (or citation to or quotation of any term) and flatly contradicted

1    by other paragraphs of the AC which describes these same terms as "favorable." Mot at 33:1-7

2    (citing AC ¶ 50). Unified Patents simply ignores this, and its attempt to pile speculation on top of

3    speculation cannot save the AC. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual

4    allegations must be enough to raise a right to relief above the speculative level"); *Ashcroft v. Iqbal*,

5    556 U.S. 662 (2009) ("facial plausibility" requires "factual content" that permits "reasonable

6    inferences" of liability); *Kendall*, 518 F.3d at 1047 (antitrust conspiracy claims require

7    "evidentiary facts").

8         Regardless, Unified Patents' discussion of allegedly "weak" patents is ultimately a side

9    show. As this Court made clear in its Order, the key <u>antitrust</u> question is not whether Defendants

10   have aggregated "weak" patents, but whether they have aggregated so many substitute patents on a

11   specific technology that an alleged infringer is essentially deprived of substitutes. *See, e.g.*, Order

12   at 15-16 & n.6, 39:14-17. As Defendants' Motion demonstrated, Plaintiffs have failed to allege

13   that this is the case. Unified Patents' brief, however, hardly mentions "substitute" patents.

14   Instead, it asserts that Defendants have been able to acquire a "near-infinite supply of patents" that

15   supposedly enable them to bring serial "nuisance suits." Unified Patents Br. at 6:2-4, 7:22-26.

16   But this has nothing to do with whether the patents are "substitutes," nor is this case about

17   "nuisance" suits as explained above. Accordingly, Unified Patents' arguments are not only

18   baseless, they are irrelevant.

19        **C.    Fair Standards Alliance**

20        FSA's brief focuses on the standard-setting process and Defendants' supposed refusal to

21   license standard essential patents ("SEPs") on FRAND terms. FSA Br. at 2-5. It argues that

22   "[p]rivate standard setting and the antitrust laws lie at the heart of this case." FSA Br. at 2:13.

23   Actually, "private standard setting" is relevant only to Apple's UCL claim (Count 4).

24        In any event, while nearly the entirety of FSA's brief is dedicated to arguing that it is

25   "anticompetitive" not to license SEPs on FRAND terms, FSA barely even acknowledges, much

26   less attempts to distinguish, on-point Ninth Circuit authority holding that <u>an alleged breach of a</u>

27   <u>FRAND obligation does not sound in antitrust law</u>. *See Qualcomm*, 969 F.3d at 1005 ("To the

28   extent Qualcomm has breached any of its FRAND commitments . . . the remedy for such a breach

1    lies in contract and patent law.").[3]  FSA also contorts this Court's Order, arguing that "plaintiffs

2    may 'simply allege that Defendants *claim* to own SEPs instead of alleging that Defendants own or

3    control patents that actually are SEPs.'"  FSA Br. at 14:18-23 (quoting this Court's Order, at 18

4    n.3) (emphasis in original).  FSA omitted the words "<u>it is also questionable whether Apple can</u>"

5    that directly preceded FSA's quotation of this Court, Order at 18 n.13, and also omitted this

6    Court's recognition—in the same footnote as the quotation—that "there is a fair argument that

7    such conduct constitutes a breach of contract."  *Id.*  This Court's prior recognition of what is a fair

8    argument is now the law of this Circuit, which FSA simply ignores.[4]  And a party's mere "claim"

9    or "declaration" that it has an SEP cannot constitute harm to competition unless, among other

10   things, the party does in fact own an SEP.  While such declarations might bear on whether that

11   party breached a <u>contractual commitment</u> to license "declared" or "claimed" SEPs on FRAND

12   terms—that same "claim" or "declaration" does not create any anticompetitive "lock-in" effect.

13   *See, e.g.*, AC ¶ 395.  Only an <u>actual</u> SEP (not a "claimed" or "declared" SEP) could possibly "lock

14   in" a standard by excluding other available substitutes.

15          The remainder of FSA's brief improperly duplicates arguments that were made in

16   Plaintiffs' Opposition.  Consequently, in addition to being flawed for all of the reasons noted in

17   Defendants' concurrently-filed reply, FSA's brief is also an improper "attempt to have the Court

18   consider extra briefing beyond the limits allowed by this Court's Local Rules."  *Sulitzer, et al. v.*

19   *Tippins, et al.*, Case No. 2:19-cv-08902-GW-(MAAx) (C.D. Cal. March 19, 2020), Dkt. 36.  To

20   make matters worse, FSA's brief is largely dedicated to re-arguing the sufficiency of allegations

21   that this Court already rejected as insufficient as a matter of law.  For example, FSA claims that

22   the AC adequately pleads "direct evidence," but then cites the very same paragraphs offered in the

23

24          [3] Like Plaintiffs' Opposition, FSA's brief never points to any allegation of fact in the AC
     that identifies what, supposedly, is non-FRAND about any royalty in any license agreement
25   between Defendants and anyone referenced in the AC.

26          [4] It is hard to see how FSA could have overlooked the holding in *Qualcomm* given that
     FSA was an amici in that case as well, and the Ninth Circuit rejected FSA's position.  *See* Brief of
27   Amicus Curiae Fair Standards Alliance In Support Of The Federal Trade Commission And In
     Support Of Affirmance, *FTC v. Qualcomm*, 19-16122 (9th Cir. Nov. 29, 2019), Dkt.175 at 3
28   (arguing that "violations of the FRAND commitment . . . can, in addition to creating liability for
     breach of contract, also function to impede competition in violation of the antitrust laws.").

prior Complaint that the Court rejected as inadequate and "largely conclusory in nature."  Order at

15:21; *Compare* FSA Br. at 8 (citing AC ¶¶ 49-50) *with* Cmplt. ¶¶ 49-50.  Similarly, FSA argues

that the AC adequately alleges antitrust injury to Plaintiffs, FSA Br. at 14:6-13, yet it cites the

same allegations in the Complaint that the Court already rejected as failing to state a claim.

