WILMER CUTLER PICKERING
  HALE AND DORR LLP
Mark D. Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Fax: (650) 858-6100

WILMER CUTLER PICKERING
  HALE AND DORR LLP
Leon B. Greenfield (*pro hac vice*)
leon.greenfield@wilmerhale.com
Amanda L. Major (*pro hac vice*)
amanda.major@wilmerhale.com
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Fax: (202) 663-6363

*Attorneys for Plaintiffs*
*Intel Corporation and Apple Inc.*

WILMER CUTLER PICKERING
  HALE AND DORR LLP
William F. Lee (*pro hac vice*)
william.lee@wilmerhale.com
Joseph J. Mueller (*pro hac vice*)
joseph.mueller@wilmerhale.com
Timothy D. Syrett (*pro hac vice*)
timothy.syrett@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Additional counsel listed on signature page

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| INTEL CORPORATION and APPLE INC., <br><br> Plaintiffs, <br><br> v. <br><br> FORTRESS INVESTMENT GROUP LLC, FORTRESS CREDIT CO. LLC, UNILOC 2017 LLC, UNILOC USA, INC., UNILOC LUXEMBOURG S.A.R.L., VLSI TECHNOLOGY LLC, INVT SPE LLC, INVENTERGY GLOBAL, INC., IXI IP, LLC, and SEVEN NETWORKS, LLC, <br><br> Defendants. | Case No. 3:19-cv-07651-EMC <br><br><br> **JOINT CASE MANAGEMENT STATEMENT** |

Pursuant to Civil Local Rule 16-9 and this Court's Standing Order, the parties submit this Joint Case Management Statement and Proposed Order.  Counsel for Intel Corporation ("Intel") and Apple Inc. ("Apple") (collectively, "Plaintiffs") and counsel for Fortress Investment Group LLC ("Fortress"), Fortress Credit Co. LLC ("Fortress Credit"), Uniloc 2017 LLC ("Uniloc 2017"), Uniloc USA, Inc. ("Uniloc USA"), Uniloc Luxembourg S.A.R.L. ("Uniloc Luxemborg"), VLSI Technology LLC ("VLSI"), INVT SPE LLC ("INVT"), Inventergy Global, Inc. ("Inventergy"), IXI IP, LLC ("IXI IP"), and Seven Networks, LLC ("Seven Networks") (collectively, "Defendants") met and conferred on January 27, 2020 and again on December 3, 2020.

## 1. Jurisdiction and Service

Plaintiffs contend that this Court has subject matter jurisdiction over their federal claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1337(a) (antitrust).  This Court has jurisdiction over the unfair competition claims arising under state law pursuant to 28 U.S.C. § 1367(a).  No issues exist regarding venue.  All named parties have been served, and there are no unresolved issues relating to service of process.

## 2. Facts and Legal Issues

### a. Plaintiffs' Statement

#### i. Facts

As set forth in their detailed Amended Complaint, Intel and Apple are challenging Defendants' anticompetitive scheme of acquiring a massive portfolio of patents (including substitute and complementary patents) that purportedly read on electronic devices and components or software therein and processes used to manufacture them, and then using their aggregated portfolio to obtain patent royalties greatly exceeding the value of the alleged inventive contributions of and competitive prices for the patents, including through serial, baseless assertions, if necessary.

In particular, Plaintiffs allege 13 exemplar markets based on discrete technologies for which Defendants have aggregated substitute patents, including the Network-based Voice

Messaging Patents Market, the Remote Software Updates Patents Market, the Mobile-to-Mobile Device Communication Patents Market, the Local Cache Management Patents Market, the Shared Memory Access Patents Market, the Device Authorization Patents Market, the Health Monitoring Patents Market, the MOSFET Channel Fabrication Patents Market, and the Digital Rights Management Patents Market (collectively, the "Relevant Patents Markets").

Plaintiffs also allege how the aggregation of patents in many of the Relevant Patents Markets has reduced competition and resulted in supracompetitive royalties. These include allegations about how the aggregation of patents under Fortress's control is designed to and does eliminate competition among the prior owners by putting substitute patents in the hands of patent assertion entities ("PAEs") that are commonly controlled and can charge supracompetitive royalties because they no longer compete against independent owners of those patents. For example, with the creation of VLSI, Fortress Investment Group has pursued a "Privateering Option" in which patents were transferred from an operating company to VLSI so that they could be asserted in litigation to attempt to obtain a windfall in royalties. Those patents include U.S. Patent No. 7,709,303, which has been aggregated with substitutes in the MOSFET Channel Fabrication Patents Market and U.S. Patent No. 8,020,014 (in the Local Cache Management Patents Market). After aggregation, VLSI has demanded $7.1 billion in damages from Intel in litigation based on infringement of those patents along with others. As another example, Uniloc entities have sued Apple in 25 infringement actions, without regard to the merits of the assertions. Those suits include litigation for patents in the Local Cache Management Patents Market. The prior owners of U.S. Patent Nos. 8,020,014 (Freescale), 7,523,331 (NXP B.V.), and 8,156,357 (Freescale, then NXP), now assigned to VLSI, never asserted these patents. Further, after VLSI aggregated patents in the Local Cache Management Patents Market, VLSI demanded billions in damages for a handful of patents in this market.

Intel and Apple allege that by aggregating a massive portfolio of patents, Defendants have changed the dynamics for determining whether to assert a patent and the targets' available options for addressing the assertions—with harmful impacts on competition. Intel and Apple further

2

allege that Defendants have targeted suppliers of high-tech consumer and enterprise electronic devices and components and software for those devices because they provide attractive targets for repeated and meritless patent assertions.  The scope of Defendants' aggregation and their focus on electronics patents enables them to exercise hold-up power by eliminating substitutes and artificially inflating the value of patents with little or no inventive value.  To further their anticompetitive scheme, Defendants have asserted waves of patent lawsuits against their targets without regard for the merits of their claims.  Rather than licensing and litigating based on the patent merits, Defendants exploit volume and repetition, targeting the resolve of the targets.  Given the number of patents that Defendants own or control, Defendants can serially bring weak patent claims against their targets with the threat of ever more patent assertions and ever more litigation.  Faced with this threat, many victims have agreed to settle, rather than to defend the assertions, for amounts that reflect not the alleged merits of the underlying patents but the anticompetitive effectiveness of Defendants' model.  Thus, through their aggregation, Defendants foreclose litigation as an economic alternative to licensing patents.

