Christopher A. Seidl (*pro hac vice*)
CSeidl@RobinsKaplan.com
John K. Harting (*pro hac vice*)
JHarting@RobinsKaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-349-4181
*Counsel for Defendants*
INVT SPE LLC
INVENTERGY GLOBAL, INC.

*Additional Counsel Listed on Signature Page*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INTEL CORPORATION and APPLE INC., | Case No. 3:19-cv-07651-EMC |
| Plaintiffs, | |
| v. | **DEFENDANTS INVT SPE LLC AND INVENTERGY GLOBAL, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS AND TO STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| FORTRESS INVESTMENT GROUP LLC, FORTRESS CREDIT CO. LLC, UNILOC 2017 LLC, UNILOC USA, INC., UNILOC LUXEMBOURG S.A.R.L., VLSI TECHNOLOGY LLC, INVT SPE LLC, INVENTERGY GLOBAL, INC., and IXI IP, LLC, | |
| Defendants. | Hon. Edward M. Chen |
| | **[REDACTED VERSION]** |

In addition to the grounds raised in the joint motion to dismiss and strike, Plaintiffs' remaining claims against INVT SPE LLC ("INVT") and Inventergy Global, Inc. ("Inventergy") should be dismissed with prejudice as the claims fail to plausibly articulate that the alleged supracompetitive licensing rates offered by INVT and Inventergy ***resulted from*** any purported aggregation of substitute patents.[1] Plaintiffs' Second Amended Complaint ("SAC") is entirely devoid of facts that would move such an allegation from possible to plausible. To the contrary, as shown by the INVT/Inventergy licensing letters referenced in Plaintiffs' SAC, the offered rates were tied to specific standard essential patents and calculated to reflect INVT/Inventergy's *pro rata* (proportional) share of patents essential to the 3G and LTE standards. The rates were not linked to any purported aggregation of substitute patents.

As this Court previously noted, a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). Here, the Second Amended Complaint asserts a Section 1 claim against Inventergy, a Section 7 claim against INVT, and a Section 17200 claim against both INVT and Inventergy. SAC ¶¶ 454-67. Each of the remaining claims are based on what this Court previously dubbed Plaintiffs' "Patent Aggregation Theory."

As such, Plaintiffs must plausibly show that the alleged supracompetitive royalties were offered or extracted "as a result of their aggregation." Dkt. 229 at 24:11-12; *see also, e.g.*, *id.* at 26 ("even if it could reasonably be inferred that the '014 patent was the driving force for the increase in demand, there must still be a showing that the supracompetitive pricing ***was the result of*** the '014 patent's being aggregated with patents that provide the same function. The FAC lacks specific allegations in this regard.") (emphasis added); *id.* at 26-27 ("the differential ***must***

---

[1] Plaintiffs' original Complaint and first Amended Complaint included two distinct liability theories asserted against Defendants INVT and Inventergy, referred to by this Court as (1) the "Patent Aggregation Theory" and (2) the "SEP Transfer Theory." *See, e.g.* Dkt. 229 at 2. The SEP Transfer theory, which was asserted in connection with Apple's prior claim for unfair competition in violation of § 17200, was dismissed with prejudice. *Id.* at 28. The Court also expressly noted that Plaintiffs' SEP Transfer Theory claim was "not based on predicated aggregation of patents." *Id.* at 12-13. Thus, Plaintiffs now proceed against INVT and Inventergy only on Plaintiffs' Patent Aggregation Theory. SAC ¶¶ 454-67

*plausibly be attributable to the aggregation* of patent substitutes acquired by Defendants. Plaintiffs have failed to make allegations tying the pricing differential to aggregation of the patents at issue.") (emphasis added)). Plaintiffs' SAC fails to meet this threshold.

Plaintiffs' Patent Aggregation Theory remains the same as previously alleged: that as a result of aggregation, the Defendants are able to "seek and obtain far more for [licensing] their patents than the costs at which they acquired those patents or the rates at which they would have been licensed before aggregation eliminated competition." SAC ¶ 447; *see also id.* at ¶ 88 (generic allegation against Inventergy of supracompetitive pricing based on aggregation); *id.* at ¶ 91 (same for INVT). In support of these allegations against INVT and Inventergy, Plaintiffs' SAC cites to two letters, attached hereto as Exhibits 24 and 25 to the Declaration of Christopher A. Seidl.

