Christopher A. Seidl (*pro hac vice*)
CSeidl@RobinsKaplan.com
John K. Harting (*pro hac vice*)
JHarting@RobinsKaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-349-4181

*Counsel for Defendants*
INVT SPE LLC
INVENTERGY GLOBAL, INC.

*Additional Counsel Listed on Signature Page*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEL CORPORATION and APPLE INC., | Case No. 3:19-cv-07651-EMC |
| Plaintiffs, | |
| v. | **DEFENDANTS INVT SPE LLC AND INVENTERGY GLOBAL, INC.'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS AND TO STRIKE PLAINTIFF INTEL'S SECOND AMENDED COMPLAINT** |
| FORTRESS INVESTMENT GROUP LLC, FORTRESS CREDIT CO. LLC, UNILOC 2017 LLC, UNILOC USA, INC., UNILOC LUXEMBOURG S.A.R.L., VLSI TECHNOLOGY LLC, INVT SPE LLC, INVENTERGY GLOBAL, INC., and IXI IP, LLC, | |
| Defendants. | Hon. Edward M. Chen |
| | **[REDACTED VERSION]** |

As this Court recognized, to succeed on their only remaining claims—which are based on what this Court referred to as Plaintiff's "Patent Aggregation Theory"—Intel must show that the alleged supracompetitive pricing *was the result of* alleged aggregation. *See, e.g.*, Dkt. 229 at 24:11-12; *id.* at 26:25-27:2. As to INVT and Inventergy, the only supracompetitive pricing alleged in Intel's Second Amended Complaint ("SAC") is by reference to two licensing letters, one from January 2015 and the other from June 2018. SAC at ¶¶ 128-130. INVT/Inventergy's opening Supplemental Brief explains how those two letters show the opposite of supracompetitive royalty demands as a result of aggregation, instead evidencing licensing offers for specific standard essential patents ("SEPs") calculated to reflect INVT/Inventergy's *pro rata* share of the 3G and LTE standards. Dkt. 246.

Intel's opposition does not dispute that those letters show a *pro rata* calculation. In fact, in responding to INVT/Inventergy's Supplemental Brief, Intel admits that those two letters "relate only to claimed SEPs," whereas the three specific INVT/Inventergy patents identified in the SAC are non-SEPs. Dkt. 256 at 3:12-13. Thus, Intel asserts that the letters, and the offered royalty rates reflected therein, are "***irrelevant***" to Intel's remaining claims. *Id.* at 3:11; *see also id.* at 3:17-20 ("Because neither letter encompasses non-SEPs, neither is relevant to assessing whether Defendants have been able to demand inflated royalties for the '579, '242, or '620 patents as a result of competition eliminated through the challenged acquisitions.").[1]

INVT and Inventergy agree. Indeed, based on Intel's own admission (and thus setting those two letters aside), Intel has no evidence whatsoever upon which it can plausibly allege ***supracompetitive pricing*** as to the '579, '242, or '620 patents ***as a result*** of alleged aggregation of patents by INVT and Inventergy. To the contrary, Intel admits that those three patents are outside

---

[1] Intel's opposition, however, misstates INVT and Inventergy's argument as what the two licensing letters show. INVT/Inventergy's argument is ***not*** that there is no supracompetitive royalty demand because the "█████████████████████████████████████." Dkt. 256 at 2:18-22. Rather, INVT/Inventergy's argument is that the calculation shown in the two letters demonstrates the offered rates were tied to specific standard essential patents and calculated to reflect INVT/Inventergy's *pro rata* (proportional) share of patents essential to the 3G and LTE standards, which is the opposite of a rate based on aggregation. Dkt. 246 at 1-4.

the scope of INVT/Inventergy's only prior offers, as the offers were limited to SEPs. Dkt. 256 at 3:12-16. Without reference to the royalty rates offered in the two letters, Intel is left with no evidence whatsoever of any alleged supracompetitive prices offered by INVT or Inventergy, let alone supracompetitive prices as a result of aggregation. On this basis alone, Intel's SAC should be dismissed with prejudice as to both INVT and Inventergy.

In a blatantly improper attempt to shift theories, obfuscate, and avoid dismissal, Intel now alleges—for the first time in its opposition brief—that its claims against INVT and Inventergy are not based on alleged supracompetitive royalties. Instead, Intel alleges "the letters ***show that Inventergy/INVT are willing to assert patents,*** and [Intel is] therefore suffering continuing antitrust injury as a result of the illegal patent acquisition scheme." *Id.* at 3:20-22. As this Court previously ruled, simply alleging a patent holder is willing to assert patents, without more, and where those patents have not actually been asserted, cannot establish "standing to assert antitrust claims . . . ." Dkt. 229 at 1:1-23 (dismissing previously defined "Product Markets (10)-(13)" with prejudice).

