**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 8 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| INTEL CORPORATION,<br><br>        Plaintiff-Appellant,<br><br> v.<br><br>FORTRESS INVESTMENT GROUP LLC; FORTRESS CREDIT CO LLC; VLSI TECHNOLOGY LLC,<br><br>        Defendants-Appellees, | No.   21-16817<br><br>D.C. No. 3:19-cv-07651-EMC<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted October 11, 2022
Honolulu, Hawaii

Before: SCHROEDER, RAWLINSON, and BRESS, Circuit Judges.

Intel Corp. appeals the district court's dismissal of its antitrust claims against Fortress Investment Group LLC ("Fortress"), Fortress Credit Co. LLC, and VLSI Technology LLC ("VLSI"). We have jurisdiction under 28 U.S.C. § 1291. We review de novo the grant of a motion to dismiss under Federal Rule of Civil

---

      * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Procedure 12(b)(6).  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020).  We affirm.

Intel "develops, manufactures, and sells integrated digital technology products," including microprocessors.  Fortress is a multi-billion- dollar investment group that has invested in intellectual property, including patent portfolios.  Intel alleges that Fortress controls various so-called patent assertion entities ("PAEs"), including VLSI, and that Fortress through those PAEs has aggregated "weak" substitute patents that are "easily designed around" by acquiring the patents from other entities that had rarely enforced them.

According to Intel, Fortress's patent aggregation has allowed Fortress to gain control of four different technology markets for patents, which Fortress can use to extract large settlements and threaten meritless infringement suits.  Intel claims that these patents have "questionable validity, infringement, enforceability, and/or are easily designed around, and therefore have little or no meaningful value," but that Fortress's aggregation of the patents gives it leverage in demanding licenses and bringing lawsuits for patent infringement.

Before the commencement of these proceedings, VLSI filed suits against Intel in the Northern District of California, the District of Delaware, and the Western District of Texas, alleging that Intel's microprocessors infringed on 21 of VLSI's patents.  In response, Intel tried to turn these events into the basis for an antitrust

2

suit.  Intel challenges Fortress's patent aggregation scheme under Section 1 of the Sherman Act, Section 7 of the Clayton Act, and, derivatively, California unfair competition law.

The parties spar at length over whether Intel's theory is even cognizable under the antitrust laws.  Intel argues that serial patent litigation can stifle innovation and competition, noting that although the district court dismissed its suit, the court found Intel's overall theory "compelling."  Fortress argues that much of Intel's theory is premised on the notion that the judicial system is incapable of ensuring the accuracy of jury verdicts in patent infringement cases, and that to the extent this problem exists, an antitrust suit is not the proper remedy.  Fortress relies on a recent Seventh Circuit decision noting that "[t]he patent laws do not set a cap on the number of patents any one person can hold—in general, or pertaining to a single subject," and that valid patents in fact "authorize their owners to exclude competition." *Mayor of Baltimore v. AbbVie Inc.*, 42 F.4th 709, 712 (7th Cir. 2022).

We need not resolve the broader question of whether this type of lawsuit reflects a proper invocation of the antitrust laws because we agree with the district court that after receiving multiple opportunities to amend its complaint, Intel has failed to plead facts sufficient to state its antitrust claims.

A complaint will survive a Rule 12(b)(6) motion if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To adequately state a Section 1 claim, Intel must plausibly allege that the challenged restraint will lead to "substantial anticompetitive effect[s]." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018).  A Section 7 claim similarly requires the plaintiff plausibly to allege "'an appreciable danger' or 'a reasonable probability' of anticompetitive effects" in the relevant markets.  *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 (9th Cir. 2018) (quoting *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 788 (9th Cir. 2015)).  A plaintiff can allege either "direct evidence" or "[i]ndirect evidence" of anticompetitive effects.  *Am. Express Co.*, 138 S. Ct. at 2284.  Here, Intel purports to rely on direct evidence.  "Direct evidence of anticompetitive effects would be proof of actual detrimental effects on competition, such as reduced output, increased prices, or decreased quality in the relevant market."  *Id.* (quotations omitted).

We agree with the district court that Intel has failed plausibly to plead that Fortress's conduct has resulted in anticompetitive effects.  Intel focuses most of its allegations on how the alleged patent aggregation allegedly led to increased prices.  But Intel points to no instance in which it has actually paid higher royalties post-aggregation; it merely cites Fortress's litigation demands as evidence that licensing prices have increased.  There are substantial questions regarding whether a litigation

demand is even a cognizable "price" for purposes of the antitrust laws, and whether Intel has sufficiently alleged a price "increase" based on the amounts for which the defendants acquired the patents.

Even setting these potential problems to the side, we agree with the district court that Intel has failed plausibly to plead that any price increases were the result of Fortress's patent aggregation. Because price increases can be the natural result of growing demand (or increasing marginal costs), "[e]ven in a concentrated market, the occurrence of a price increase does not in itself permit a rational inference of . . . supracompetitive pricing." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 237 (1993). A plaintiff must allege that a price increase is traceable to a restraint on trade. *See id.*

As noted, Intel does not allege any instance in which it has in fact paid higher royalties due to alleged patent aggregation. Intel has also not alleged that an allegedly aggregated patent portfolio prevented it from making any product or practicing any technology, or that it has been denied any license. Although Intel claims that patents in the relevant markets have become consolidated under Fortress's ownership and control, there are no well-pleaded allegations as to how these patents—which are supposedly weak and easily designed around and not especially numerous—are essential or otherwise functionally or economically necessary. Intel has not, in other words, pleaded sufficient facts to show that any

5

alleged price increases are attributable to patent aggregation.  A mere "possibility" that Fortress has acted unlawfully is not sufficient.  *Iqbal*, 556 U.S. at 678.

As the defendants argue, moreover, from the face of the operative complaint there are obvious alternative explanations for the alleged price increase.  *See Somers v. Apple, Inc.*, 729 F.3d 953, 965 (9th Cir. 2013) (when allegations of anticompetitive pricing are considered alongside "obvious alternative explanation[s]," like competitive behavior, the anticompetitive theory "stops short of the line between possibility and plausibility" (quoting *Twombly*, 550 U.S. at 557)); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("To render their explanation plausible, plaintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation.").  As Intel alleged, unlike the previous patent-holders, Fortress faces much fewer competitive restraints in asserting the patents.  This alternative explanation supports the district court's well-considered determination that Intel's anticompetitive theory "stays in neutral territory" and "stops short of the line between possibility and plausibility."  *Somers*, 729 F.3d at 965 (quoting *Twombly*, 550 U.S. at 557).

Intel has also failed to plead that Fortress's conduct has restricted output in any relevant patent market.  Its few conclusory allegations, unsupported by any facts, are insufficient to plead output restriction.  *See Twombly*, 550 U.S. at 555–56.  Intel has failed to plead facts demonstrating how patent licenses were restricted below a

competitive level and has not identified any occasion on which the defendants refused to grant a license. To the extent Intel alleges reduced output in downstream markets that Fortress does not control, that is insufficient. *See R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 151 (9th Cir. 1989) (en banc) ("The kind of restriction of output which has been condemned is the output in the relevant market . . . .").

Because Intel has not plausibly alleged any anticompetitive effects due to patent aggregation, we need not reach the other issues raised in the parties' briefs.

**AFFIRMED.**