*Compare id.* (citing AC ¶¶ 96, 104, 437) *with* Dkt. 142-1 at 13:18-25 (citing Cmplt. ¶¶ 95, 102,

170).  Finally, FSA argues in favor of the purported propriety of Plaintiffs' "market" allegations,

but does so solely with FSA's ipse dixit and, if FSA had its way, this case would be proceeding

under the "Electronics Patents Market" this Court rejected as insufficient as a matter of law.  Dkt.

142-1 at 6:6-20 (claiming the Electronics Patents Market was a properly pleaded "cluster of

products," which Plaintiffs did not even contend).

Indeed, the only thing of consequence that FSA's brief provides is the recognition that,

even under a "direct evidence" theory, Plaintiffs' market analysis must "<u>show that the defendant</u>

<u>commands a substantial share of the market</u>."  FSA Br. at 6:21-22 (quoting Order at 13) (emphasis

added).  The AC makes no such showing, and Plaintiffs' Opposition does not argue to the contrary

(nor, for that matter, does FSA).  Consequently, FSA's "support" for denial of Defendants'

Motion to Dismiss actually illustrates why the Motion must be granted.

IV.     **CONCLUSION**

The arguments and assertions raised by amici are irrelevant, incorrect, and/or inconsistent

with Ninth Circuit authority and this Court's Order.  For all of the reasons stated in Defendants'

Motion and Reply, the AC should be dismissed.  Nothing in the amicus briefs demonstrates

otherwise.

Dated:  November 17, 2020                          Respectfully submitted,

                                                   IRELL & MANELLA LLP


                                                   By:*/s/ A. Matthew Ashley*
                                                   _____
                                                        A. Matthew Ashley
                                                        *Counsel for Defendants*
                                                        FORTRESS INVESTMENT GROUP LLC,
                                                        FORTRESS CREDIT CO. LLC,
                                                        VLSI TECHNOLOGY LLC

1

2
/s/ Christopher A. Seidl
Christopher A. Seidl (*pro hac vice*)

3
CSeidl@RobinsKaplan.com
ROBINS KAPLAN LLP

4
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402

5
Telephone:  612 349 8468
Facsimile:  612 339-4181

6
*Counsel for Defendants*
INVT SPE LLC

7
INVENTERGY GLOBAL, INC.

8

9
/s/ Jason D. Cassady
Jason D. Cassady (*pro hac vice*)

10
jcassady@caldwellcc.com
CALDWELL CASSADY & CURRY

11
2121 N. Pearl Street, Suite 1200
Dallas, TX 75201

12
Telephone: 214 888-4841
Facsimile:  214-888-4849

13
*Counsel for Defendant*
IXI IP, LLC

14

15
/s/ James J. Foster
James J. Foster

16
jfoster@princelobel.com
PRINCE LOBEL TYE LLP

17
One International Place, Suite 3700
Boston, MA 02110

18
Telephone:  617 456-8022
Facsimile:  617 456-8100

19
*Counsel for Defendant*
UNILOC 2017 LLC

20

21
/s/ Daniel. R. Shulman
Daniel R. Shulman (*pro hac vice*)

22
dan@shulmanbuske.com
SHULMAN & BUSKE PLLC

23
126 North Third Street, Suite 402
Minneapolis, MN 55401

24
Telephone: 612 870 7410
*Counsel for Defendants*

25
UNILOC LUXEMBOURG S.A.R.L.
UNILOC USA, INC

26

27
/s/ Dean C. Eyler
Dean C. Eyler (*pro hac vice*)

28
dean.eyler@lathropgpm.com
LATHROP GPM LLP
500 IDS Center

1   80 South 8th Street
    Minneapolis, MN 55402
2   Telephone: 612 632-3335
    Facsimile: 612 632-4000
3   *Counsel for Defendants*
    UNILOC LUXEMBOURG S.A.R.L.
4   UNILOC USA, INC

5

6   */s/ Samuel F. Baxter*
    Samuel F. Baxter (*pro hac vice*)
    sbaxter@mckoolsmith.com
7   John Briody (*pro hac vice*)
    jbriody@mckoolsmith.com
8   MCKOOL SMITH
    104 East Houston, Suite 100
9   Marshall, TX 75670
    Telephone:  903 923-9001
10  Facsimile:  903 923-9099
    One Manhattan West
11  395 9th Avenue, 50th Floor
    New York, NY 10001-8603
12  Telephone: 212.402.9438
    *Counsel for Defendant*
13  SEVEN NETWORKS, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 9 -

**<u>ECF ATTESTATION</u>**

1

2    I, Olivia Lauren Weber, am the ECF user whose ID and password are being used to file

3 DEFENDANTS' JOINT CONSOLIDATED RESPONSE TO BRIEFS OF AMICUS CURIAE.  I

4 hereby attest that I received authorization to insert the signatures indicated by a conformed

5 signature (/s/) within this e-filed document.

6

7

8                                    By: */s/   Olivia Lauren Weber*
                                         Olivia Lauren Weber
9