Through their conduct—as set out in more detail in the Amended Complaint—Defendants have harmed competition in the Relevant Patents Markets.  Fortress has market power in the Relevant Patents Markets based on the aggregation of substitute patents along with the number of patents that Fortress and its PAEs have aggregated and Fortress and its PAEs' methods of asserting those patents.  In particular, given the size of the portfolio, it is exceedingly difficult for any potential licensee to meaningfully analyze the patents in the portfolio in a systematic fashion.  Thus, the size of the aggregated portfolio imposes substantial costs for suppliers of electronic devices to design or work around, no matter the merits of the constituent patents.  Moreover, Fortress's PAEs assert their patents to read broadly on the accused products in ways that are facially invalid, but that Fortress's PAEs claim make it infeasible to design around.  In addition, the features of products accused of infringement by Fortress's PAEs may be difficult or impossible to modify because of the extremely high switching costs involved given the

investments that have already been made in product design and production.  The supracompetitive

licensing returns Fortress's PAEs have obtained are direct evidence of market power.

Intel and Apple challenge Defendants' conduct as (1) unlawful agreements to restrain

competition in patent licensing in violation of Section 1 of the Sherman Act; (2) unlawful asset

acquisitions in violation of Section 7 of the Clayton Act; (3) unfair methods of competition in

violation of Section 17200 of the Cal. Bus. & Prof. Code; and (4) (by Apple only) attempts to

evade their commitments to license their claimed standard-essential patents ("SEPs") for cellular

standards under fair, reasonable, and non-discriminatory ("FRAND") terms and conditions by

transferring these claimed SEPs among these Defendants, and by scheming to have the acquiring

parties demand non-FRAND royalties constitutes unfair methods of competition in violation of

Section 17200 of the Cal. Bus. & Prof. Code.

The factual issues to be decided include, but are not limited to:

- Whether Defendants entered agreements that unreasonably restrained trade and affected interstate or foreign commerce;

- Whether Defendants engaged in patent acquisitions that may substantially lessen competition;

- Whether Defendants' conduct has harmed competition in the licensing of patents for high-tech consumer and enterprise electronic devices and components or software therein and processes used to manufacture them and has also caused harm downstream in sales of electronics devices and components and software for those devices;

- Whether Fortress, Fortress Credit, Uniloc USA, Uniloc Luxembourg, Uniloc 2017, INVT, and Inventergy have evaded or attempted to evade commitments to license claimed SEPs for cellular standards under FRAND terms and conditions by demanding non-FRAND royalties for SEPs;

- Whether Fortress, Fortress Credit, Uniloc USA, Uniloc Luxembourg, Uniloc 2017, INVT, and Inventergy have harmed competition in the markets for the functionality for cellular standards that are claimed to be covered by their SEPs; and

- Whether Defendants' conduct has injured Apple and Intel, and if so, in what amount.

### ii.  Legal Issues

The legal issues to be decided include, but are not limited to:

- Whether Fortress, Fortress Credit, Uniloc USA, Uniloc Luxembourg, Inventergy, and IXI IP's conduct constitutes an unlawful contract, combination, or conspiracy agreements in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

- Whether Fortress, Fortress Credit, Uniloc 2017, VLSI, INVT, IXI IP, and Seven Networks' acquisitions of patents (or interests in patents) are unlawful asset transfers in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

- Whether Defendants' agreements and patent acquisitions constitute illegal and/or unfair methods of competition in violation of Section 17200 of the Cal. Bus. & Prof. Code; and

- Whether Fortress, Fortress Credit, Uniloc USA, Uniloc Luxembourg, Uniloc 2017, INVT, and Inventergy's attempts to evade commitments to license their SEPs on FRAND terms and conditions by constitutes illegal and/or unfair methods of competition in violation of Section 17200 of the Cal. Bus. & Prof. Code.

Disputed contentions of law regarding specific elements of the causes of action listed above are described in Defendants' motion to dismiss and Intel and Apple's brief opposing the motion.

### b.  **Defendants' Statement**

#### i.  Facts

This Court dismissed the Complaint because it failed to plead facts plausibly showing either a market, market power, antitrust injury, a conspiracy, unlawful aggregation, or any

violation of the UCL.  The Amended Complaint ("AC") fails for all the same reasons.  It re-alleges in the same conclusory fashion that Fortress and Fortress Credit have orchestrated a "web" of patent assertion entities ("PAEs") in order to aggregate "weak patents" and bring "meritless" patent litigations.  Dkt. No. 192 ("AC.") ¶ 10.  As before, none of this states a claim, and none of it has anything to do with the antitrust laws or protecting competition.  The AC should be dismissed again, this time with prejudice.

Defendant Fortress is a leading global investment management firm that offers a range of alternative investment strategies including credit, real estate, and private equity for institutional and private investors.  In particular, Fortress's credit business is focused on investing globally, primarily in undervalued assets and illiquid credit investments, including intellectual property.  Some of these business strategies involve providing loans to operating companies, where intellectual property serves as the main collateral with such financing, and providing private equity investments that enable inventors, research institutes, universities, and companies to efficiently realize the value of their intellectual property.  Without Fortress's loans and investments, these individuals and organizations would often lack sufficient resources to enforce their Constitutionally-enshrined patent rights.