First, a January 2015 letter from Inventergy to Apple offering to license certain standard essential patents then held by Inventergy to Apple for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ SAC at ¶ 128; Seidl Decl. Ex. 24. [2] Second, a June 2018 letter from INVT to Apple, which explained the methodology behind the January 2015 offer and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ¶ 130; Seidl Decl. Ex. 25. While neither letter was attached to Plaintiffs' SAC, because Plaintiffs referenced the contents of the letters in the complaint, this Court may take judicial notice of the documents and their contents for purposes of this motion. *Dizon v. Wells Fargo, N.A.*, No. 12-CV-04623 NC, 2012 WL 6203008, at *2 (N.D. Cal. Nov. 26, 2012) (a court may take judicial notice of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.").[3]

Here, both letters show that INVT and Inventergy's licensing offers were **not** a result of any alleged aggregation of substitute patents, but instead represent *pro rata* shares of the value of the 3G and LTE standards, calculated according to a "Top Down" methodology. The January 2015 letter explains that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[2] The January 2015 letter referred to in the SAC was incorrectly dated January 16, 2014. However, the SAC acknowledges the correct date is from January, 2015, and the date does not in any way impact the relevant substance of the letter.

[3] *See also* Request for Judicial Notice ("RJN") filed concurrently herewith.

███ Ex. 24 at 1. However, the ███ per unit royalty rate offered by Inventergy was ***not*** ███

███ *Id.* at 1-2; *see also* Att. A thereto.

As Plaintiffs' SAC goes on to explain, in June 2018, after INVT acquired the Panasonic portfolio from Inventergy, INVT then ███." SAC ¶ 130. INVT's June 2018 letter did in fact explain ███. Ex. 25 at 2-8.

As explained by the January 2018 letter, in calculating the offered rate Inventergy ███



Ex. 25 at 6.

A similar calculation was carried out for 3G, where ███

1 | Ex. 25 at 8. ████████████████████████████████████████
2 | ████████████████████████████████████████████████████
3 | ████████████████████████████████ Ex. 25 at 9.

4      While Plaintiffs may disagree with many aspects of Inventergy's calculation, the only relevant data point for this Court's analysis in determining whether to dismiss Plaintiffs' claims, which are based on Plaintiffs' Patent Aggregation Theory, is whether the royalty rate was the result of the aggregation of substitute patents. Dkt. 229 at 26-27. As this Court already found in regards to Plaintiffs' SEP Transfer Theory (Dkt. 229 at 12-13), the answer to that question is undoubtedly "no." Instead, the INVT/Inventergy license letters actually show the opposite—that the offered rates were calculated according to a mathematical formula tied specifically to Inventergy's (and later INVT's) *pro rata* share of 3G and LTE standard essential patents.

     Plaintiffs' SAC contains no allegations to the contrary, and entirely fails to connect the rates to any alleged aggregation of substitute patents. Indeed, Apple previously alleged that the patents at issue in the 2015 and 2018 letters were somehow part of a scheme by INVT/Inventergy to acquire and then assert standard essential patents while evading their corresponding FRAND commitments. *See* First Amended Complaint ¶¶ 394-427. The Court, however, dismissed this theory, and noted that it was "not based on predicated aggregation of patents." Dkt. 229 at 12-13, 27-28. Plaintiffs attempt to shoehorn their previously dismissed "SEP Transfer Theory" into their "Patent Aggregation Theory" should be rejected

     All three of Plaintiffs' claims against INVT and Inventergy rise and fall based on Plaintiffs' ability to plausibly assert that the rates offered by INVT/Inventergy were the result of aggregation of substitute patents. Plaintiffs fail to meet that burden. Plaintiffs' claims against INVT and Inventergy must be dismissed with prejudice. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (leave to amend is inappropriate when "the pleading could not possibly be cured by the allegation of other facts.").

| | | |
|---|---|---|
| 1 | Dated: April 26, 2021 | Respectfully submitted, |
| 2 | | ROBINS KAPLAN LLP |

By: /s/ Christopher A. Seidl
    Christopher A. Seidl (*pro hac vice*)
    CSeidl@RobinsKaplan.com
    John K. Harting (*pro hac vice*)
    JHarting@RobinsKaplan.com
    Taylor Moore-Willis (*pro hac vice*)
    TMoore-Willis@RobinsKaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone:  612 349 8468
Facsimile:  612 339-4181
*Counsel for Defendants*
INVT SPE LLC
INVENTERGY GLOBAL, INC.

Steven Carlson
SCarlson@RobinsKaplan.com
**ROBINS KAPLAN LLP**
2440 West El Camino Real, Suite 100
Mountain View, California 94040
Telephone: (650) 784-4012
Facsimile: (650) 784-4041

William V. Reiss (*pro hac vice*)
WReiss@RobinsKaplan.com
**ROBINS KAPLAN LLP**
399 Park Avenue. Suite 3600
New York, NY 10022
Telephone: 212-980-7400
Facsimile: 212-980-7499

*Counsel for Defendants*
INVT SPE LLC
INVENTERGY GLOBAL, INC.