Here, the evidence in front of this Court shows INVT/Inventergy has never made any assertion at all against Intel based on the identified three patents. To the contrary, the two letters show INVT/Inventergy only ever offered royalties on SEPs, and the SAC contains no allegations to the contrary. Dkt. 247, Ex. 24; Ex. 25; Dkt. 256 at 3:13-16 (letters "have no bearing on . . . demands for those three **non-SEPs**." (emphasis in original)).[2]

Indeed, even as to the three patents identified in the SAC, the SAC does not allege that Intel has been harmed by INVT or Inventergy in the corresponding markets, instead only identifying harm allegedly caused by other Defendants who have "targeted" Intel or Apple with

---

[2] Even more, such offers were only extended to Plaintiff Apple, who recently filed a notice of dismissal with prejudice as to both INVT and Inventergy. Dkt. 263. The record is devoid of any evidence or allegations that INVT or Inventergy ever even approached Plaintiff Intel on any patent, let alone indicated suit would be filed against Intel. To that end, neither INVT nor Inventergy were even named as Defendants in the original complaint filed only by Plaintiff Intel. *Intel Corp. v. Fortress Investment Group LLC et al.*, No. 5:19-cv-06856, Dkt. 1 (N.D. Cal. Oct. 21, 2019).

| | |
|---|---|
| 1 | their own patents. SAC at ¶¶ 174 (as related to purported market containing the '579 patent), 354 |
| 2 | (as related to purported market containing the '242 and '620 patents). Moreover, while Intel fails |
| 3 | to expressly address this Court's concerns regarding the significance of the '579, '242, or '620 |
| 4 | patents in their purported markets (e.g. whether such patents are the "crown jewels" in the field or |
| 5 | just one of many potential substitutes), by confirming their claims no longer address SEPs, Intel |
| 6 | indicates its belief that the significance is low. |
| 7 | Intel's three remaining claims against INVT and Inventergy all rise and fall based on |
| 8 | Intel's ability (or inability) to plausibly assert that the rates offered by INVT/Inventergy were the |
| 9 | result of the aggregation of substitute patents. Intel's admission that the only patents still at issue |
| 10 | are non-SEPs, and that INVT/Inventergy have never asserted non-SEPs against Intel (either via |
| 11 | letter or lawsuit), confirms Intel's failure to meet that burden. Intel's untimely attempt to change |
| 12 | theories to an alleged harm based on "willingness to sue" also fails to meet the "plausibility" |
| 13 | standard where the only evidence of record entirely undermines Intel's assertions. Intel's |
| 14 | remaining claims against INVT and Inventergy must be dismissed with prejudice. *See Cook,* |
| 15 | *Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (leave to |
| 16 | amend is inappropriate when "the pleading could not possibly be cured by the allegation of other |
| 17 | facts."). |

| | |
|---|---|
| Dated: July 8, 2021 | Respectfully submitted,<br><br>ROBINS KAPLAN LLP<br><br><br>By: */s/ Christopher A. Seidl*<br>    Christopher A. Seidl (*pro hac vice*)<br>    CSeidl@RobinsKaplan.com<br>    John K. Harting (*pro hac vice*)<br>    JHarting@RobinsKaplan.com<br>    **ROBINS KAPLAN LLP**<br>    800 LaSalle Avenue, Suite 2800<br>    Minneapolis, MN 55402<br>    Telephone:  612 349 8468<br>    Facsimile:  612 339-4181<br>    *Counsel for Defendants*<br>    INVT SPE LLC<br>    INVENTERGY GLOBAL, INC.<br><br>    Steven Carlson<br>    SCarlson@RobinsKaplan.com<br>    **ROBINS KAPLAN LLP**<br>    2440 West El Camino Real, Suite 100<br>    Mountain View, California 94040<br>    Telephone: (650) 784-4012<br>    Facsimile: (650) 784-4041<br><br>    William V. Reiss (*pro hac vice*)<br>    WReiss@RobinsKaplan.com<br>    **ROBINS KAPLAN LLP**<br>    399 Park Avenue. Suite 3600<br>    New York, NY 10022<br>    Telephone: 212-980-7400<br>    Facsimile: 212-980-7499<br><br>    *Counsel for Defendants*<br>    INVT SPE LLC<br>    INVENTERGY GLOBAL, INC. |