These patents are not "weak," nor are Defendants' infringement contentions "meritless," contrary to the AC's conclusory assertions.  This is demonstrated by the fact that Defendants have prevailed in *inter partes* review proceedings, obtained favorable Markman and summary judgment rulings, and survived various other challenges brought by Plaintiffs in the very lawsuits that form the basis of the AC.  Tellingly, despite repeated allegations in their Complaint and AC about "meritless" litigations, *Compare* Dkt. 1 ¶¶ 2, 9, 31, 40, 88, 93, 163, 164 *with* AC ¶¶ 2, 10, 30, 39, 88, 94, 430, 431, Plaintiffs have conceded that they are <u>not</u> invoking a sham litigation theory of antitrust liability and instead are complaining only about supposedly anticompetitive patent aggregation.  Dkt. No. 136 at 29:7-9, 31:4-6.  Plaintiffs' admission that they are not basing their case on a sham litigation theory demonstrates that the bulk of the case pleaded in their AC is irrelevant and without merit.  Plaintiffs' pivoted focus on purportedly unlawful patent aggregation

is likewise baseless, especially given that (i) Plaintiffs' own patent portfolios <u>alone</u> are many times

the size of all of Defendants' portfolios combined, (ii) Plaintiffs make no attempt to plead any

facts to support their allegation that Defendants have market power in the so-called "exemplar

patent markets," and (iii) Plaintiffs fail to plausibly allege that Defendants "have aggregated

patents on a specific technology such that an alleged infringer is essentially deprived of substitutes

and is thus forced to take a license from Fortress[.]"  Dkt. 190 ("Order") at 16:8-10.

As set forth in Defendants' Joint Motion to Dismiss and Strike Plaintiffs' Amended

Complaint (herein "Motion to Dismiss and Strike"), Dkt. No. 203, the AC has nothing to do with

protecting competition.  Rather, Plaintiffs' real complaint is that loans or equity investments from

Fortress-managed investment funds have allowed patent owners to sue Plaintiffs for infringement,

when the original inventors and owners might not have been able to withstand the expense of

Plaintiffs' well-known scorched-earth defense tactics and refusals to pay for the technology they

are using.  There is nothing unlawful about that.

### ii.    Legal Issues

Plaintiffs assert that certain Defendants' alleged conduct violates Sherman Act Section 1,

Clayton Act Section 7, and California's unfair competition law, Cal. Bus. & Prof. Code § 17200,

*et seq.* ("UCL").  A threshold legal issue is whether Plaintiffs have stated claims pursuant to

Federal Rule of Civil Procedure 12(b)(6), which is the subject of Defendants' pending Motion to

Dismiss and Strike.  For the reasons briefly summarized below and numerous others contained in

Defendants' pending Motion to Dismiss and Strike, all of Plaintiffs' claims fail as a matter of law

for multiple independent reasons.

***No Cognizable Antitrust Market or Market Power.***  The AC pleads thirteen "exemplar

patent markets."  The AC, like Plaintiffs' failed Complaint, purports to invoke the "direct

evidence of anticompetitive effects" theory.  However, the AC just re-pleads empty buzzwords

like "supracompetitive prices" and "reduced output" without any accompanying facts, such as

actual prices for patent license agreements or license "output" numbers before and after the

alleged anticompetitive conduct.  The AC also fails to plead facts apprising the Court and

1  Defendants of the size and boundaries of each of the "patent markets."  Instead, the AC's

2  delineation of each "market" consists of (i) vague descriptions of a general area of technology, (ii)

3  identification of a handful of Defendants' patents that are supposedly "substitute" and/or

4  "complement" patents—without any facts plausibly alleging that consumers in these markets

5  would change their consumption of one technology in each "exemplar market" in response to a

6  price change in another technology in that same market—and (iii) the bare assertion that there is a

7  "market" relating to the general area of technology.  As such, Plaintiffs have failed to plead even

8  the "rough contours" of an alleged antitrust market, which is required even under Plaintiffs'

9  "direct evidence" approach.  Order at 13:8-11.

10  Moreover, the AC fails to allege any facts about Defendants' share of these purported

11  markets, *id.* at 13:9, or any "description of the number and viability of substitutes still available, if

12  any" in each market.  *Id.* at 17:5-6.  Without such factual allegations, whether Defendants have

13  one, ten, or a hundred purported "substitutes" shows nothing from a market power perspective.

14  Plaintiffs' failure to adequately allege the "exemplar patent markets," or allege any facts of

15  Defendants' purported market power within them, dooms their federal antitrust claims as well as

16  the state claims based upon them.

17  ***No Antitrust Injury.***  Neither Apple nor Intel alleges that it has suffered injury resulting

18  from harm to <u>competition</u>.  For instance, there is no allegation that any of Defendants' supposed

19  competitors in the "exemplar patent markets" have been forced out of the markets or that anyone

20  has been prevented from entering the markets and competing.  Nor is there any allegation of price

21  fixing, exclusive dealing, or other such recognized harms to competition.  Instead, Plaintiffs make

22  bald assertions of supposed injury to themselves in terms of allegedly "supracompetitive" license

23  fees and "demands," as well as litigation costs.  However, while the AC vaguely refers to

24  "supracompetitive licensing returns" (AC ¶ 152), it never identifies any such licenses, or what

25  supposedly makes the returns "supracompetitive."  Nor does the AC allege that either Apple or Intel

26  has entered into any such license.

27

28  Case No. 3:19-cv-07651-EMC            8            **JOINT CASE MANAGEMENT STATEMENT**

1    Instead, the AC alleges that Defendants have "demanded" more in litigation damages than

2    previous patent holders sought in negotiations outside of litigation—often for other patents.  But the

3    assertion that Defendants are seeking greater royalties than prior owners does not constitute antitrust

4    injury.   The Ninth Circuit has flatly rejected the "erroneous" assumption that "royalties are

5    'anticompetitive'—in the antitrust sense—unless they precisely reflect a patent's current, intrinsic

6    value and are in line with the rates other companies charge for their own patent portfolios."  *Fed.*

7    *Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 999 (9th Cir. 2020).  Moreover, Plaintiffs already

8    pleaded similar "demand" allegations in their dismissed Complaint, *see* Order at 15-17, and the AC

9    never explains what "demands" have to do with the aggregation of so-called "substitute" patents,

10   which is the essence of Plaintiffs' antitrust claims.  For example, the AC does not allege that any

11   PAE has ever sought to leverage the so-called "substitute" patents held by one of the other PAEs in

12   order to obtain a higher royalty rate.  Nor would it be possible for a PAE to seek greater damages in

13   litigation based on patents held by other PAEs who are not parties to that litigation.

14   ***Noerr-Pennington.***   Under the modified *Hynix* approach adopted by the Court, Plaintiffs'

15   claims are barred by the *Noerr-Pennington* doctrine unless these claims can stand independently of

16   the AC's repeated attacks on Defendants' infringement suits.  As demonstrated in the Motion and

17   herein, that is not the case.  However, given the AC's multiple other failings, this Court need not

18   even reach *Noerr-Pennington*.

19   ***Failure of Additional Elements.***   In addition to the failings noted above, Plaintiffs' claims

20   fail for other reasons.  These include but are not limited to the following.  First, the AC fails to

21   allege required evidentiary facts of an agreement to unreasonably restrain trade (Sherman Act

22   Section 1 Claim), as all it alleges are the same garden-variety lending and investment transactions

23   that the Court already determined were consistent with "rational, legal business behavior" and

24   insufficient to allege conspiracies to "aggregate weak patents," Order at 28:22-24 (internal

25   quotation marks omitted).  The AC still fails to plead evidentiary facts of any intent to harm

26   competition, and only repeats the conclusory allegation that each Defendant "understood" the

27   transactions would enable aggregation of substitute and complementary patents.  *See* AC ¶¶ 50,

28

56, 71, 73.  Second, Plaintiffs' purported reliance on "direct evidence" (Opp. at 36:2-37:7) dooms their Section 7 claim.  To plead a Section 7 claim, the Supreme Court and the Ninth Circuit require an analysis of the market size and concentration and a defendant's alleged share of it. Plaintiffs do not plead any facts regarding market concentration or Defendants' market share of any of the purported markets and therefore fail to state a Section 7 claim.  Third, the Opposition admits that the UCL claims seek to enjoin Defendants from filing infringement suits (Dkt. 208 at 38:16-18), which violates California's litigation privilege (Cal. Civ. Code § 47) and is also an unconstitutional prior restraint.  In addition, Apple's Count 4, which is predicated on certain Defendants' alleged breach of FRAND commitments, fails under *Qualcomm*, which unequivocally held that the remedy for such breaches lies in contract or patent law, not antitrust law.  *Qualcomm*, 969 F.3d at 1005.  All of these and other failings are discussed more fully in Defendants' pending Motion to Dismiss and Strike.

### 3.  Motions

On February 4, 2020, Defendants filed a joint motion to dismiss and strike the Complaint. Dkt. 111.  After full briefing and a hearing, the Court granted Defendants' motion and dismissed Plaintiffs' Complaint without prejudice on July 15, 2020.[1]  Dkt. 190.  Plaintiffs filed the Amended Complaint on August 4, 2020.  Dkt. 192.

On September 15, 2020, Defendants filed a joint motion to dismiss and strike the Amended Complaint.  On October 27, 2020, Intel and Apple filed their opposition.  Defendants filed their reply on November 17, 2020.  A hearing on Defendants' motion is scheduled for December 17, 2020.

On December 4, 2020, Apple and Seven Networks jointly moved to dismiss with prejudice Apple's claims against Seven Networks and the Court granted the motion that same day.  Seven

---

[1]  DSS Technology Management, Inc. filed a supplemental motion to dismiss on February 4, 2020, and the Court dismissed the claims against DSS with prejudice, to the extent those claims were premised on patent claims settled with Intel in January 2019.  *See* Order at 41:2-5.  The AC does not allege any claims against DSS.  *See* Dkt. 192.

Networks will remain a Defendant in the case, as Intel's claims against Seven Networks remain pending.

Other motions may be filed as the case progresses, and the parties reserve the right to address the same.

### a. __Plaintiffs' Statement__

Apple and Intel may file motions for summary judgment on one or more claims or issues at the appropriate time.

### b. __Defendants' Statement__

Defendants reserve the right to file additional motions if the case progresses, including but not limited to summary judgment motions.

**4. Amendment of Pleadings**

### a. __Plaintiffs' Statement__

Apple and Intel propose that they may amend their pleadings without leave until June 18, 2021.  Plaintiffs disagree with Defendants' statement below.  Intel's voluntary dismissal pursuant to Rule 41(a) of a separate lawsuit has no bearing on whether Plaintiffs should be permitted to amend their pleadings in this action.

### b. __Defendants' Statement__

The deficiencies in the Amended Complaint—many of which are the very same deficiencies that plagued the prior Complaint—demonstrate that Plaintiffs are unable to state a claim against any of the Defendants and that the Amended Complaint should be dismissed with prejudice.  *See World Wide Rush, LLC v. City of L.A.*, 606 F.3d 676, 690 (9th Cir. 2010) ("The district court's discretion to deny leave to amend is particularly broad where a plaintiff previously has amended the complaint."); *Staley v. Gilead*, No. 19-CV-02573-EMC, 2020 WL 5507555, at *9 (N.D. Cal. July 29, 2020) (granting dismissal with prejudice where "the Court gave Plaintiffs an opportunity to cure the deficiency but Plaintiffs were unable to do so").  Accordingly, Defendants respectfully submit that Plaintiffs are not entitled to further amendment.  Even if the Court did not dismiss the Amended Complaint with prejudice, Plaintiffs' deadline to amend as a

matter of course has long passed and Plaintiffs have already had ample opportunity to amend their pleadings.  In addition, Intel filed a very similar complaint against several of the Defendants, only to dismiss it and refile the Complaint in this action the same day.  *Compare* Dkt. No. 1 *with Intel Corporation v. Fortress Investment Group LLC et al.*, No. 3:19-cv-06856-EJD, Dkt. No. 35.  Consequently, Defendants believe that Plaintiffs should have no further right to amend the Amended Complaint without leave of Court.  Should Plaintiffs later seek to amend, Plaintiffs must demonstrate why any proposed amendment would not be futile given their repeated failure to articulate cognizable claims.

**5.  Evidence Preservation**

Plaintiffs and Defendants certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and confirm that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.  The parties anticipate that they will submit an ESI Stipulation setting forth their agreements with respect to the discovery of ESI in this action.

**6.  Disclosures**

**i.      Plaintiffs' Statement**

Plaintiffs are prepared to exchange Rule 26(a)(1) disclosures on December 10, the same day as the filing of the Joint Case Management Statement.  In light of the Court's order staying discovery pending a ruling on Defendants' motion to dismiss and strike (ECF No. 158), however, Plaintiffs agree that initial disclosures do not need to be exchanged at this time.  Plaintiffs therefore propose that initial disclosures be exchanged within 14 days of Defendants answering Plaintiffs' Amended Complaint or the Court ruling on Defendants' motion to dismiss and/or strike the Amended Complaint (unless the case is dismissed in its entirety), whichever is sooner.

ii.     **Defendants' Statement**

Defendants believe that initial disclosures should be exchanged 14 days after the Court's order affirmatively lifting the discovery stay issued on March 25, 2020 (ECF No. 158), if and when that occurs.

**7. Discovery**

a.     **Discovery Taken to Date**

i.     **Plaintiffs' Statement**

Discovery was stayed pending resolution of Defendants' motion to dismiss Plaintiffs' original complaint, and neither party has sought discovery to date.  Plaintiffs believe there is no need to phase discovery and Defendants have articulated no reason why they believe it is necessary to phase discovery.

ii.     **Defendants' Statement**

Defendants do not agree that there is no need to phase discovery.  Because discovery is currently stayed while Defendants' Motion to Dismiss and Strike is pending, any discussion of phasing discovery is premature.  If necessary, Defendants will meet and confer with Plaintiffs about phasing discovery if and when the stay is lifted.

b.     **Scope of Discovery**

i.     **Plaintiffs' Statement**

Intel and Apple expect that substantial discovery will be necessary in this case, in part because of the number of purportedly separate entities owned or controlled by Fortress.  Intel and Apple intend to pursue discovery relating to the factual and legal issues set forth herein and in their Amended Complaint, including any further amendments thereto.  As discussed above, Intel and Apple are challenging Defendants' anticompetitive scheme of acquiring a massive portfolio of patents (including substitute and complementary patents) that purportedly read on electronic devices and components or software therein and processes used to manufacture them, and then using their aggregated portfolio for serial assertions to obtain patent royalties greatly exceeding the value of the alleged inventive contributions of and competitive prices for the patents.

Among other things, Intel and Apple will need discovery from Defendants and third parties relating to (1) patents transferred to Defendants; (2) Defendants' selection of patents to acquire and/or aggregate; (3) the terms of those transfers and agreements relating to those transfers; (4) Defendants' respective patent enforcement strategies; (5) licenses, settlement agreements, covenants not to sue, and any other agreements under which Defendants have granted or received any rights relating to any of the patents asserted in the litigations identified in the complaint or any other litigation where Defendants have asserted patents in which Fortress has an economic, financial, or ownership interest or an agreement with Defendant with respect to those patents ("Fortress-backed patents"); (6) offers to license or settle or otherwise grant or receive any rights relating to any Fortress-backed patents; (7) agreements to acquire or sell any rights relating to any of the Fortress-backed patents; (8) agreements (a) between any of the Fortress entities and any of the other Defendants or (b) that otherwise show the relationship(s) between one or more of the Fortress entities and any of the other Defendants; (9) communications between Defendants relating to any of the above categories; (10) Defendants' rationales and motivations for the conduct; (11) documents sufficient to show funding arrangements for the assertion (either by litigation or in a pre-litigation demand) of Fortress-backed patents; (12) Defendants' FRAND obligations; and (13) the costs that Defendants have imposed on third parties.

### ii. Defendants' Statement

Defendants believe that the appropriate scope of discovery, if any, should be determined after the Court rules on the pending Motion to Dismiss and Strike, as the parties cannot determine what amount of discovery will be necessary given that it is unknown what claims or parties (if any) may remain after the Court rules on the Motion.

### c. Modifications to Discovery

### i. Plaintiffs' Statement

Based on the expected scope of discovery, Plaintiffs propose the following:

*Requests for Production*

Unlimited

*Interrogatories*

Apple and Intel may collectively serve 50 interrogatories on each Defendant.  Defendants may collectively serve 50 interrogatories on Apple and 50 interrogatories on Intel.

*Requests for Admission*

Unlimited

*Party Depositions*

Apple and Intel shall collectively have 185 hours of total fact deposition time of Defendants collectively (not counting expert depositions) to take the depositions of Defendants' witnesses, including corporate depositions under Fed. R. Civ. P. 30(b)(6) depositions.  Defendants shall collectively have 70 hours of total fact deposition time of Apple and Intel collectively (not counting expert depositions) to take the depositions of Apple's and Intel's witnesses, including corporate depositions under Fed. R. Civ. P. 30(b)(6) depositions.

Each deposition shall be governed by the one-day, seven-hour limit of Fed. R. Civ. P. 30(d)(1), with each deposition counting at least 3.5 hours.  The deposition of any single individual designated as a corporate witness to testify regarding a deposition topic contained in a deposition notice served under Fed. R. Civ. P. 30(b)(6) is presumptively limited to seven hours of deposition testimony for that individual, with each deposition counting at least 3.5 hours.  However, if an individual Fed. R. Civ. P. 30(b)(6) corporate witness is designated by the offering party on multiple unrelated topics, the deposing party may request a reasonable number of additional deposition hours, and the offering party shall not unreasonably deny the request.

*Non-Party Depositions*

No limitation, but each party reserves any right it has to object to non-party discovery.

*Response to Defendants' Statement*

Contrary to Defendants' insinuations, to the extent Plaintiffs' deposition time proposals are disproportionate, it is in favor of Defendants.  There are **ten** defendants and only **two** plaintiffs.  Plaintiffs' proposal permits Defendants to take an average of 35 hours of deposition time per Plaintiff while permitting Plaintiffs only an average of 18.5 hours deposition time per Defendant.

Defendants are also simply incorrect that they would be limited under Plaintiffs' proposal to only 10 depositions – to the extent they opted to take depositions that lasted less than 7 hours they would be permitted more than 10 depositions.  Plaintiffs respectfully submit that imposing a limit on the number of deposition hours rather than the total number of depositions will encourage each side to take depositions that are no longer than necessary while allowing each side the discovery that it needs.  To the extent Defendants are arguing that each side should be permitted no more than 10 depositions total, this would be extremely prejudicial to Plaintiffs as they would only be able to take a single deposition of each Defendant.

### ii.   Defendants' Statement

Defendants disagree with Plaintiffs' enhanced limits to discovery and believe it is premature to discuss modifications of the discovery rules while discovery is stayed pending Defendants' Motion to Dismiss and Strike.  The parties cannot determine what amount of discovery will be necessary given that it is unknown what claims or parties (if any) may remain after the Court rules on the pending Motion to Dismiss and Strike.  Moreover, Plaintiffs' proposals are disproportionate—*e.g.*, 185 hours of fact deposition time of the Defendants versus 70 hours of fact deposition time of the Plaintiffs.  Under this proposal, Defendants would only be allowed to take the 10 depositions provided under the default rule, Fed. R. Civ. P. 30(a)(2)(A)(i), whereas Plaintiffs would get to take more than two-and-half times that amount.  And the fact that Plaintiffs' proposal permits more deposition time per Plaintiff than per Defendant is irrelevant given that Plaintiffs are much larger companies who have many more employees than Defendants.

Defendants also disagree that Plaintiffs' proposal to allocate party depositions by a total number of hours, as opposed to a total number of depositions as assumed in Rule 30, is reasonable or appropriate.  Under this proposal, Plaintiffs would be able to notice and take scores of short depositions, imposing significant burdens of preparation on Defendants and their counsel.  Defendants do not believe the Court should vary from the approach found in Rule 26(b)(2) and Rule 30 in which the limit on the number of depositions is based on the deponents and not on hours.

Defendants propose that the parties meet and confer over the scope of discovery if and when the discovery stay is lifted.

### d.   Discovery of ESI

If and when the discovery stay is lifted, the parties intend to discuss and enter into an ESI stipulation addressing preservation, collection, and production of ESI.

### e.   Protective Order

If and when the discovery stay is lifted, the parties intend to negotiate the scope of a protective order to govern this action.

### f.   Discovery Disputes

None at this time.

### g.   Service

The parties agree that, to the extent possible in light of the volume of the submission, all court filings, discovery, and documents to be served on opposing counsel, to the extent not served through ECF (namely, filings under seal), will be served via email, or if too voluminous, by FTP or other internet file service, on each of the other parties, and such service shall constitute proper service under Fed. R. Civ. P. 5(b)(2)(E).

### h.   Privilege Logs/Privileged Information

#### i.   <u>Plaintiffs' Statement</u>

The parties are not required to include on their privilege logs any: (1) attorney-client communications and/or work product regarding prosecution or defense of any of the patent litigations mentioned in the Amended Complaint or any future patent litigations among any of the parties to this action after each such suit was or is filed; or (2) attorney-client communications and/or work product regarding the underlying litigation, including any protected documents that reflect communications between counsel and their respective clients, or work-product documents that reflect work of counsel that were created in anticipation of this litigation, even if created before the filing date of the Complaint.  For clarity, the foregoing does not exempt from privilege logging obligations documents that relate to (a) transfer of rights in or licensing of (or potential

transfer of rights in or potential licensing of) any patent, (b) the relationships between or among

the parties, or (c) anything relating to formation of the parties, even if such documents have some

connection to the patent litigations in (1).

It is not premature to discuss privilege logging at this time.  The scope of the case is

unlikely to materially affect the type of responsive privileged material that may be at issue in this

case.

### ii.    Defendants' Statement

Defendants believe it is premature to discuss privilege logging until the scope of the case

(if any) is determined by the Court's ruling on the Motion to Dismiss and Strike.

### 8. Class Actions

This is not a class action.

### 9. Related Cases

### a.    Plaintiffs' Statement

As Defendants acknowledge, there are no related cases.  Intel did not file a motion to relate

the instant action to *Intel Corporation v. Fortress Investment Group LLC, et al.*, No. 5:19-cv-

06856-EJD (N.D. Cal.) ("-6856 Action").  Intel filed an "Administrative Motion to Consider

Whether Cases Should Be Related so that the Court may consider whether this case is related to"

the -6856 Action.  Dkt. No. 7 at 1.  As Defendants note, Judge Davila found the instant case and

the -6856 Action were not related.  Dkt. No. 47.

### b.    Defendants' Statement

Defendants are not aware of any related cases as defined under the local rules, but

highlight for the Court two instances in which various parties filed administrative motions to

consider whether the present case (and Intel's substantially similar prior antitrust case) were

related to other actions.  First, Intel filed an administrative motion to consider whether the instant

action was related to Intel's nearly identical prior (and now voluntarily dismissed) antitrust suit

against Defendants Fortress, Fortress Credit, VLSI, and DSS before Judge Davila.  *See Intel*

*Corporation v. Fortress Investment Group LLC et al.*, No. 5:19-cv-06856-EJD (filed October 21,

2019).  Intel's prior antitrust suit asserted a Sherman Act Section 1 claim, a Sherman Act Section 2 monopolization claim, a Clayton Act Section 7 unlawful acquisition claim, and a California unfair competition law claim premised largely on the same alleged conduct by the same entities in the instant action.  Intel voluntarily dismissed the suit on November 20, 2019, and refiled the present action on the very same day—dropping the monopolization claim, adding Apple as a plaintiff, and naming seven additional Defendants (all of which were mentioned in the prior antitrust suit by way of virtually identical allegations).  Defendants Fortress, Fortress Credit, and VLSI filed a response in support of Intel's administrative motion.  *Id.*, Dkt. No. 38.  Judge Davila denied Intel's motion.  *Id.*, Dkt. No. 39.

Second, in Intel's prior antitrust action, Defendants Fortress, Fortress Credit, and VLSI filed an administrative motion to relate that action to VLSI's patent infringement suit against Intel in this District, *VLSI Technology LLC. v. Intel Corp.*, Case No. 5:17-CV-05671-BLF, noting that the merits of the patent infringement suit bore upon Intel's prior action.  *See id.*, Dkt. No. 266.  Intel opposed the motion and argued that the legal issues were entirely distinct and that the antitrust claims "do not hinge on the merits outcome of the present action."  *See id.*, Dkt. No. 269 at 2:26-27.  Judge Freeman denied the administrative motion.  *See id.* Dkt. No. 270.

**10. Relief**

Plaintiffs' Amended Complaint contains the following requests for relief:

    a.   That Defendants' unlawful conduct be declared a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; Section 7 of the Clayton Act, 15 U.S.C. § 18; and Cal. Bus. Prov. Code § 17200, *et seq.*;

    b.   That Intel and Apple recover damages against Defendants in an amount to be determined and multiplied to the extent provided by law, including under Section 4 of the Clayton Act;

    c.   That all contracts or agreements Defendants entered into in violation of the Sherman Act, Clayton Act, or Cal. Bus. Prov. Code § 17200, et seq. be declared void and the patents covered by those transfer agreements be transferred back to the transferors;

d.  That all patents transferred to Defendants in violation of the Sherman Act, Clayton Act, or Cal. Bus. Prov. Code § 17200, et seq. be declared unenforceable;

e.  Award Plaintiffs' injunctive relief under Section 7 of the Clayton Act, 15 U.S.C. § 18;

f.  Award Plaintiffs' injunctive relief for their Unfair Competition Law Claim;

g.  Award to Intel and Apple their costs and expenses associated with this case, together with interest; and

h.  Grant such other and further relief as the Court may deem just and proper under the circumstances.

### a.  <u>Defendants' Statement</u>

Defendants oppose all forms of relief sought by Plaintiffs and contend that Plaintiffs' claims lack merit and that they are therefore not entitled to any damages.  Specifically, Plaintiffs are not entitled to any relief because the AC fails to state any claims under Federal Rule of Civil Procedure 12(b)(6).  Defendants also seek attorneys' fees and costs pursuant to California's Anti-SLAPP statute for all fees and costs incurred in connection with Defendants' Motion to Dismiss and Strike.

If any portion of the AC survives Defendants' Motion to Dismiss and Strike, Defendants reserve the right to assert counterclaims and cross claims, and Defendants may seek to recover attorneys' fees and costs expended in the defense of this matter (in addition to those being sought pursuant to California's Anti-SLAPP statute).

### 12. Settlement and ADR

The parties propose private mediation before a mediator to be agreed to by the parties at a later date.

### 13. Consent to Magistrate Judge For All Purposes

The parties do not consent to having a magistrate judge conduct all further proceeding including trial and summary judgment.

### 14. Other References

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing of Issues**

    **a.**    **<u>Plaintiffs' Statement</u>**

At this time, Plaintiffs are unaware of any issues that may be narrowed by agreement or by motion.

    **b.**    **<u>Defendants' Statement</u>**

Defendants respectfully submit that it is premature to consider an agreement to narrow issues for trial or to expedite the presentation of evidence at trial.  Plaintiffs' claims should all be dismissed with prejudice, as set forth in Defendants' Motion to Dismiss and Strike.

**16. Expedited Trial Procedure**

This is not the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

**17. Scheduling**

    **a.**    **<u>Plaintiffs' Statement</u>**

Plaintiffs respectfully request that the Court set a schedule consistent with this Court's Guidelines re Calculation of Trial Time Line:

| <u>Event</u> | <u>Deadline</u> |
|---|---|
| Case Management Conference | December 15, 2020 |
| Amendment of Pleadings | June 18, 2021 |
| Fact Discovery Deadline | July 22, 2021 |
| Designation of Opening Experts with Reports | July 22, 2021 |
| Designation of Rebuttal Experts with Reports | August 12, 2021 |
| Expert Discovery Deadline | September 2, 2021 |
| Deadline for Filing Dispositive Motions | September 2, 2021 |

| Event | Deadline |
|---|---|
| Hearing on Dispositive Motions | October 7, 2021 |
| Joint Pretrial Conference Statement and Trial Briefs | November 19, 2021 |
| Objections | December 3, 2021 |
| Pre-Trial Conference | December 14, 2021 |
| Trial Date | January 24, 2022 |

To the extent the Court agrees with Defendants that a case schedule should be delayed until the Court rules on Defendants' motions to Dismiss and/or Strike, Plaintiffs respectfully suggest that the Court should set trial for approximately one year from the Court's ruling. Defendants' proposed schedule is inconsistent with this Court's Guidelines.

**b.    Defendants' Statement**

Because the scope of this case depends on what claims (if any) can survive Defendants' pending Motion to Dismiss and Strike, Defendants believe that the Court should defer setting a case schedule until that motion has been decided.

In the alternative, Defendants propose the case schedule set forth below.  The proposed schedule includes a trial date that is appropriate for this complex, multi-party antitrust action, and is also consistent with the timeline that the Court recently approved in another complex antitrust case, *Staley et al. v. Gilead Sciences, Inc. et al.*, 3:19-cv-02573-EMC, Dkt. No. 342.

| Event | Deadline |
|---|---|
| Start of fact discovery | 30 days after Court's whole or partial denial of Defendants' motions to dismiss |
| Close of fact discovery | 470 days after start of fact discovery |
| Last day for parties to designate experts and issue expert reports | 90 days after close of fact discovery |

| Event | Deadline |
|---|---|
| Rebuttal expert reports | 60 days after issuance of expert reports |
| Reply expert reports | 45 days after issuance of rebuttal expert reports |
| Close of expert discovery | 60 days after issuance of reply expert reports |
| Last day for parties to file dispositive pre-trial motions and objections to experts (i.e., *Daubert* and similar motions) | 60 days after close of expert discovery |
| Joint Pretrial Conference Statement and Trial Briefs | 40 days after decision on summary judgment or as determined by the Court |
| Objections | 50 days after decision on summary judgment or as determined by the Court |
| Pretrial conference | 60 days after decision on summary judgment or as determined by the Court |
| Trial | 105 days after decision on summary judgment or as determined by the Court |

**18. Trial**

    a.    **Plaintiffs' Statement**

Apple and Intel have demanded a jury trial for their claims, and expect that a 15-day trial may be required.

    b.    **Defendants' Statement**

Defendants respectfully submit that it is premature to estimate an expected length of trial at this time.

**19. Disclosure of Non-Party Interested Entities or Persons**

The parties have filed Certifications of Interested Persons or Entities pursuant to Civil Local Rule 3-16.

1

**20. Professional Conduct**

All attorneys of record have reviewed the Guidelines for Profession Conduct for the Northern District of California.

Dated: December 8, 2020

Respectfully submitted,

By: */s/ Mark D. Selwyn*

Mark D. Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
Telephone: (650) 858-6000
Fax: (650) 585-6100

William F. Lee (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
Joseph J. Mueller (*pro hac vice*)
joseph.mueller@wilmerhale.com
Timothy D. Syrett (*pro hac vice*)
timothy.syrett@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

WILMER CUTLER PICKERING
  HALE AND DORR LLP
Leon G. Greenfield (*pro hac vice*)
leon.greenfield@wilmerhale.com
Amanda L. Major (*pro hac vice*)
amanda.major@wilmerhale.com
1875 Pennsylvania Avenue N.W.
Washington, DC 20006
Telephone: (202) 663-6000
Fax: (202) 663-6363

*Attorneys for Plaintiffs*
INTEL CORPORATION and APPLE INC.

By: */s/ A. Matthew Ashley*

A. Matthew Ashley
*Counsel for Defendants*
FORTRESS INVESTMENT GROUP LLC,
FORTRESS CREDIT CO. LLC,
VLSI TECHNOLOGY LLC

25

**JOINT CASE MANAGEMENT
STATEMENT**

1

2    */s/ Christopher A. Seidl*
     Christopher A. Seidl (*pro hac vice*)
3    CSeidl@RobinsKaplan.com
     ROBINS KAPLAN LLP
4    800 LaSalle Avenue, Suite 2800
     Minneapolis, MN 55402
5    Telephone:  612 349 8468
     Facsimile:  612 339-4181
6    *Counsel for Defendants*
     INVT SPE LLC
7    INVENTERGY GLOBAL, INC.

8    */s/ Jason D. Cassady*
     Jason D. Cassady (*pro hac vice*)
9    jcassady@caldwellcc.com
     CALDWELL CASSADY & CURRY
10   2121 N. Pearl Street, Suite 1200
     Dallas, TX 75201
11   Telephone: 214 888-4841
     Facsimile:  214-888-4849
12   *Counsel for Defendant*
     IXI IP, LLC
13

14   */s/ James J. Foster*
     James J. Foster
15   jfoster@princelobel.com
     PRINCE LOBEL TYE LLP
16   One International Place, Suite 3700
     Boston, MA 02110
17   Telephone:  617 456-8022
     Facsimile:  617 456-8100
18   *Counsel for Defendant*
     UNILOC 2017 LLC
19

20   */s/ Daniel. R. Shulman*
     Daniel R. Shulman (*pro hac vice*)
21   dan@shulmanbuske.com
     SHULMAN & BUSKE PLLC
22   126 North Third Street, Suite 402
     Minneapolis, MN 55401
23   Telephone: 612 870 7410
     *Counsel for Defendants*
24   UNILOC LUXEMBOURG S.A.R.L.
     UNILOC USA, INC
25

26   */s/ Dean C. Eyler*
     Dean C. Eyler (*pro hac vice*)
27   dean.eyler@lathropgpm.com

28   Case No. 3:19-cv-07651-EMC          26          **JOINT CASE MANAGEMENT STATEMENT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHROP GPM LLP
500 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612 632-3335
Facsimile: 612 632-4000
*Counsel for Defendants*
UNILOC LUXEMBOURG S.A.R.L.
UNILOC USA, INC


*/s/ Samuel F.* Baxter__
Samuel F. Baxter (*pro hac vice*)
sbaxter@mckoolsmith.com
John Briody (*pro hac vice*)
jbriody@mckoolsmith.com
MCKOOL SMITH
104 East Houston, Suite 100
Marshall, TX 75670
Telephone:  903 923-9001
Facsimile:  903 923-9099

One Manhattan West
395 9th Avenue, 50th Floor
New York, NY 10001-8603
Telephone: 212.402.9438
*Counsel for Defendant*
SEVEN NETWORKS, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document entitled Joint Case Management Statement to be filed via the court's CM/ECF system, which shall send notice to the counsel of record for the parties.

Dated: December 8, 2020                    Respectfully submitted,


By: _/s/ Mark D. Selwyn_____